IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THE SATANIC TEMPLE, INC.

    PLAINTIFF,

v.

CITY OF BOSTON, MA

    DEFENDANT.

CASE NO. 1:21-CV-10102

## DEFENDANT CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Defendant City of Boston ("Defendant City" or "Defendant Council") respectfully submits this Memorandum of Law in Support of its Motion To Dismiss Plaintiff Satanic Temple, Inc.'s ("Plaintiff" or "TST") Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dismissal is appropriate as to the Plaintiff's claims because Plaintiff lacks standing to sustain its Complaint and Plaintiff has not met its obligation of showing the grounds relief.

### I.     INTRODUCTION

This case attempts to challenge the constitutionality of Defendant City of Boston's longstanding practice of commencing its council meetings with invocations delivered by guests, whom are invited by individual city councilors, or delivered by the city clerk, at the request of individual city councilors. Plaintiff asserts that Defendant City's selection practice is unconstitutional under the Establishment Clause, Free Speech and Free Exercise Clause of the First Amendment, and the Equal Protection Clause. However, this case is not about religious discrimination or an establishment of religion. This is evident because Plaintiff's Complaint ignores the weight of authority controlling cases relating to legislative prayer. Rather, this case deals with what Plaintiff describes as "political favoritism" and Plaintiff's overarching concern

that the Defendant Council's invocation selection practice favors those with "political clout." Complaint at ¶41 ("TST lacked the political clout to procure a Councilor's invitation."). Even if this is true, Plaintiff cannot sustain its Complaint under this theory.

Invocations at council meetings are personal and a way for each councilor to contribute to Defendant Council's tradition of solemnizing its meetings in a manner intended to benefit the council. Thus, consistent with this view, Defendant Council affords every councilor opportunities to provide for invocations at meetings by permitting them to invite their own invocation speakers. As a result, city councilors generally extend their invitations to members of the Boston community who have some connection to the inviting city councilors' constituents or personal life or to individuals with whom the respective city councilors have a personal relationship. Defendant Council does not attach particular terms and conditions to its invitations. Defendant Council does not require its city councilors to consider the religious affiliations of invocation speakers in extending invitations. Nor does Defendant Council require individual city councilors to use its invitations to promote the diversity of religions and faith communities represented in Boston. Defendant Council maintains a selection practice that does not aim to consider religions or faiths represented by its guest invocation speakers, but that does aim to consider the inviting councilors' connection to the guest invocation speakers, which fuels Plaintiff's Complaint.

## II.  FACTS

The City Council is the legislative branch of the City of Boston government that enacts local laws and reviews and approves the operating and capital budget for the City of Boston. It is a thirteen-member body that operates independently from other city departments: four members are elected to represent the entire city of Boston and the remaining nine members are elected to

represent specific districts of the city. All City Councilors are elected to advocate for the needs of their constituents, all of whom are Boston residents, and to connect them to resources, services, and city departments.

City Councilors are elected every two years, and one city councilor assumes the role of Council President for the two-year term. The Council President serves as the administrative lead of the City Council, acting as the liaison between the City Council and the central staff. Additionally, the Council President serves as the presiding officer at weekly City Council meetings. As presiding officer, the Council President is expected to decide all questions related to the priority of the Council's business matters.

  a. <u>City Council Meetings</u>

Every week, the City Council holds a regular meeting ("Council Meeting") where the City Councilors deliberate and take legislative action on the affairs of the City of Boston. The regular meetings take place in the Iannella Chamber ("Council Chamber"), and members of the public can attend such meetings. The Council Chamber is a large room with stadium-style seating extending to the back and to both sides around a central, open, square-shaped area. The floor of the Council Chamber contains a section physically separated from the rest of the room by low railings or half-walls.

Each Council Meeting typically opens with a series of events. First, the City Clerk calls roll to determine whether a quorum of City Councilors is present. Next, the Council President (or, in his or her absence, another councilor) (the "presiding officer") either introduces the City Clerk to deliver an invocation or introduces a City Councilor who in turn introduces their guest invocation speaker. Once the invocation speaker is introduced, she or he is invited to the dais to deliver the invocation, typically a prayer, to the City Council. Lastly, the presiding officer leads

