**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **THE SATANIC TEMPLE, INC.**<br><br>PLAINTIFF,<br><br>V.<br><br>**CITY OF BOSTON, MA**<br><br>DEFENDANT. | **CASE NO.** 21-CV-10102<br><br>**TST'S RESPONSE IN OBJECTION TO BOSTON'S MOTION TO DISMISS** |

**INTRODUCTION / SUMMARY**

**COMES NOW** Plaintiff, The Satanic Temple ("**TST**"), by and through counsel of record with a response in objection to Boston's motion to dismiss (ECF 13) and its brief in support (ECF 14). The Court should find that the Complaint pleads grounds for standing because TST was (1) directly excluded from the prayer ceremony; (2) by the City; which (3) can be redressed by the prayed-for declaratory and injunctive relief.

The Court should deny the Establishment Clause argument because the Complaint pleads that TST is a religion which was excluded from the prayer ceremony because of its religious viewpoint. The City's argument that it does not have to search beyond its borders to achieve religious balancing is unavailing because governments may not discriminate among religions in the selection of prayer-givers. Further, the Complaint pleads at least six instances that prayer-givers were invited despite not being from Boston.

The Court should deny the Free Speech / Free Exercise argument. The legislative prayer opportunity is private speech, not government speech because (1) legislative prayers are traditionally inclusive of many faiths; (2) governments may not endorse particular viewpoints; and (3) the prayer opportunity is unlimited. The prayer takes place in a limited public forum because the City opened

its property to private speech which conforms to time, place, manner, and topic restrictions. In a limited public forum, governments may not engage in viewpoint discrimination–which is what TST alleged happened.

The Court should deny the Equal Protection argument for essentially the same reasons as the Free Speech / Free Exercise Clause argument. The City ignores the strict scrutiny and intermediate scrutiny arguments in the Complaint and only asserts a legitimate interest. The problem is that the legitimate interest the City proffers speaks to having a prayer ceremony to begin with. That is a strawman argument. The issue is not having a prayer ceremony, but excluding TST. The City offers neither a legitimate interest nor a rational basis for excluding TST.

TST is constitutionally guaranteed an equal right as majority religions to participate in the legislative prayer. This right is enshrined in the Establishment Clause, the Free Exercise and Free Speech Clauses, and the Equal Protection Clause. The whole point of enshrining this fundamental right in the Constitution was "to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts." W. Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 638, 63 S. Ct. 1178, 1185 (1943). By turning TST's equal right to participate in this ceremony into a question of political clout, the City has corrupted the whole point of constitutional law. The Court should deny the City's motion to dismiss in full.

## ARGUMENT

## 1: Failure to confer on standing grounds or as to the Establishment Clause.

Prior to addressing the City's motion, the Court should resolve the procedural deficiency of the City raising issues not addressed in the parties' good faith conference. On March 12, the parties had a productive good faith conference as to the Free Speech and Equal Protection issues raised in the

complaint. The City's counsel of record agreed that the Establishment Clause issue was adequately pled and said nothing about a standing issue. Despite not having a good faith conference on standing and despite agreeing that the Establishment Clause issue was adequately pled, the City has moved to dismiss on both grounds.

This violates the requirement that "no motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." LR 7.1(a)(2). The Rule affords no exception to a motion to dismiss. Murray v. Uber Techs., Inc., 486 F. Supp. 3d 468, 474 (D. Mass. 2020). The purpose of this rule is to conserve judicial resources by encouraging parties to narrow the contours of disagreement before bringing their dispute to the Court. Conservation L. Found., Inc. v. Sone Alloys, Inc., No. 12-CV-10773-GAO, 2014 WL 905593, at *3 (D. Mass. Mar. 6, 2014) (internal quotes omitted).

This Court has heard and rejected argument that faulty motions should be summarily denied or stricken. Shea v. Ditech Fin. LLC, 255 F. Supp. 3d 273, 279 (D. Mass. 2017), aff'd, 812 F. App'x 7 (1st Cir. 2020) (rejecting argument that the faulty motion should be summarily denied); Sullivan v. Dumont Aircraft Charter, LLC, 364 F. Supp. 3d 63, 77 (D. Mass. 2019) (denying a motion to strike an oversized brief).

