UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE SATANIC TEMPLE, INC. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 21-cv-10102-ADB |
| | * | |
| CITY OF BOSTON, MA | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff The Satanic Temple, Inc. ("TST") asserts four federal and state constitutional claims against Defendant City of Boston ("Defendant"): violation of the Establishment Clause of the United States Constitution (Count I); violation of the Free Speech Clause and the Free Exercise Clause of the United States Constitution (Count II); violation of the Equal Protection Clause of the United States Constitution (Count III); and violation of the Free Exercise Clause of the Massachusetts Constitution (Count IV). [ECF No. 16 ("Am. Compl.")]. Currently before the Court is Defendant's motion to dismiss TST's entire complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) based on lack of standing and to dismiss Counts I–III of TST's complaint pursuant to FRCP 12(b)(6) for failure to state a claim. [ECF No. 17]. For the following reasons, the motion is GRANTED in part and DENIED in part.

I.  BACKGROUND

A.  Factual Background

The following facts are drawn from the amended complaint and taken as true for the purposes of evaluating the motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d

87, 90 (1st Cir. 2014). As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

TST is a religious organization headquartered in Salem, MA. [Am. Compl. ¶ 20]. Its Boston metropolitan Chapter has 2,449 members. [Id. ¶ 21]. In 2016, 2017, and 2018, TST reached out to the Boston City Council, which opens each of its meetings with a prayer, asking to give the invocation. [Id. ¶¶ 12, 23; ECF No. 16-1]. Defendant denied those requests, explaining that City Councilors choose speakers from their communities for their assigned weeks, and that TST could not lead the prayer without an invitation from a City Councilor. [Am. Compl. ¶¶ 13, 24; ECF No. 16-2]. Those denials were made after members of the Boston public objected to the possibility of TST opening a City Council session with a prayer and in the wake of a public outcry and 2,000-person protest after TST attempted to stage a "Black Mass" at Harvard. [Id. ¶¶ 30–33, 37]. Over 233 City Council meetings from 2011 to mid-2017, 78.5% of the prayer-givers were Christian, 4.7% were Muslim, and 4.3% were Jewish. [Id. ¶¶ 59, 62–64]. There was also one Hindu and one secular prayer offered. [Id. ¶¶ 67-68].[1]

B. **Procedural Background**

On October 17, 2018, TST brought a claim of discrimination in a place of public accommodation under Massachusetts General Laws Chapter 151B to the Massachusetts Commission Against Discrimination. [Am. Compl. ¶¶ 43–45]. Although the Commission ruled

---

[1] The cited instances add up to only 88.5% of the prayer opportunities. The Amended Complaint does not specify the prayer-givers or the content of the remaining 11.5%.

2

that the City Council session was not a "place of public accommodation," as defined by the statute, it did not rule on the constitutionality of Defendant's selection scheme for legislative prayer-givers. [Id. ¶¶ 55–56]. On January 24, 2021, TST commenced the present action, [ECF No. 2], and on April 26, 2021, filed its amended complaint, alleging that the City unconstitutionally grants invitations to "preferred" religions while refusing to invite TST because of its "undesirable" status, [Am. Compl. ¶¶ 52, 58]. TST asks the court to declare that Defendant's legislative prayer selection process violates the federal and state constitutions as it results in invitations to give an invocation being extended to representatives of some religious groups but not others and to enjoin that process.  [Id. at 20].

## II.     LEGAL STANDARD

A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to FRCP 12(b)(1). See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). The party asserting federal jurisdiction has the burden of demonstrating its existence. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). Dismissal is appropriate only when the facts alleged in the complaint, taken as true and given all reasonable inferences, do not support a finding of federal subject matter jurisdiction. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). A challenge to the court's subject matter jurisdiction must be addressed before addressing the merits of a case. See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) (citing Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002)) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case").

In reviewing a motion to dismiss under FRCP 12(b)(6), the Court must accept all well-pleaded facts as true, analyze those facts in the light most favorable to the plaintiff, and draw all

reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted) (citing Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679).

**III.  DISCUSSION**

Defendant moves to dismiss the amended complaint in its entirety under FRCP 12(b)(1), asserting that TST lacks standing for its Free Speech/Free Exercise Claim because it has not been injured by Defendant, and that, more broadly, its harms could not be redressed by a favorable decision. [ECF No. 17]. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). It also argues that, pursuant to FRCP 12(b)(6), TST's claims under the Establishment Clause are barred by Supreme Court precedent and that TST has not plausibly stated claims for relief under the First and Fourteenth Amendments. [ECF No. 17].

