IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SATANIC TEMPLE, INC.<br><br>PLAINTIFF,<br><br>V.<br><br>CITY OF BOSTON, MA<br><br>DEFENDANT. | CASE NO. 21-CV-10102<br><br><br>MEMORANDUM IN SUPPORT OF<br><br>MOTION TO STRIKE ANSWER |

## INTRODUCTION AND SUMMARY

The Court should strike Defendant's answer because it was untimely to contest the factual allegations set forth in the complaint. Defendant's proffers of excusable neglect are unpersuasive in light of well-settled law that it is incumbent upon an attorneys to manage their caseload, and inadvertence does not constitute excusable neglect. Further, Defendant's proffers are particularly unavailing because Defendant did not move for an after-the-deadline extension, not even after Counsel indicated that this was the correct procedure to forgive the untimely answer.

For deadlines to have any meaning, they must be uniformly enforced. Defendant flaunted the deadlines in this case, declined to take the necessary steps to bless the omission, and is thereby forcing Plaintiff to do all of the briefing on this matter. Without a default judgment, Plaintiff will be prejudiced by having to litigate this case for years and will have to spend substantial sums on attorney's fees which should be going toward TST's charitable purposes. Further, an order denying this motion will send the wrong message that Defendant is not beholden to the Rules. The Court should strike Defendant's answer and hold Defendant in default.

## ARGUMENT

### 1: The answer was late.

The Court should strike the answer because it was late.  The answer was due on August 4.  FRCP 12(a)(4) (the answer is due 21 days after the denial of a motion to dismiss).  The answer was not filed until August 10, after Plaintiff filed its declaration in support of default.  See ECF [22] and ECF [23].  The answer was therefore not timely to contest the allegations.  The answer should be stricken and the well-pleaded allegations of the complaint should be deemed true.  Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992); see also Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.)

### 2: "Excusable neglect" is a red herring because there is no motion to extend.

It is anticipated that Defendant will respond that the answer should not be stricken because of excusable neglect.  But "excusable neglect" is a valid consideration only if the party files a motion to extend the deadline after it has passed, supported by good cause and excusable neglect.  See FRCP 6(b)(1)(B).

The problem is that Defendant never filed the motion, not even after Plaintiff indicated that this was the correct course of action.  Defendant is pursuing a strategy of "better to beg forgiveness than ask permission."  The Rules do not allow for this strategy.  The Court should decline to entertain any justification of "excusable neglect" because Defendant never filed a motion to extend the deadline.

### 3: Defendant's proffered excuses are not "excusable neglect."

Alternatively, Defendant's proffered excuses are not "excusable neglect."  To recap, the excuses were, as to Mr. Arcangeli, that he had a response to a petition for writ of certiorari due on July 23 and he was on vacation for two weeks afterward; and, as to Ms. Freeman, that she was on vacation for the same period and errantly notated the deadline.  In light of well-established law, neither are availing.

In Federal civil procedure, "excusable neglect" is a term of art. <u>Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.</u>, 730 F.3d 23, 26 (1st Cir. 2013). It encompasses "inadvertence, mistake, or carelessness, as well as intervening circumstances beyond the party's control." <u>Id.</u> (cleaned up) (quoting <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). At bottom, the determination is an equitable one, taking account of all relevant circumstances surrounding the party's omission. <u>Nansamba v. N. Shore Med. Ctr., Inc.</u>, 727 F.3d 33, 38–39 (1st Cir. 2013) (quoting <u>Pioneer</u>, 507 U.S. at 388).

While the "excusable neglect" standard is an "elastic concept," see <u>Pioneer</u>, 507 U.S. at 392, it is still incumbent upon the litigant to "show that her failure to request an extension in a timeous manner constitutes excusable neglect." <u>Rivera-Almodovar</u>, 730 F.3d at 26. A lawyer's inattention or carelessness, "such as a failure to consult or to abide by an unambiguous court procedural rule, normally does not constitute 'excusable neglect.'" <u>Dimmitt v. Ockenfels</u>, 407 F.3d 21, 24 (1st Cir. 2005).

Counsel is sensitive to Mr. Arcangeli's deadline on the response to petition for writ of certiorari in a different case. See <u>Shurtleff v. Boston</u> (Supreme Court case no: 20-1800). But that deadline was not "competing" because it was filed 1.5 weeks before the deadline to file the answer in this case. Even if it were a "competing" deadline, the First Circuit has explained that "the fact that an attorney is busy on other matters" is not excusable neglect. <u>Pinero Schroeder v. Fed. Nat. Mortg. Ass'n</u>, 574 F.2d 1117, 1118 (1st Cir. 1978) (reversing a finding of excusable neglect on this ground); see also <u>id.</u> ("Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences.")