the Council in the recitation of the pledge of allegiance. Members of the public can attend Council Meetings, which are open, public meetings (although a City Council meeting is not a public hearing at which members of the public have the right to speak or testify). While members of the public are free to attend Council Meetings and occupy the gallery, members of the public are not permitted to access the separated portion of the Chamber floor, which is open only to City Councilors, their staff, the Clerk and her staff, and individuals who the presiding officer invites onto the Chamber floor. Thus, members of the public are prohibited from being on the Council floor, including at the tables designated for Councilors or at the dais without permission from the presiding officer. See City Council Rules, annexed to the Complaint as Exhibit 1 (Rule 43 provides that "[n]o person, except the staff of the clerk or council staff shall be allowed upon the council floor of the Iannella council chamber, the witness podium (microphone), or the doorways of the anteroom unless invited by the presiding officer."); see also id. ("No person shall be permitted to speak, testify, or otherwise participate in any council meeting, hearing, or working session unless permitted to do so by the presiding officer or committee chair.").

      b.      Opening Invocation – Policy and Practices

The City Council has a longstanding tradition of presenting invocations before the legislative session of its meetings begin. At the beginning of each calendar year, the Council President assigns each City Councilor a few meeting dates for which the designated City Councilor is responsible for coordinating the invocation, which includes inviting a guest to deliver it. The City Council does not promulgate guidelines or a policy regarding its invocation speaker selection process or even about the practice of holding invocations; the Council only prepares a schedule of the dates of the Council Meetings along with the names of the City

Councilors responsible for securing an invocation speaker. The selection of the invocation speaker is left within the discretion of the individual City Councilors. The Council President does not approve and is not otherwise involved in the selection of any invocation speaker, aside from the speakers that she personally invites in her role as a City Councilor on her assigned dates.

City Councilors historically have not received unsolicited requests to deliver invocations and do not expect to receive such requests as they do not advertise their invitations or even solicit speakers from a pool of potential guests. Rather, City Councilors invite either a clergy person or a layperson who is a member of the Boston community and/or who has some connection or relevance to the inviting City Councilor's constituents or personal life. For example, Councilor Matt O'Malley ("Councilor O'Malley") invited Reverend Lindsay Popperson, a resident of the Jamaica Plain neighborhood in his district, known for her outreach work in Boston. Additionally, Councilor O'Malley maintains a personal connection with her as she serves as the Chaplain for nursing and rehabilitation center in Jamaica Plain where Councilor O'Malley's mother received care.

### III. STANDARD OF REVIEW

A complaint can and must be dismissed at any time if a court finds that it lacks subject matter jurisdiction over the claim. See Fed. R. Civ. P. 12(b)(1). Challenges to a plaintiff's standing ultimately challenge a court's subject matter jurisdiction, thus if a plaintiff does not have standing then a court cannot hear its claims. See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 475-76 (1982) ("Those who do not possess Article III standing may not litigate as suitors in the courts of the United States."); Osediacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir. 2005) ("[S]tanding to sue is an

indispensable component of federal court jurisdiction."); Edelkind v. Fairmont Funding, Ltd., 539 F. Supp. 2d 449, 455 (D. Mass. 2008). Moreover, a plaintiff bears the burden of showing that it has the requisite standing to bring its claims in federal court, and the basis for that jurisdiction must be clear on the face of the Complaint. See Viqueira v. First Bank, 140 F.3d 12, 18 (1st Cir. 1998) ("It is black-letter law that jurisdiction must be apparent from the face of plaintiff's pleading ...."); Fieldwork Boston, Inc. v. United States, 344 F. Supp. 2d 257, 261 (D. Mass. 2004). Because standing is "not [a] mere pleading requirement[ ] but rather an indispensable part of the plaintiff's case, [it] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint or cause of action must be dismissed where a plaintiff fails to state a claim for relief that is plausible on its face. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plaintiff bears the burden of pleading "sufficient factual matter" providing the grounds for the relief for which they seek. Ashcroft, 129 S. Ct. 1937 at 1949; Blum v. Holder, 744 F.3d 790, 795 (1st Cir. 2014) ("One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue.) (internal quotations omitted). To plead sufficient factual matter, a plaintiff must do more than plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. (internal citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. Thus, dismissal of a complaint is required where "the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element

necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513, F.3d 301, 305 (1st Cir. 2008) (internal quotation omitted).

IV.     ARGUMENT

The Complaint must be dismissed because Plaintiff lacks the requisite Article III standing to raise its claims for relief, and Plaintiff demands resolutions which a Court cannot provide. Plaintiff's request for this Court to order Defendant City to devise a scheme to ensure proportionality between the faiths or religions represented by invocation speakers is impractical and does not guarantee the relief Plaintiff seeks.