But some form of sanction appears to be in order. See Uber, 486 F.Supp.3d at 474. ("Uber's failure to observe LR 7.1(a)(2) would warrant a mild sanction but, recognizing that Uber was operating under a misconception of the rule, the Court will not impose one.") Uber resulted in a requirement that all of Uber's motions be accompanied by an affidavit signed by the attorney filing the motion which stated the date, time, and person with whom the conference was held under threat of sanctions. Id., 486 F.Supp.3d at 474-75.

Unlike in Uber, the City cannot plead ignorance in light of the City's counsel of record having at

least some experience litigating in this Court. See Shurtleff v. City of Bos., No. 18-CV-11417-DJC, 2020 WL 555248 (D. Mass. Feb. 4, 2020), aff'd, 986 F.3d 78 (1st Cir. 2021). Mr. Arcangeli served as trial counsel and appellate counsel in the recent Boston flagpole case, served as the lead in the parties' good faith conference, and serves as counsel of record for the City. See ECF 14 at p. 20 (signature block). Given that ignorance is no defense, the Court should require that the City accompany its motions with an affidavit (1) as described in Uber; (2) that the specific grounds of the motion was discussed in the good faith conference; and (3) address and the City's position on each. This way, the issues of the motion will be properly limited to the good faith conference, as the Rule intends.

## 2: Standing

The predicate issue of the City's motion is standing, because it speaks to the Court's power to hear the case. See U.S. Const. art. III § 2 ("The judicial Power shall extend to all Cases . . . . [and] Controversies."); Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992); FRCP 12(b)(1). . Standing is a test of three elements: (1) injury-in-fact; (2) causation; and (3) redressability. See Lujan, 504 U.S. at 560-61. TST has standing because the City uniquely excluded TST from the prayer ceremony which can be redressed by the prayed-for injunctive and declaratory relief

This Court addresses motions that attack standing under the same legal framework as a motion to dismiss for failure to state a claim. See Toxics Action Ctr., Inc. v. Casella Waste Sys., Inc., 347 F. Supp. 3d 67, 73 (D. Mass. 2018). TST has standing because it has pleaded facts which, when confined to the allegations of the complaint and taken as true, meet all three elements.

### 2.1: TST is injured because it was discriminated against.

TST has alleged an injury in fact because, as pleaded, TST was discriminated against in the selection of a legislative prayer. An injury in fact is an invasion of a legally protected interest which is both (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Lujan, 504

U.S. at 560. The First Amendment was written to protect against political division along religious lines. Lemon v. Kurtzman, 403 U.S. 602, 622, 91 S. Ct. 2105, 2116, 29 L. Ed. 2d 745 (1971). Therefore, the First Amendment prohibits governments from engaging in religious discrimination to select legislative prayers. Marsh v. Chambers, 463 U.S. 783, 794–95, 103 S. Ct. 3330, 3338 (1983); Town of Greece, N.Y. v. Galloway, 572 U.S. 565, 585–86, 134 S. Ct. 1811, 1824 (2014); Am. Legion v. Am. Humanist Ass'n, 139 S. Ct. 2067, 2089 (2019). The inability to compete on equal footing is an injury in fact for Article III standing purposes. Gratz v. Bollinger, 539 U.S. 244, 262, 123 S. Ct. 2411, 2423, 156 L. Ed. 2d 257 (2003).

The invaded interest at issue is TST's right to compete on equal footing with Christianity, Islam, and Judaism in the selection of the City's legislative prayer. Complaint at ¶¶ 23-41; 59-73. As pleaded, TST's preclusion from the prayer ceremony was the product of religious discrimination. Ibid.; see also ¶ 52. This injury is both (a) concrete and (b) particularized: TST's membership and co-director have made three demands for equal inclusion. Complaint at ¶¶ 22-25. The City has refused to allow TST a prayer opportunity each time. Complaint at ¶¶ 23 and 40-41. All the while, the City has allowed other religions a prayer opportunity. See Complaint at ¶¶ 8-17.

The City's brief ignores the legal standard. See ECF 14 at pp. 8-10. Principally, by confusing the distinction between a merits analysis and a standing analysis. Warth v. Seldin, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975); see also Barker v. Conroy, 921 F.3d 1118 (D.C. Cir. 2019) (finding standing while still rejecting the claim on the merits). Thus, the Court should reject the City's argument that legislative prayer is "government speech" and, therefore, TST is not injured. ECF 14 at pp. 8-9. Disregarding the logical leap between "the prayer is government speech" and "therefore, TST is not injured," the City has offered only a merits argument, which is wrong for the reasons stated in § 3.