### A.     Standing

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. Art. III, § 2, cl. 1; Lujan, 504 U.S. at 560–61. Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560–61). Where, as here, the question of standing is based on the pleadings, TST "bears the burden of establishing sufficient factual matter to plausibly demonstrate [its] standing to bring the action," Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016), taking all of the facts (and any inferences that follow) in the plaintiff's favor, Gustavsen v. Alcon Lab'ys., Inc., 903 F.3d 1, 7 (1st Cir. 2018) (quoting Katz, 672 F.3d at 70–71).

To establish injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured by that conduct." Hochendoner, 823 F.3d at 731–32.

To establish redressability, a plaintiff must demonstrate that the alleged injury "is likely to be redressed by a favorable decision." Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982) (internal citations and quotation marks omitted).

1.  Injury

TST states that it was injured when City Councilors invited other religious figures to give an invocation at the City Council meeting but did not invite or allow TST to apply to lead a legislative prayer. Defendant responds that the Free Exercise and Free Speech Clause do not regulate government speech, and because legislative prayer is government speech, TST cannot show an injury under those clauses.[2]

To start, neither party argues that the closed meetings that are held at City Hall constitute a "traditional public forum." Instead, TST argues that City Council meetings are "limited public fora." A "designated" or "limited" public forum is created when a government intends to make nonpublic property "'generally available'" Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 678–79 (1998) (quoting Widmar v. Vincent, 454 U.S. 263, 264 (1981)) (classifying a government-hosted debate between invited candidates as a nonpublic forum). "Where the property is not a traditional public forum and the government has not chosen to create a designated public forum, the property is either a nonpublic forum or not a forum at all." Id. at 678.

Here, City Council meetings are nonpublic fora up until the point where, if the Council chooses, the floor is opened for public discussion. Without that invitation, City Councilors control each meeting's agenda, topics, and participants. [Am. Compl. ¶ 17]. Indeed, "it is not easy to imagine how government could function if it lacked" the freedom to express its own

---

[2] Defendant does not dispute that TST has provided sufficient facts to allege a concrete and particularized injury under the Establishment Clause, Equal Protection Clause, or Massachusetts Constitution for standing purposes. Rather, defendant suggests that TST has not established standing for its complaint as a whole because it has not shown that the courts could redress its injuries. [ECF No. 18 at 8–11].

views at government meetings and to do so without reference to opposing views. Pleasant Grove City v. Summum, 555 U.S. 460, 468 (2009). Broadcasting a government meeting to the public does not change the nonpublic designation because the message that is broadcast is selected and controlled by the members that make up the government entity.

Inviting a guest invocation speaker also does not change the forum's nature: in Sutliffe v. Epping Sch. Dist., a government website that featured external links which described the Town and school officials' chosen policy was not considered a public forum merely because non-government websites were chosen to represent the government's message. 584 F.3d 314 (1st Cir. 2009). Here, Defendant chooses to whom to extend an invocation invitation, and, as in Sutliffe, inviting a guest speaker to open the meeting does not transform the government meeting into a public forum (even a limited public forum) where no other public participation is permitted. See id. at 331; see also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 802 (1985).

Any speech that takes place during a government-controlled meeting which is not (or not yet) open to public discussion is government speech. Not only does the government control the speech and have final authority over who gets to participate in creating its message, but the government's long history of having debate that is closed to the public is commonly understood by the public to be governmental speech. See, e.g., Summum, 555 U.S. at 468-72; Walker v. Tex. Div., Sons of Confederate Veterans, Inc., 576 U.S. 200, 209–210 (2015).

Defendant is therefore correct that the invocation given at the start of each City Council meeting is government speech. Under the "government speech doctrine," a government entity is free to express its own views, either through its members or private parties, and that government speech is not subject to scrutiny under the Free Speech Clause of the United States Constitution.

See Summum, 555 U.S. at 467 ("If [government members] were engaging in their own expressive conduct, then the Free Speech Clause has no application."); see also Johanns v. Livestock Mktg. Assn., 544 U.S. 550, 562 (2005) ("When, as here, the government sets the overall message to be communicated and approves every word that is disseminated, it is not precluded from relying on the government-speech doctrine merely because it solicits assistance from nongovernmental sources in developing specific messages."). Additionally, claims of viewpoint discrimination under the Free Speech Clause and the Free Exercise Clause do not apply to government speech such as the prayers offered here. See Fields v. Speaker of the Pa. House of Reps., 936 F.3d 142, 160 (3d Cir. 2019); Simpson v. Chesterfield Cnty. Bd. of Sup'rs, 404 F.3d 276, 288 (4th Cir. 2005); Green v. Haskell Cnty. Bd. of Comm'rs, 568 F.3d 784, 797 n. 8 (10th Cir. 2009); cf. Williamson v. Brevard Cnty., 276 F. Supp. 3d 1260, 1294-96 (M.D. Fla. 2017) (aff'd on other grounds). Thus, because TST has not demonstrated an invasion of a legally protected interest, its Free Speech and Free Exercise claim (Count II) must be dismissed for lack of standing.