Counsel is less sensitive about the attorneys' vacation excuse. Counsel has found no case which supports the proposition that "I was on vacation" is excusable neglect. The closest case Counsel

could find rejected the proffer.  See Sieb's Hatcheries, Inc. v. Lindley, 13 F.R.D. 113, 121 (W.D. Ark. 1952).  At issue there were two defendants (albeit not the attorneys), one of whom was on vacation and the other just could not be found.  Id.  This was insufficient to excuse late responses to requests for admission because, as here, "there was nothing to prevent them [the attorneys] from asking for an extension of time until they could obtain the required information from the defendants."  Id.; see also Ledwith v. Storkan, 2 F.R.D. 539, 541 (D. Neb. 1942) (rejecting an attorney's absence from the venue state as excusable neglect to allow a late answer).

Even if vacation time of counsel did count as "excusable neglect," Defendant is a major metropolitan city with an army of other lawyers.  Surely one of them could have taken the minimal amount of time to issue a similar answer.  See Pinero, above, (being busy on other matters was not excusable neglect, partly, because "Filing a notice of appeal does not require much time or deliberation"); compare ECF [23] (the answer is little more than a general denial).

Likewise, the excuse of failure to notate the correct deadline is categorically not "excusable neglect."  Dimmitt, 407 F.3d at 23 ("counsels' inattention or carelessness, such as a failure to consult or abide by an unambiguous court procedural rule, normally does not constitute 'excusable neglect.'")  There is nothing ambiguous about Rule 12(a)(4)(A).  It plainly provides that, upon the denial of a motion to dismiss, the responsive pleading is due within 14 days unless the order provides otherwise.

Defendant simply does not have the requisite "excusable neglect" which would justify a late answer. It declined to file a "timeous" motion to bless the omission, despite Plaintiff's urging that as the procedurally correct course of action more than two weeks ago.  It offered a "competing" deadline, which was no competing deadline at all, having been filed nearly two weeks before this deadline elapsed, and which would not be "excusable neglect" even if it were a competing deadline.  And it offered two other categorically non-"excusable neglect" arguments of counsel was on vacation and

counsel notated the wrong deadline.

Moreover, Plaintiff would be prejudiced without the Court striking the answer and entering default. See Wright & Miller 10A Fed. Prac. & Proc. Civ. § 2699 (4th ed.) (cognizable "prejudice" includes (1) delay in plaintiff's recovery or remedy; (2) loss of evidence; and (3) the delay will impose additional costs or other unreasonable burdens on the plaintiff).

Principally, as the First Circuit has recognized, "it is trite but often true that justice delayed is justice denied." In re Atl. Pipe Corp., 304 F.3d 135, 147 (1st Cir. 2002). Absent TST winning here, TST will have to litigate this matter for years, all so that TST can have the same opportunity as other religions to give a two-minute blessing of a government meeting.

Not only will the litigation delay TST's remedy, it will be expensive. TST will need to pay Counsel to review over a decade of legislative prayers and records leading to the invitation of each invocator–to the extent the City maintained the records. And TST will need to depose who-knows-how-many Councilors as to why TST–alone–is barred from the "equal" prayer opportunity. All of this will cost substantial sums of money (north of $200,000 after all appeals, Counsel estimates), which TST could and should be putting toward TST's charitable purposes. Not toward litigating against Defendant, who is refusing to take this litigation seriously.

Last, consider the message that declining to strike the answer would send. Defendant already disregarded the Court's requirement to meet and confer about the motion to dismiss. Then it disregarded the deadline to deny the allegations. Now it declines to take the procedural step for the Court to forgive the omission. What's next? Defendant will issue boilerplate objections to discovery requests. Contra. FRCP 26, Advisory notes at 2015 amendment (boilerplate objections are not permissible). Or it just won't respond to discovery. Contra., e.g., FRCP 33 (they have to respond). Or it will unilaterally decline to appear at its depositions. Contra. FRCP 30(a)(1) (a party can't

unilaterally cancel their own deposition). Unless the Court holds Defendant to the Rules, the Rules will continue to have no meaning to Defendant.

**WHEREFORE** Plaintiff prays the Court strike Defendant's answer and hold Defendant in default.

|  |  |
|---:|:---|
| | Respectfully submitted on August 31, 2021, |
| By: | Matthew A. Kezhaya, AR # 2014161, *phv* |
| | **KEZHAYA LAW PLC** |
| | 333 S. Seventh St., Suite 2450 |
| | Minneapolis, MN 55402 |
| phone: | (479) 431-6112 |
| facsimile: | (479) 282-2892 |
| email: | matt@kezhaya.law |

### CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on August 31, 2021 which sends service to registered users, including all other counsel of record in this cause. /s/ Matthew A. Kezhaya