Even assuming arguendo that Plaintiff has standing, the Complaint cannot proceed on the merits. Plaintiff fails to show that its entitled to relief under the Establishment Clause, the Free Speech and Free Exercise Clause of the First Amendment, and the Equal Protection Clause. Plaintiff's claim that the City Council's neutral, nondiscriminatory practice of selecting invocation speakers violates the Establishment Clause is barred by the Supreme Court's holdings in Marsh v. Chambers and Town of Greece. See generally, Marsh v. Chambers, 463 U.S. 783 (1983); Town of Greece, N.Y. v. Galloway, 134 S. Ct. 1811 (2014). Further, Plaintiff does not plead any facts suggesting that the City's selection practice exceeds the limits established by either court. Noticeably absent in the Complaint are allegations supporting a view that the City Council's selection process discriminates on the basis of the faith of the prospective prayer giver, or that the City Council coerces participation in its invocations.

Finally, Plaintiff provides no cognizable basis as to why this claim should be considered under Equal Protection Clause or Free Speech or Free Exercise Clause of the First Amendment, in light of the weight of controlling Establishment Clause authority in the legislative prayer context. Specifically, Plaintiff's claims under the Equal Protection Clause or Free Speech or Free

Exercise Clause of the First Amendment fail at the outset because there is no expressive activity or public forum in this matter. This case centers on legislative prayers which constitute government speech.

A. PLAINTIFF CANNOT MEET THE THRESHOLD STANDING REQUIREMENTS TO BRING CLAIMS UNDER THE ESTABLISHMENT CLAUSE AND FREE SPEECH CLAUSE OF THE FIRST AMENDMENT.

At minimum, to demonstrate standing, Plaintiff is required to plead sufficient factual matter indicating that (a) it has suffered an injury in fact; (b) there is a causal connection between the alleged injury and the conduct complained of; and (c) it is likely that the alleged injury will be redressed by a favorable decision. See Rsch. Consulting Assocs. v. Elec. Power Rsch. Inst., Inc., 626 F. Supp. 1310, 1313 (D. Mass. 1986) ("[]Article III requires that a "plaintiff must allege personal injury fairly traceable to the defendant's alleged conduct and likely to be redressed by the requested relief.") (internal quotation omitted); see also, Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325 (1st Cir. 2009) ("The irreducible constitutional minimum of standing contains three elements: (1) that the plaintiff suffered an injury in fact, (2) that there is a causal connection between the injury and the conduct complained of, and (3) that it is likely that the injury will be redressed by the requested relief.") (internal quotations omitted); Blum v. Holder, 744 F.3d at 796 (same); Osediacz, 414 F.3d at 139 (same).

i. Plaintiff Has Not Alleged an Article III Injury in Fact.

As an initial matter, Plaintiff cannot establish an injury-in-fact because Plaintiff does not have a private right in the Defendant Council's own speech – Council's self-directed invocation. Plaintiff claims that its "intention to bless the Council's meeting… was an expression of religious significance." Complaint at ¶94. This assertion has no bearing on the standing analysis in the context of legislative prayers under the Establishment Clause and is inconsequential to

Plaintiff's Free Exercise and Free Speech claims. While the Free Exercise and Free Speech Clauses of the First Amendment serve to restrict government regulation of private speech or belief; they do not regulate government speech, which is at issue here. Pleasant Grove City v. Summum, 555 U.S. 460, 467 (2009); Walker v. Texas Div., Sons of Confederate Veterans, Inc., 135 S. Ct. 2239, 2247 (2015) (noting that "government speech" is "not subject to scrutiny under the Free Speech Clause."); see also, Freedom from Religion Found., Inc. v. City of Warren, 707 F.3d 686, 695 (6th Cir. 2013) ("The First Amendment . . . prevents governments from restricting the speech of individuals; it does not empower individuals to abridge the speech of government."). Thus, because legislative prayer is Defendant Council's own speech, not private speech, and because there is no private speech right at issue here, Plaintiff cannot establish injury-in-fact necessary to confer standing under the Free Speech or Free Exercise Clauses.