The City also argues that TST's injury is "conjectural" because TST "assumes" that its preclusion from the ceremony means that those who are allowed in are "insiders" and those who are not are "outsiders" of the political community. ECF 14 at p. 10. Likewise, the City naysays as to the reputational or social value boost inherent in a minority religion being treated the same as a majority religion. Id. These arguments exit the requirement of treating all allegations as true. TST does not only "assume" that TST is viewed as a political outsider, TST pleads facts that demonstrate its status as political outsider (Complaint at ¶¶ 30-38) and that its outside status was a critical factor in the City's decision to preclude TST from the prayer opportunity. Complaint at ¶¶ 39-41; 58; 71-72; 80-87. Treating this allegation as true–as the standard requires–the Court should find that TST was discriminated against, in violation of Marsh, Town of Greece and Am. Legion.

### 2.2: The City caused the injury.

The City does not contest causation. Accepting as true that TST was excluded from an opportunity to give the legislative prayer, the City (being the party who selects its legislative prayers) obviously did the excluding.

### 2.3: The issue can be redressed by the declaratory and injunctive relief sought.

As to redressability, the City argues that this Court "cannot" enter the prayed-for injunction. ECF 14 at pp. 9-10. The City offers neither authority nor discussion to substantiate its position that injunctive relief lies outside the considerable equitable powers of the Court. Probably because the City is wrong. Since Town of Greece, at least two circuits have assumed jurisdiction to afford injunctive relief in a legislative prayer case. Williamson v. Brevard Cty., 928 F.3d 1296, 1316 (11th Cir. 2019) (vacating an injunction, not for lack of jurisdiction, but because it went too far and said too much and contemplating a different injunction on remand); Lund v. Rowan Cty., N. Carolina, 863 F.3d 268 (4th Cir. 2017) (affirming a permanent injunction to prohibit all legislative prayers).

In the analogous Equal Protection context, the Supreme Court has decreed that states may be permanently enjoined from segregating schools on the basis of race. Brown v. Bd. of Educ. of Topeka, Kan., 349 U.S. 294, 75 S. Ct. 753, 99 L. Ed. 1083 (1955). This was done both by declaring segregation unconstitutional, see id., 347 U.S. 483, and by pointing out that "All provisions of federal, state, or local law requiring or permitting such discrimination must yield to this principle." Id., 349 U.S. at 298. The Brown Court explicitly affirmed an injunction that required plaintiffs be immediately admitted to schools previously attended only by white children. Id. at 301.

A wealth of prior Supreme Court jurisprudence teaches that discrimination among religions is improper, especially in the legislative prayer context. Following the Brown model, TST's injury can be redressed by a favorable opinion that (1) declares that the City engaged in unconstitutional religious discrimination; and (2) enjoins the City from further unconstitutional religious discrimination. This is exactly what TST prayed for. Complaint at pp. 18-19.

**2: Establishment Clause**

The City next contests the sufficiency of the Establishment Clause claim. ECF 14 at pp. 11-14. TST has pleaded a sufficient Establishment Clause claim for much the same reason as it pleaded an injury in fact. At bottom, the Establishment Clause prohibits discrimination among religions in the selection of legislative prayers. Marsh, Town of Greece, and Am. Legion. The Establishment Clause prohibits this because the First Amendment was drafted to protect against political division along religion lines. Lemon, 403 U.S. at 622. To that end, the "clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." Larson v. Valente, 456 U.S. 228, 244, 102 S. Ct. 1673, 1683, 72 L. Ed. 2d 33 (1982). Even "subtle departures from neutrality" on matters of religion are unconstitutional. Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n, 138 S. Ct. 1719, 1731, 201 L. Ed. 2d 35 (2018) (Free Exercise case); see also Church of

the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 534, 113 S. Ct. 2217, 2227, 124 L. Ed. 2d 472 (1993) ("Facial neutrality is not determinative.")

TST has pleaded that the City discriminated against TST in the selection of legislative prayers by affording other religions a prayer opportunity but excluding TST from the same opportunity. Complaint at ¶¶ 8-17; 23-41; 59-73; 78-87. The City does not contest that TST is a religion and it does not contest that the City prohibited TST a prayer opportunity. ECF 14 at pp. 11-14. The only question is whether the City prohibited TST a prayer opportunity because of its view of TST's beliefs. The Complaint says "yes." Complaint at ¶ 81. The legal standard confines the analysis to the allegations of the complaint, so the Complaint alleges an Establishment Clause claim.