2. Redressability

Next, Defendant argues that none of TST's claims are redressable because courts cannot require the city legislature to change its prayer selection without violating the separation of powers. [ECF No. 18 at 10–11]. They do not, however, point to any authority that suggests that a declaration calling a current government practice unconstitutional and an injunction prohibiting that practice in the future would violate the separation of powers. In response, TST points to Fourth Circuit and Eleventh Circuit cases showing that courts routinely allow injunctive claims to proceed in legislative prayer cases. Lund v. Rowan Cnty., 863 F.3d 268, 290–92 (4th Cir. 2017); Williamson v. Brevard Cnty., 928 F.3d 1296, 1316 (11th Cir. 2019) (vacating an

overbroad injunction and remanding in part so that the lower court could fashion a more narrowly tailored injunction). This Court sees no reason to define the scope of potential injunctive relief at this stage or to preemptively toss out TST's suit on grounds of standing because some theoretical injunction may be impermissibly overbroad.[3]

To the extent Defendant moves to dismiss based on a lack of standing, its motion is GRANTED with respect to Count II and DENIED with respect to Counts I, III, and IV.

### B. Violation of Establishment Clause (Count I)

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." Larson v. Valente, 456 U.S. 228, 244 (1982). In the legislative prayer context, the Supreme Court has recognized that

> [t]he opening of sessions of legislative and other deliberative public bodies with prayer is deeply embedded in the history and tradition of this country. From colonial times through the founding of the Republic and ever since, the practice of legislative prayer has coexisted with the principles of disestablishment and religious freedom.

---

[3] TST also argues that Defendant should be sanctioned because it did not attempt "in good faith to resolve or narrow" the issues in its motion to dismiss in violation of Local Rule 7.1(a)(2). See generally Murray v. Uber Techs., Inc., 486 F. Supp. 3d 468 (D. Mass. 2020). Specifically, TST argues that when it conferred with Defendant, Defendant agreed that TST's Establishment Clause claim was adequately pled and did not challenge TST's standing. [ECF No. 20 at 3–4]. However, "[s]anctions are unwarranted where conferral between the parties likely would not have resolved or narrowed the issues and plaintiff, in any event, would have opposed the motion." Padmanabhan v. Healey, 159 F. Supp. 3d 220, 226 (D. Mass. 2016). Here, it is clear that Defendant would always have opposed Counts I–III of TST's complaint. TST does not dispute that Defendant conferred and alerted TST to its 12(b)(6) argument with respect to the Free Exercise/Free Speech claim and the Equal Protection claim, and Defendant's email to TST about the Establishment Clause precedent's preclusive effect alerted them to its opposition to the Establishment Clause claim. [ECF No. 16-2]. That leaves only the standing argument. To the extent that Defendant failed to comply with Local Rule 7.1(a)(2), the Court excuses that failure in the interest of justice, see LR 1.3(b), but reminds the parties of the importance of careful adherence to the requirements of the Court's local rules.

Marsh v. Chambers, 463 U.S. 783, 786 (1983). In fact, the same Congress which endorsed the Bill of Rights, opened its sessions with prayer. Id. at 787–88. Because of that history, the application of Establishment Clause principles to legislative prayer falls outside of standard Establishment Clause jurisprudence. Town of Greece v. Galloway, 572 U.S. 565, 575 (2014) (quoting Marsh, 463 U.S. at 796 (1983) (Brennan, J., dissenting)). Prayers offered at the beginning of a legislative session can "lend[] gravity to public business, remind[] lawmakers to transcend petty differences in pursuit of a higher purpose, and express[] a common aspiration to a just and peaceful society." Town of Greece, 572 U.S. at 575. Although a legislative body may not show hostility to any religion in selecting its invocation or coerce the public into participating in the prayer, "[t]he content of the prayer is not of concern to judges where . . . there is no indication that the prayer opportunity has been exploited to proselytize or advance any one, or to disparage any other, faith or belief." Marsh, 463 U.S. at 794–95. Inquiry into a prayer practice's constitutionality remains "a fact-sensitive one that considers both the setting in which the prayer arises and the audience to whom it is directed." Town of Greece, 572 U.S. at 587.