To that end, Plaintiff's assertions denoting that the individual councilors of Defendant Council have unbridled, plenary authority to select invocation speakers do nothing to save standing, where there is no potential for the selection practice characterized by Plaintiff to result in an impermissible prior restraint. This is not a practice that allows the city councilors absolute power over whether to permit or deny expressive activity of invocation speakers. Instead, at most, city councilors have the discretion to control their own speech. In other words, the risks inherent to forums providing for a private right of speech cannot exist where there is no opportunity for such speech to be censored or affected by councilors' "unfettered authority to select who gets to pray at their meeting." See Complaint at ¶13; see also, Osediacz v. City of Cranston, 414 F.3d 136, 142 (1st Cir. 2005) (noting that the mere theoretical risk of self-censorship that may be inherent in statutes conferring standardless discretion on public officials

is insufficient to sustain an injury in fact in the First Amendment context and rejecting the effort to apply same theoretical risk to the standing analysis for the plaintiff's Establishment claim).

As well, the harm that Plaintiff alleges is not "concrete and particularized," but far more conjectural or hypothetical than that which is required to secure its standing. See Sutliffe, 584 F.3d at 325 ("Injury in fact is an invasion of a legally protected interest that is both 'concrete and particularized'…and 'actual or imminent', not 'conjectural' or 'hypothetical[.]'") (quoting Lujan, 504 U.S. at 560; Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (internal citations omitted). In principle, Plaintiff claims that it was harmed by being deprived of an unspecified and potential reputational or social value boost. Plaintiff assumes that those who are invited to deliver invocations can be seen as "insiders" and "politically favored" while those who are not invited may be viewed as "outsiders" whom are not included in the political community. See Complaint at ¶¶ 82-83. The speculative possibility of some type of reputational gain is not a legally cognizable injury under Article III under the First Amendment.

    ii. <u>Plaintiff's Complaint Cannot Be Redressed by a Decision Favorable to It.</u>

Plaintiff's claim must also fail for lack of redressability. Critical to finding standing, Plaintiff must be able to show that its alleged injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560-61. Plaintiff's demands that this Court order Defendant to "not exclude TST or any other religious groups" the opportunity to bless the Council meetings and order Defendant to "create a mechanism for interested religious groups to obtain an equal opportunity to bless the Council's meetings" are in fact requests that in redressing would require this Court to unnecessarily intercept the internal rulemaking powers of the legislature and undermine the principles of separation of powers. Rsch. Consulting Assocs. v. Elec. Power Rsch. Inst., Inc., 626 F. Supp. 1310, 1312 (D. Mass. 1986) ("The genius of the tripartite system of government

established by our constitution is that power is distributed so as to limit each branch to its proper role in a democratic society."). In substance, Plaintiff asks this Court to order Defendant Council to change its Council rules regarding public participation in its proceedings and to convert its invocation provisions to allow open public participation.

### B. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ESTABLISHMENT CLAUSE.

Plaintiff cannot maintain its claim under the Establishment Clause because well settled law makes clear that the City Council's practice of selecting invocation speakers does not violate the Establishment Clause where there is no evidence that Defendant Council's practice is impermissibly motivated or is used to advance one faith or belief over another, or where there is no evidence that Defendant Council's selection policy is discriminatory. In settling the constitutionality of legislative prayers, the Supreme Court also settled on the standards for evaluating the constitutionality of governmental policies and practices providing legislative prayers: government policies and practices allowing legislative prayers do not violate the Establishment Clause where (1) the prayer opportunity is not utilized to proselytize or advance any particular religion by sanctioning a preference for a particular set of beliefs or by disparaging other faiths and beliefs; (2) the selection process does not discriminate on the basis of the faith perspective of the prayer giver; or (3) there is no coercion to participate in the legislative prayer. In this case, Plaintiff only alleges that Defendant City's invocation selection process is discriminatory, claiming that Defendant Council impermissibly discriminates against religious organizations that are "politically powerful" from those that are not and pointing to demographic data in support. Complaint at ¶81.

Plaintiff's overall argument that the First Amendment requires all religions and faith communities to be permitted to participate in legislative prayer seeks to rebuke well-established

legislative prayer jurisprudence. Both Marsh and Town of Greece make it abundantly clear that legislatures and local governments are entitled to their choice of chaplains or invocation speakers.

> i. The City Council's Selection Practice Does Not Discriminate On The Basis of Religion Or Faith And Plaintiff's Allegations Do Not Plausibly Suggest That This Is The Case.