The City's argument to the contrary relies on mischaracterizing the Complaint. See ECF 14 at pp. 11-14. The City contorts TST's position into suggesting the City "is obligated to ensure that a proportional representation of religious or faith viewpoints." ECF 14 at p. 13. That is not the argument. The disproportionate overrepresentation of Abrahamic traditions is evidence of religious discrimination, it is not the cause of action. Complaint at ¶ 65 (Abrahamic faiths are overrepresented because they are safe and familiar, and they have the numbers and political clout to command inclusion); contra. Id. at ¶¶ 39-41, 71-73 (TST was excluded because it is unpopular and therefore lacks the political clout to command inclusion).

The City's legislative prayer policy is unconstitutional because it discriminates among religions depending on political palatability. This is provable because popular religions are overrepresented and unpopular religions are underrepresented. In the case of TST, at least one unpopular religion was explicitly excluded and allegedly because of its religious viewpoint. As for why the other "disfavored" religions are underrepresented, that will be a matter for discovery.

The City next argues that it does not have to "look beyond its borders" to ensure a broader range

of religious viewpoints. ECF 14 at p. 14 (quoting from Town of Greece, 572 U.S. at 586). The problem with the City's argument is in ignoring the first part of the quoted sentence. The sentence begins with: "**So long as the town maintains a policy of nondiscrimination**, the Constitution does not require it to search beyond its borders . . . ." Town of Greece, 572 U.S. at 585-86 (emphasis added). There, the prayers were mostly Christian because the town's efforts to identify all congregations within its borders were mostly Christian. Id. at 585. The prayer opportunity was open to all creeds and excluded none. Id. at 573. In context, the sentence is explaining that governmental efforts to achieve religious balancing is far more troublesome than the all-comer system at issue in Town of Greece.

Here, it is precisely the opposite. The City discriminates by allowing in various religions but excluding TST. Thus, the City will find no refuge in the fact that TST is headquartered in neighboring Salem, as opposed to Boston-proper. Even if that were a defense, the Complaint references at least six religious organizations that were allowed in from outside Boston city limits, just between 2018 and 2019. Complaint at ¶ 48. By allowing in those non-Boston prayers, but excluding TST, the City has treated the two non-Boston religious groups differently. That's religious discrimination, and it violates the Establishment Clause. See Marsh; Town of Greece; and Am. Legion.

### 3: Free Speech / Free Exercise

Other than the Establishment Clause, two other First Amendment Clauses touch on this issue, the Free Speech and Free Exercise Clauses. See U.S. Const. Amend I. ("Congress shall make no law . . . prohibiting the free exercise [of religion]; or abridging the freedom of speech.") The City challenges the Free Speech / Free Exercise hybrid claim. ECF 14 at pp. 14-18.

Preliminarily, it appears that the City misunderstands the nature of the claim. See id. (ignoring the Free Exercise clause part of the issue). A Free Speech / Free Exercise hybrid claim addresses a Free

Exercise Clause problem in conjunction with the Free Speech Clause problem. See Emp. Div., Dep't of Hum. Res. of Oregon v. Smith, 494 U.S. 872, 881–82, 110 S. Ct. 1595, 1601–02, 108 L. Ed. 2d 876 (1990). The claim is not fully Free Exercise nor Free Speech, but a hybrid of both. Id. In such event, even a neutral, generally applicable law is constitutionally suspect because it treads upon a person's fundamental freedom of conscience and fundamental freedom to communicate those ideas. Id.

Under this framework, a law is unconstitutional under the Free Exercise Clause if its effect–even an indirect effect–is to discriminate invidiously between religions. Braunfeld v. Brown, 366 U.S. 599, 607, 81 S. Ct. 1144, 1148 (1961). Similarly, if the law suppresses a religious expression, it runs afoul of the Free Speech Clause. Capitol Square Review and Advisory Bd. v. Pinette, 515 U.S. 753, 760 (1995). By excluding TST from the prayer ceremony, the City ran afoul of both freedoms. By definition, engaging in prayer is a religiously motivated activity. Am. Legion, 139 S.Ct. at 2087. In the context of this case, the prayer ceremony is a publicly broadcasted speech which takes place at a governmental meeting. Complaint at ¶¶ 8-11. By excluding TST from the prayer ceremony, the City uniquely suppressed TST's opportunity to engage in this public show of religious activity. That is religious discrimination, and it runs afoul of both the Free Speech and the Free Exercise Clauses.