TST contends that Defendant's speaker selection process, in which City Councilors are tasked with inviting invocation speakers (usually people who have impacted their communities), is different from the constitutional prayer selection practices described in Marsh and Town of Greece and noted above. The gist of the argument is that allowing City Councilors to select Abrahamic speakers a grand majority of the time impermissibly advances those religions over "outsider" minority religions such as TST. [Am. Compl. ¶ 82]. The Court agrees that Marsh and Town of Greece do not foreclose TST's Establishment Clause claim. First, although a majority of the participating ministers who offered a legislative prayer in the Town of Greece were

Christian, the district court found that the town "at no point excluded or denied an opportunity to a would-be prayer giver" and did not prescribe prayers "to be recited in . . . public institutions in order to promote a preferred system of belief or code of moral behavior." Town of Greece, 572 U.S. at 581 (internal citations omitted). In fact, when a representative from a non-Christian minority religion requested to be placed on the invocation schedule, that representative was allowed to give an invocation. The Supreme Court thus concluded that "[s]o long as the town maintains a policy of nondiscrimination," its legislative prayers could be sectarian and it did not need to achieve strict religious balancing in choosing prayer-givers. Id. at 585–86. Here, by contrast, Defendant's policy does not allow for minority religions to put their names forward to be selected for a legislative prayer opportunity and instead relies on individual legislator preferences.

Second, although Marsh states that courts "cannot . . . perceive any suggestion that choosing a clergyman of one denomination advances the beliefs of a particular church," it explicitly did not address where a speaker's selection "stemmed from an impermissible motive." Marsh, 463 U.S. at 793–94. TST's amended complaint alleges a discriminatory motive, asserting that between 2011 and mid-2017, City Councilors have invited speakers representing Abrahamic religions to 87.5% of its meetings. [Am. Compl. ¶¶ 62–64]. The amended complaint does not allege that the content of any of these invocation speeches denigrated TST or disparaged its religion but it does aver that Defendant was urged by constituents not to invite TST to give a legislative invocation and was aware of a 2,000-person march which protested TST's attempt to stage a Black Mass at Harvard. [Id. ¶¶ 30–33, 37]. Plaintiff's facts, taken as true, allege a discriminatory motive, and therefore, Defendant's policy falls outside of Marsh.

That being said, the Court nonetheless agrees with Defendant that its policy is neutral towards religious beliefs, empowering government representatives to choose a person from their communities, religious or non-religious, to open each City Council session. According to Defendant, because invitations are based on the speaker's importance to a Councilor or a legislative district, unrelated to the advancement of a religion, any resulting prevalence of a specific religious message is therefore not in violation of the Establishment Clause. [ECF No. 18 at 5; ECF No. 16-2]. Because Boston City Councilors choose representatives to speak for them, the policy in this case is analogous to the so-called legislator-led prayer cases, in which legislators from Michigan and North Carolina gave their own invocations at legislative sessions (the overwhelming majority of which were Christian because the legislators happened to be Christian). See Lund v. Rowan Cnty., 863 F.3d 268 (4th Cir. 2017); Bormuth v. Cnty. of Jackson, 870 F.3d 494 (6th Cir. 2017). In those cases, however, the Fourth Circuit and the Sixth Circuit came to opposite conclusions as to whether the practice of legislator chosen prayer schemes ran afoul of the Establishment Clause. The First Circuit has not weighed in on this issue.

Given the fact-specific nature of the inquiry into the constitutionality of legislative prayer schemes and the lack of controlling authority from the First Circuit or Supreme Court, this Court will not dismiss TST's Establishment Clause claim at the motion to dismiss stage. In this unsettled arena, taking into account the specific facts alleged in this case, TST has plausibly raised a claim that Defendant's prayer selection policy has discriminated against it in violation of the Establishment Clause. Defendant's motion therefore is DENIED with respect to Count I.

## C.  Equal Protection Clause Claim (Count III)

In addition to its First Amendment claims, TST brings two Equal Protection Clause claims under the Fourteenth Amendment to the United States Constitution. First, TST argues that Defendant's legislative prayer selection practice discriminates against minority religions and must survive either strict scrutiny or intermediate scrutiny review. [Am. Compl. ¶¶ 105–06]. Defendant responds that only rational basis review attaches to rules governing a nonpublic forum. [ECF No. 18 at 19]. TST also puts forward a selective treatment claim, arguing that it was excluded from the prayer opportunity based on its religious beliefs, which is an impermissible consideration in government speaker selection. [Am. Compl. ¶¶ 108–09].