Plaintiff has failed to set forth allegations tending to show that the Defendant Council's selection practice is discriminatory on the basis of religion or faith or has been implemented in a way that discriminates against particular faiths. At face, under the standards set by the courts in Marsh and Town of Greece, Plaintiff's assertions that City Council's selection practice has a discriminatory impact are wholly insufficient to establish any right to relief here where (1) Plaintiff's entire Establishment Clause claim relies on the assumption that the fact that invocations have been predominantly delivered by clergy or laypersons affiliated with "Abrahamic belief traditions" and that Satanic Temple members have not been invited to deliver an invocation is conclusive evidence of a discriminatory selection process; (2) as sole support for its assertion that the City Council's selection practice has afforded a particular religious sect an advantage over others, Plaintiff presents data showing the amount of times certain denominations delivered invocations and the denominational or religious makeup of the City of Boston; and (3) Plaintiff unambiguously points to Plaintiff's political footing as the basis for its alleged perceived discriminatory treatment. Plaintiff's allegations, especially as they claim differential treatment based on political affiliation, simply do not amount to a cause of action recognizable under the Establishment Clause.

Plaintiff asserts that the effect of the Council's practice has resulted in a majority of invocation speakers who subscribe to religions based in Abrahamic belief tradition and because

other religions are disproportionately represented that they are disadvantaged. These allegations are of little import here, where precedent has disposed of this type of frequency centered analysis. Marsh is informative with respect to the extent to which frequency need be considered where the legislative prayer practice resulted in prayers almost predominantly from one denomination, see Marsh at 793–94 ("[a]bsent proof that the chaplain's reappointment stemmed from an impermissible motive, we conclude that [the chaplain's] long tenure does not in itself conflict with the Establishment Clause."); and Town of Greece is instructive here as well, see Town of Greece at 585 (disagreeing that the town of Greece contravened the Establishment clause by inviting a predominantly Christian set of ministers to lead the prayer). In sum, Plaintiff's position is not that Defendant Council's selection process must be nondiscriminatory but rather that Defendant Council is obligated to ensure that a proportional representation of religious or faith viewpoints are invited to deliver invocations. The request that the City engage in extensive monitoring of, and consideration of, the City of Boston's religion or faith demographics is antithetical to Establishment Clause jurisprudence in the legislative prayer context. Both Town of Greece and Marsh both directly address Plaintiff's assertions indicating that the City Council was required to accept an unsolicited request from an organization operating outside of its community for the purpose of balancing the demographic make-up of invocation speakers. Neither requires such action and both have advised against this result. Town of Greece rejected the contention that the town at issue had to "look beyond its borders" to ensure a broader range of religious viewpoints during the opening prayer and characterized that contention as requiring "'wholly inappropriate judgments about the number of religions [it] should sponsor and the relative frequency with which it should sponsor each,' a form of

government entanglement with religion that is far more troublesome that the current approach."

Id. at 1824 (quoting Lee v. Weisman, 505 U.S. 577, 617 (1992)).

> C. THE CITY HAS NOT DESIGNATED THE MEETINGS OF THE MEMBERS OF ITS LEGISLATIVE BODY AS A PUBLIC FORUM AND IN THE ABSENCE OF A PUBLIC FORUM THE PLAINTIFFS CLAIMS UNDER THE FIRST AMENDMENT AND THE EQUAL PROTECTION CLAUSE MUST FAIL.
>
> i. The Facts Do Not Support The Conclusion That The City Has Designated The Meetings Of Its City Council As A Public Forum That Is Open To Public Participation.

A government entity creates a designated or limited public forum "only by intentionally opening a nontraditional forum for public discourse". Cornelius v. NAACP Legal Def. & Educ. Fund, Inc, 473 U.S. 788, 802 (1985). To determine whether a government has created a designated public forum, Courts have looked to the policy and practice of the government to determine whether it intended such a designation. Id. at 804. A public forum will not be found to have been created "in the face of clear evidence of a contrary intent," nor should a public forum be found "when the nature of the property is inconsistent with expressive activity." Id. Of particular importance in assessing the government's intent is the control that it asserts over the forum. See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 47 (2001)(finding that a school's mail system had not been designated as a public forum where permission to access the system needed to be granted by an individual school principal); see also Ark. Edu. Television Comm'n v. Forbes, 523 U.S. 666, 679 (1998) (holding that government does not create a designated public forum by reserving access to a specific class of speakers that, in turn, must obtain permission to access the forum).