### 3.1: The legislative prayer is private speech, not government speech.

The City does not contest that the prayer opportunity was a religious activity, or that the City suppressed the religious activity. Instead, the City asserts that it has an absolute right to pick and choose among religions in affording the prayer opportunity, depending on whether the City wants to be associated with that religious viewpoint. To get there, the City enshrouds the prayer opportunity under the cloak of the government speech doctrine. The problem with that argument is it glosses over a significant difference between government speech and the governmental blessing (or, here, condemnation) of private speech. Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S.

819, 828, 115 S. Ct. 2510, 2516, 132 L. Ed. 2d 700 (1995).

As support, the City relies on one abrogated case and misapplies two other cases. The abrogated case can be swiftly disregarded. The City relies on Simpson v. Chesterfield County Board of Supervisors, 404 F.3d 276 (4th Cir. 2005). Simpson is bad law. In Simpson, at issue was a selection policy which "allows only monotheistic congregations to add their religious leaders to the list," id. at 284; and required "each invocation must be non-sectarian." Id. at 278. A Wiccan was excluded because the deity she planned to invoke was not "consistent with the Judeo-Christian tradition." Id. at 280. This religious discrimination was upheld because the invocation required nonsectarian prayers. Id. at 284.

Simpson is anathema as against Town of Greece. Town of Greece holds: (1) the government cannot control the contents of the prayer, 572 U.S. at 582; and (2) the government cannot discriminate when selecting prayer givers. Id. at 585-86; see also id. at 571 ("The town [of Greece] at no point excluded or denied an opportunity to a would-be prayer giver.") Simpson is bad law because it runs afoul of both holdings. Since Town of Greece, the Fourth Circuit has distanced itself from the principles of Simpson. Lund v. Rowan Cty., N. Carolina, 863 F.3d 268, 275 (4th Cir. 2017) ("the Constitution affirmatively mandates accommodation, not merely tolerance, of all religions, **and forbids hostility toward any**.") (emphasis added).

The City misapplies Pleasant Grove City, Utah v. Summum, 555 U.S. 460 (2009) and Walker v. Texas Division, Sons of Confederate Veterans, Inc., 135 S. Ct. 2239, 2247 (2015). At issue in Summum was a permanent Ten Commandments monument located in a park. The issue was whether the park was a forum for private speech; or if the government was engaging in its own speech by placing the monument. It was government speech because, "Permanent monuments displayed on public property typically represent government speech." Summum, 555 U.S. at 470. The Summum

Court explained that governments have long used monuments to speak to the public. Id. The monuments displayed in public parks are selected on such content-based factors as aesthetics, history, and local culture. Id. at 472. Thus, the monuments that are accepted and placed in public parks "have the effect of conveying a government message." Id. Additionally, monuments are not like speeches. Id. at 479. Speakers eventually quit talking, whereas parks can only accommodate a limited number of monuments. Id.

At issue here is not a permanent monument in a park, but a prayer opportunity at a government meeting. We know from Town of Greece and Am. Legion that viewpoint-based selection of these prayer opportunities is unconstitutional religious discrimination. Town of Greece, 572 U.S. at 582 (prohibiting governments from defining "permissible categories of religious speech") and Am. Legion, 139 S.Ct. at 2088-89 (to be constitutional, the prayer policy must be "an example of respect and tolerance for differing views, an honest endeavor to achieve inclusivity and nondiscrimination, and a recognition of the important role that religion plays in the lives of many Americans.")

As pleaded, the City's prayer opportunity was withheld from TST because of TST's viewpoint, thereby achieving exclusivity and discrimination, and by explicitly tethering the invite to political palatability, served as a reminder that TST is a member of a political underclass. This is the very kind of viewpoint-based discrimination which governments are *not* allowed to engage in.