"Under the Equal Protection Clause, similarly situated entities must be accorded similar governmental treatment." Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439–40 (1985)). When the Equal Protection Clause is applied to a claim of religious discrimination that has also been raised as a First Amendment Free Exercise claim based on the same facts, the court reviews the state action under rational basis review. Wirzburger v. Galvin, 412 F.3d 271, 282 (1st Cir. 2005) (citing Locke v. Davey, 540 U.S. 712, 721 n. 3 (2004)).[4] Under rational basis review, the court "seek[s] only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." Plyler v. Doe, 457 U.S. 202, 216 (1982). Defendant's legislative prayer selection policy will pass the rational basis test "'if any reasonably

---

[4] In Wirzburger, the plaintiff's Free Speech claim failed on the merits. Although this Court dismissed TST's Free Speech/Free Exercise claim for lack of standing, because the government speech doctrine foreclosed any possibility of success on the merits of TST's claim, Wirzburger's explanation of the appropriate standard of scrutiny nonetheless applies. See Summum, 555 U.S. 460 at 467–69.

conceivable set of facts could establish a rational relationship between [it] and the . . . government's legitimate ends."' Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198, 213–14 (1st Cir. 2002) (quoting Montalvo-Huertas v. Rivera-Cruz, 885 F.2d 971, 978 (1st Cir. 1989)).

Defendant maintains that its policy for selecting legislative prayer-givers lets City Councilors to choose invocators who are important to their city, districts, constituents, or the councilor personally. [ECF No. 18 at 5]; see also [Am. Compl. ¶¶ 13, 46]. Empowering a legislator to select such individuals allows City Councilors to showcase important members of their community and their relationships with those members. Educating the public about their representative's values and relationships and acknowledging the contributions of various constituents are legitimate government interests, to which the legislative prayer selection scheme is rationally related. The Court has no difficulty in concluding that Defendant's policy passes rational basis review.

TST's selective treatment argument goes no further. "'[A] law, neutral on its face and serving ends otherwise within the power of government to pursue,' is not invalid under the Equal Protection Clause simply because it may disproportionately affect a suspect class." Wirzburger, 412 F.3d at 284 (quoting Washington v. Davis, 426 U.S. 229, 242 (1976)) (alterations in original). Instead, TST "must allege facts indicating that, compared with others similarly situated, [it] was selectively treated based on an impermissible consideration." Alston v. Spiegel, 988 F.3d 564, 574–75 (1st Cir. 2021). Impermissible considerations include "'race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Barrington Cove Ltd. P'ship,, 246 F.3d at 7 (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909–10 (1st Cir. 1995)). The test for whether a plaintiff is similarly situated to a person

or entity that was given preferential government treatment is "'whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" Id. at 8 (quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989)).

TST contends that it is a federally recognized religion with sincere beliefs and that the only difference between it and the speakers invited to lead the legislative prayer is that most prayer leaders "extol the virtues of Jesus" while TST "extol[s] the virtues of Satan." [Am. Compl. ¶ 108]. TST's generalized claim that it is a religious entity does not make it similarly situated to those who are invited to give the invocation. First, the invocators are not selected solely because they are from a majority religion; the prayer givers can give a prayer from any faith background or no faith background at all. [Id. ¶ 67]. Instead, both parties agree that the purported touchstone for selection is community engagement or a personal relationship with a City Councilor, on whose behalf the invocators speak. [ECF No. 18 at 5]; see also [Am. Compl. ¶ 46]. TST has not put forward objective facts suggesting that it is similarly situated to the speakers invited on that basis. It is based outside of Boston, and although six religious organizations from outside of Boston were selected to give a legislative prayer, [Am. Compl. ¶ 48], the only invocator from outside Boston that TST references in its Amended Complaint had a specific personal relationship with a Councilor after taking care of that Councilor's mother. [Id. ¶¶ 49–51, 84; ECF No. 18 at 5]. No prudent person would find that TST, which emphasizes that it does not have relationships with any of the City Councilors, was similarly situated to the sole example provided. Because Defendant's policy survives rational basis review and TST has not shown that it was selectively discriminated against, TST has failed to state a claim under the Equal Protection Clause. Defendant's motion is therefore GRANTED with respect to Count III.

## IV.  CONCLUSION

For the forgoing reasons, Defendant's Amended Motion to Dismiss, [ECF No. 17], is GRANTED as to Counts II and III and otherwise DENIED.  Specifically, Count II is dismissed for lack of standing, and Count III is dismissed for failure to state a claim.

**SO ORDERED.**

July 21, 2021                                                        /s/ Allison D. Burroughs
                                                                              ALLISON D. BURROUGHS
                                                                              U.S. DISTRICT JUDGE