In the present case, the Plaintiff has claimed a non-existent constitutional right to speak at a meeting of the City's legislative body without even alleging that the forum in which it seeks to

speak is a public forum at all. Pl. Cp. ¶ 29. In fact the Plaintiff recognizes that the rules of the City Council prohibit members of the public from participating in a Council meeting unless permitted to do so by the presiding officer or committee chair. Pl. Cp. ¶ 16. The City has thus demonstrated an express intention not to open its legislative meetings to participation by all members of the public. In addition, the City Council itself has asserted control over the forum by requiring any person speaking at a Council meeting to obtain permission from Council leadership to do so. In the absence of an express intent by the City to open its Council meetings to participation by all members of the public, the City maintains that its Council meetings are not a public forum and the Plaintiff has no constitutional right to address the Council at its meeting. The mere fact that the City Council provides access to a select class of speakers, invited by individual Councilors to address their colleagues prior to a meeting, does not create a designated public forum where the selected speakers must obtain permission from the City Council President prior to addressing the Council. see Ark. Edu. Television Comm'n at 679.

    ii. In The Absence Of A Public Forum, The City Engages In Government Speech Where The City Councilors Are The Intended Audience For The Benediction.

The Free Speech Clause does not regulate or limit the government when it uses its own property to engage in its own speech. Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 467-68 (2009). A governmental entity is "entitled to say what it wishes," Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 833 (1995), and to select the views that it wants to express. See Nat'l Endowment for Arts v. Finley, 524 U.S. 569, 598 (1998); Rust v. Sullivan, 500 U.S. 173, 194 (1991). Furthermore, a government's own speech is exempt from First Amendment scrutiny. Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 329 (1st Cir. 2009). Government has the same freedom to express itself as it wishes even when receiving

third-party assistance for the purpose of delivering a government message. See Summum, 555 U.S. at 468. There are certain restraints though on a government's ability to engage in government speech. Relevant here and discussed above, a government engaging in government speech must comport with the Establishment Clause. Id.

The analysis of whether the selection and presentation of the invocations opening City Council meetings qualifies as government speech is subject to a three factor analysis set forth in Pleasant Grove City, Utah v. Summum, 555 U.S. 460 (2009) and further clarified by the Court in Walker v. Texas Division, Sons of Confederate Veterans, Inc, 135 S. Ct. 2239, 2247 (2015). The Summum Court, in finding that a Ten Commandments monument placed in a public park by the town was a form of government speech, first focused on the traditional use of monuments by governments and the fact that governments had long used monuments to speak to the public. Summum, 555 U.S. at 470; see also Walker, 135 S. Ct. at 2247. Second, the Summum Court accepted the proposition that a property owner typically does not open his or her property to the installation of monuments that convey messages with which he or she do not want to associate. 555 U.S. at 471. The third factor relied upon is the fact that the town had effectively controlled the monuments by exercising final approval authority over their selection. Summum, 555 U.S. at 473. Furthermore, the fact that a town or government does not have a written policy in place is irrelevant as to whether a government or town's actions constitute government speech. see Sutliffe, 584 F.3d at 332.

In the context of legislative prayer, the Fourth Circuit in Simpson v. Chesterfield County Bd. of Sup'rs addressed whether a legislative prayer scheme ran afoul of the Free Exercise and Free Speech Clauses of the First Amendment as well as the Equal Protection Clause of the Fourteenth Amendment. 404 F.3d 276, 288 (4th Cir. 2005). In denying the Plaintiff's First

Amendment and Fourteenth Amendment claims, the court held that the issue turned on the characterization of the legislative prayer practice as government speech. The court held that the purpose of the invocation in Simpson traditionally had been to make a brief pronouncement of values in order to solemnize the occasion. Id. The prayer was not intended for the exchange of views or public discourse and it was not intended for the exercise of one's religion. Id. Further, the content of the invocation was effectively controlled by a county Board that had enlisted private entities to convey a message on the Board's behalf. Id. In short, the court held that a legislative prayer program in which third parties were invited to speak to members of a government entity satisfied the three part, government speech analysis required by Summum and Walker.