It is nonsensical for the City to suggest that the First Amendment would schizophrenically allow under the Free Speech Clause what the Establishment Clause and Free Exercise Clause would prohibit. That is because the City's argument is undermined by its own case. Summum, 555 U.S. 468 ("government speech must comport with the Establishment Clause"); id., 555 U.S. at 482–83 (Scalia, J., concurring) (justifying why the Summum monument would survive an Establishment Clause challenge) and id., 555 U.S. at 486-87 (Souter, J., concurring) (cautioning against an interpretation of

the government speech doctrine that would allow governments to avoid the "Establishment Clause's stricture against discriminating among religious sects or groups.")

As further proof against the City's argument, we address the factors in <u>Summum</u> and <u>Walker</u>. Both held that speech was "government" rather than "private" because of two factors: (1) tradition; and (2) selective receptivity. <u>Summum</u>, 555 U.S. at 470-73; <u>Walker</u>, 576 U.S. at 210-14. <u>Summum</u> adds a third: limited space. <u>Summum</u>, 555 U.S. at 479.

### 3.1.1: Legislative prayers are traditionally inclusive of many faiths.

The first factor is tradition. As addressed above, monuments have traditionally served as conduits for a message from the government to the people. Likewise, States display various slogans to urge action, promote tourism, and to tout local industry. <u>Walker</u>, 576 U.S. at 210-11.

But what traditional message does a government convey by opening its meetings with a public prayer ceremony? The City proffers that it solemnizes the occasion for the Council. ECF 14 at p. 17. This is unavailing because solemnity can be encouraged through other means. Cf. <u>Walker</u>, 576 U.S. at 212-13 (a vanity plate is not "private speech" because the person could display the message in larger letters on a bumper sticker right next to the plate).

No, the prayer ceremony can only be a demonstration of "tolerance for differing views, an honest endeavor to achieve inclusivity and nondiscrimination, and a recognition of the important role that religion plays in the lives of many Americans." <u>Am. Legion</u>, 139 S.Ct. at 2089. Going back to the very beginning of our nation, legislative prayer (the Constitutionally permissible kind, at least) has always meant precisely this. At issue in the very first Congress was whether to open with legislative prayers. The opposition argued that the delegates to the Congress "were so divided in religious sentiments that they could not join in the same act of worship." <u>Marsh</u>, 463 U.S. at 791-92. (cleaned

up). Samuel Adams–a Boston native, no less–argued in favor of opening Congressional meetings with a prayer, stating "he was no bigot, and could hear a prayer from a gentleman of piety and virtue, who was at the same time a friend to his country." Id. (citing C. Adams, Familiar Letters of John Adams and his Wife, Abigail Adams, during the Revolution 37–38, reprinted in Stokes, Church and State in the United States at 449 (1950)).

The traditional purpose of legislative prayers was never to convey a particular religious viewpoint, but was always to set aside differences of religious viewpoint. The City reduces this to "solemnity," but the more apt reduction is "inclusion." Because the legislative prayer opportunity traditionally refrains from conveying any particular religious message–and must so refrain, lest it run afoul of the Establishment Clause–the prayer can only be the speech of the private individual giving the speech, not the government accommodating the opportunity to speak.

### 3.1.2: Governments cannot engage in selective receptivity to prayers.

The second factor is "selective receptivity." Summum, 555 U.S. at 471-72; Walker, 576 U.S. at 211-12. This factor refers to the control that governments wield over the speech and a reasonable observer's perception that the government endorses that particular speech. Ibid. The City splits the "selective receptivity" factor into two. See ECF 14 at p. 16. The City argues that its "selective receptivity" to any particular religious group means that the speech is government speech. ECF 14 at p. 17. But, really, the City has only stipulated that it is endorsing "favored" religious groups–like Christianity–and withholding that endorsement from "disfavored" groups–like TST.

To credit this argument would require a finding that the City's prayer selection policy violates the Establishment Clause. Even government speech must comport with the Establishment Clause. Summum, 555 U.S. at 468. Town of Greece explicitly rejected the notion that governments may

control the contents of the prayer or select based on viewpoint. Id., 572 U.S. at 582. Am. Legion explained that the prayer opportunity must be marked by nondiscrimination and inclusion of differing views. Id., 139 S.Ct. at 2089. Marsh explained that the prayer opportunity is only constitutional if it is not abused to advance any one or to disparage any other faith or belief. Marsh, 463 U.S. at 794-95.

To find that the City can constitutionally endorse a particular religious viewpoint would be to disregard that even government speech must comply with the Establishment Clause prohibition against governments endorsing a religious viewpoint. See Lynch v. Donnelly, 465 U.S. 668, 688, 104 S. Ct. 1355, 1367 (1984) (O'Connor, J., concurring) ("Endorsement sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community. Disapproval sends the opposite message.")