  In the instant case, the City Council invites a religious leader to perform a benediction for the City Council as its intended audience in order to solemnize the occasion for those that participate in its meetings. The benedictions are not intended for members of the public that do not participate in the City Council meetings. Further, the invocation is not meant for the exchange of views or other public discourse nor does it affect the ability of an individual not participating in the meeting to exercise his or her religion free from government interference. Here members of the governmental body participate in prayer for themselves and do not impose it upon the public or proselytize or advance one religion or disparage another. See Marsh at 794-795 (Governmental body may select prayers for the benefit of that body so long as the prayers do not violate the Establishment Clause). Furthermore, the City Council exercises effective control over the benediction where individual Councilors are responsible for inviting a religious leader to perform the invocation and such invitation is subject to approval by the President of the City Council. Much like the County Board in Simpson, the City Council's

legislative prayer scheme satisfies the three factor Summum/Walker analysis and the choice and presentation of religious invocations must be properly characterized as government speech.

   iii. <u>Where The Plaintiff Has Failed To Allege The Existence Of A Public Forum and the City Engages In Government Speech, The Claims Of Violations Under the First Amendment To The U.S. Constitution and Equal Protection Clause Of The Fourteenth Amendment To The U.S. Constitution Cannot Succeed.</u>

Where the City engages in government speech in the selection and presentation of invocations before the City Council, the traditional analysis applied to government action related to private speech on government property does not apply and Plaintiff cannot maintain its claims under the First Amendment. <u>See</u> <u>Summum</u>, 555 U.S. at 481 (City's decision is not subject to First Amendment where Court had found the existence of government speech). Further, the Plaintiff presupposes the existence of a public forum and fails to allege the existence of one in its Complaint. Without a public forum, there is no First Amendment claim of any sort. <u>See</u> <u>Widmar v. Vincent</u>, 454 U.S. 263, 267-268 , 267 n. 5 (1981) (Public university's constitutional obligation to justify prior restraint on speech under the First Amendment arises from its designation as a public forum and would not exist otherwise); <u>See</u> <u>Shurtleff et al. v. City of Boston et al.</u>, (City does not violate First Amendment where it engages in government speech "not evocative of First Amendment protection" and no public forum exists).

With regards to the Equal Protection claim under the Fourteenth Amendment, the analysis is similar. Where, as here, the speech at issue is properly classified as government speech, the Plaintiff cannot assert a viable Equal Protection claim because it does not have a constitutional right under the First Amendment to force the City to express itself in a particular way. <u>See</u> <u>Perry Educ. Ass'n</u>, 450 U.S. at 54-55 (the key to decisions finding that distinctions between classes of speech violated the Equal Protection clause was the presence of a public

forum that all parties had a constitutional right to access); See Police Dep't of Chicago v. Moseley, 408 U.S. 92, 96 (1972); See Carey v. Brown, 447 U.S. 455, 461 (1980). The Supreme Court has also made clear that "on government property that has not been made a public forum, not all speech is equally situated, and the State may draw distinctions which relate to the special purpose for which the property is used." Perry Educ. Ass'n, 460 U.S. at 55. In such a situation where no public forum exists, the City's practice must only pass rational basis review and bear a rational relationship to some legitimate government purpose.

Here, where the City Council by its rules explicitly states that it's meetings are not a public forum, it must show that its practice of allowing Councilors to invite a speaker to give an invocation to Council members with the approval of the City Council President bears a rational relationship to some legitimate government purpose. As has been discussed throughout this memorandum, legislative prayers bring a sense of solemnity and importance to the occasion and this has been recognized as a legitimate government purpose by courts time and again. Consequently, the Plaintiff's Equal Protection claim must fail.

V.     CONCLUSION

For each and all of the foregoing reasons, Defendant City of Boston is entitled to dismissal of Plaintiff's Complaint. Further, Defendant respectfully requests that this Court grant Defendant City's Motion and dismissing the claims against it, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

DEFENDANT,

CITY OF BOSTON,

By its attorney,
Henry Luthin
Corporation Counsel


/s/ Nailah A. Freeman
Robert Arcangeli (BBO #689034)
Nailah A. Freeman (BBO #695910)
City of Boston Law Department
One City Hall Square, Room 615
Boston, MA 02201
Telephone: (617) 635-4064
Facsimile: (617) 635-2012
Robert.Arcangeli@boston.gov
Nailah.Freeman@boston.gov

Dated: April 5, 2021

# CERTIFICATE OF SERVICE

I hereby certify that, on April 5, 2021, this document was served on Plaintiff by electronic mail as follows:

Matthew A. Kezhaya
Kezhaya Law PLC
333 S. 7th St., Suite 2450
Minneapolis, MN 55402
matt@kezhaya.law


/s/ Nailah A. Freeman
Nailah A. Freeman