For the Court to hold that the prayer opportunity not only can be the subject of religious viewpoint discrimination, but that's why it's constitutional, would be an affront against decades of First Amendment jurisprudence. It would also run directly contrary to "the history of our Constitution . . . [which] is the story of the extension of constitutional rights and protections to people once ignored or excluded." United States v. Virginia, 518 U.S. 515, 557, 116 S. Ct. 2264, 2287, 135 L. Ed. 2d 735 (1996). The Court must not offer the City refuge in the government speech doctrine for engaging in religious discrimination.

### 3.1.3: Unlimited opportunities to host speech.

The City ignored a third factor, limited space. Summum, 555 U.S. at 478-79. The Summum Court drew a distinction between public speeches and permanent monuments. Id. Parks can accommodate only a limited number of permanent monuments whereas "Speakers, no matter how long-winded, eventually come to the end of their remarks." Id. Summum stands for the proposition that public

speeches are private speech because a government can host a limitless number of speeches.

Here, the City hosts 35 legislative prayers per year. Complaint at ¶¶ 8-11. Just as "A public park, over the years, can provide a soapbox for a very large number of orators," Summum, 555 U.S. at 479, so too can the City provide a soapbox for a very large number of prayer-givers. The prayer opportunity is not so rare that it turns the prayer opportunity into "government speech."

### 3.2: The prayer opportunity is private speech in a limited public forum.

The Free Speech aspect of the Free Speech / Free Exercise claim will turn on the kind of forum in which the private speech takes place. See Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106–07, 121 S. Ct. 2093, 2099–100, 150 L. Ed. 2d 151 (2001). It is unnecessary to brief all the kinds of fora and the rules surrounding each. Suffice it to say that the prayer opportunity at bar is a limited public forum, so the City could not have constitutionally engaged in viewpoint discrimination.

### 3.2.1: The prayer opportunity is a limited public forum.

A limited public forum is public property which a government has opened for use by the public as a place to engage in expressive activity for an intended purpose. See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37, 45–46, 103 S. Ct. 948, 955, 74 L. Ed. 2d 794 (1983) (defining the doctrine); Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819, 829–30, 115 S. Ct. 2510, 2516–17, 132 L. Ed. 2d 700 (1995) (expanding on the definition); Good News Club, 533 U.S. at 106-07 (applying the definition to mean that a government cannot exclude a religious group from a limited public forum because of its religious viewpoint).

As discussed in § 3.1, the prayer opportunity is private speech. That private speech takes place in a limited public forum because the City's meeting takes place on government property–City Hall–and is publicly broadcast through a publicly-owned medium. Complaint at ¶ 10. Going back to January 2011, the City also hosts recordings of the City's meetings, including the prayer ceremony, on its

website.  Id. (see also http://meetingrecords.cityofboston.gov/sirepub/meetresults.aspx  (last visited April 19, 2021)).

All of these channels are government property which the City constrains to only permissible speakers.  Complaint Exhibit 1 at Rule 43.  The City invites private speakers to officiate a prayer ceremony for all to see.  Complaint at ¶¶ 8-16.  The City does not open the prayer opportunity for any general discussion, so it is not an "unlimited" public forum.  Contra. Perry, 460 U.S. at 46.  Because the City avails its property to private parties for the limited purpose of blessing the City's meeting, the prayer opportunity is given in a limited public forum.

### 3.2.2: The City improperly engaged in viewpoint discrimination.

Upon creating a limited public forum, a government may reserve the forum topics to the discussion of certain topics and may enforce reasonable time, place, and manner regulations, but may not engage in viewpoint discrimination.  Rosenberger, above.  To exclude speech because of its viewpoint (i.e. the intended speech was within the forum's limitations as to topic, time, space, and manner) is presumptively unconstitutional.  Id.; see also Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 812, 105 S. Ct. 3439, 3454 (1985) ("justifications cannot save an exclusion that is in fact based on the desire to suppress a particular point of view") and R. A. V. v. St. Paul, 505 U.S. 377, 386, 112 S. Ct. 2538, 2545 (1992) ("The government may not regulate use based on hostility -- or favoritism -- towards the underlying message expressed.")  More specifically, the discriminatory practice must survive strict scrutiny.  Perry, 460 U.S. at 45. (the government "must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.")  There are other rules and guidelines, too, but the issue at bar is viewpoint discrimination.

Here, TST alleges viewpoint discrimination.  The City did not prohibit TST from the prayer opportunity because its anticipated prayer would be too long in duration, or would take place

somewhere other than City Hall at the appointed time, or would not be a "prayer." Instead, the City prohibited TST a prayer opportunity because the City fears public hostility toward the viewpoint. Complaint at ¶ 39. By tethering inclusion to political palatability, the City engaged in unconstitutional viewpoint discrimination.

**4: Equal Protection**

Last, the City challenges the Equal Protection Clause claim. ECF 14 at pp. 18-19. The City's argument turns on the Court's agreement that the legislative prayer is government speech. Id. The City is wrong for the reasons stated in § 3. By way of summary, the prayer cannot be government speech because (1) the prayer traditionally includes differing viewpoints rather than condemning them; (2) government speech must comport with the Establishment Clause, which runs directly against the idea that a government can endorse only specific viewpoints; and (3) there are unlimited opportunities to host prayers. The City meeting is a classic limited public forum, which the City opened a portion of to accommodate private speeches, provided that the private speeches meet a time, place, manner, and topic restriction.

The City does not address a single argument in the Complaint. See Complaint at ¶¶ 99-107. As briefed at length above, the allegation of the complaint is that the City excluded TST from the prayer ceremony because of its religious viewpoint. That is both religious discrimination and it impinges upon TST's fundamental right to equal participation in the ceremony. Strict scrutiny attaches to both. Plyler v. Doe, 457 U.S. 202, 216–17, 102 S. Ct. 2382, 2394–95 (1982). The City offers no argument against this point.

Or, intermediate scrutiny should attach because the Establishment Clause prohibits governmental consideration of the content of the prayer. Marsh, Town of Greece, and Am. Legion, above. Content-neutral regulation of speech is tested by intermediate scrutiny. Signs for Jesus v. Town of Pembroke,

NH, 977 F.3d 93, 101 (1st Cir. 2020).  Thus, any ostensibly-neutral justification for the City to reject TST–and only TST–must survive intermediate scrutiny.  The City offers no argument against this point.

Minimally, TST is constitutionally guaranteed a right to be free from irrational laws.  D.C. v. Heller, 554 U.S. 570 n. 27, 628, 128 S. Ct. 2783 n. 27, 2817, 171 L. Ed. 2d 637 (2008).  By tethering TST's invitation to its political clout, the City has engaged in a bare desire to harm a politically unpopular group which is decidedly *not* a legitimate governmental interest.  U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 534, 93 S. Ct. 2821, 2826 (1973).

The City approaches argument on this point by suggesting there is a legitimate governmental interest in having the prayer in the first place.  ECF 14 at p. 19.  That is a straw man argument.  At issue in this case is not whether the City can have governmental prayers.  Complaint at ¶ 2.  Instead, the issue is that TST was excluded from that opportunity.  The City offers no legitimate interest and offers no argument for how that hypothetical interest bears any rational relationship to tethering TST's equal participation to its political clout.  Thus, the Court should deny the City's motion to dismiss.

**[intentionally left blank; prayer for relief, signatures, and certificates follow]**

**WHEREFORE** TST prays this Court enter an order denying the City's motion to dismiss in full.

|  |  |
|---:|:---|
|  | Respectfully submitted on April 19, 2021, on behalf of The Satanic Temple, Inc. |
| By: | /s/ Brendan Durrigan |
|  | Brendan Durrigan BBO # 668680 |
| Address: | 169 North Franklin St., Suite 7 |
|  | Holbrook, MA  02343 |
| phone: | (781) 726-0763 |
| email: | bdurrigan@gmail.com |
|  |  |
| And: | /s/ Matthew A. Kezhaya |
|  | Matthew A. Kezhaya, AR # 2014161, *pro hac vice* |
|  | **KEZHAYA LAW PLC** |
|  | 333 S. 7th Street, Suite 2450 |
|  | Minneapolis, MN 55402 |
| phone: | (479) 431-6112 |
| facsimile: | (479) 282-2892 |
| email: | matt@kezhaya.law |

### CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on April 19, 2021 which sends service to registered users, including all other counsel of record in this cause.  /s/ Matthew A. Kezhaya