IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SATANIC TEMPLE, INC. | CASE NO. 21-CV-10102 |
| PLAINTIFF, | |
| V. | RESPONSE TO CITY'S MOTION FOR PROTECTIVE ORDER |
| CITY OF BOSTON, MA | |
| DEFENDANT. | |

## INTRODUCTION AND SUMMARY

**COMES NOW** Plaintiff The Satanic Temple ("**TST**"), by and through counsel of record, with a response in objection to the City's motion for protective order (doc. 33). The City's motion is premised on the false assertion of law that public officials are immune to compulsory testimony. Councilor Wu is subject to a deposition because she is the only witness who can testify from personal knowledge about why she has declined to afford TST an equal invitation despite three demands since 2016. She is not immune from compelled testimony, not even if she were the sitting President of the United States. The motion must be denied.

ARGUMENT

The City's motion is premised on the argument that Wu, as a city councilor, is a "high-ranking government official." The City offers no authority for the proposition the brief simply assumes the conclusion. A review of the authorities suggests that city councilors are not high-ranking government officials. Minimally, the City failed to prove it.

The City also includes a throwaway argument that the deposition would be an "undue burden," because of the timing. But if the date of the deposition were the issue the City would not have reneged on its offer to agree on an alternative date. The real issue is buried in a footnote: the City has absolutely no intention of producing Wu without a court order, subpoena notwithstanding and regardless of its timing. Doc. 34 at p. 7, fn. 2.

The Court should deny the City's motion because the City failed to prove that Wu is a "high-ranking government official;" and, even if she is, Wu has unique knowledge about the facts. As to the City's motion for attorney's fees, the City failed to satisfy its higher burden

of showing that the notice of deposition was "frivolous, unreasona-ble, or without foundation." If the Court denies the City's motion, it should grant TST reasonable attorney's fees for having to respond to this delay tactic.

## 1:  Wu is not a "high-ranking government" official.

The City's motion should be denied because it has not proven that city councilors are "high-ranking government officials." In lieu of defining a "high-ranking government official" or providing actual evidence, the City simply assumed its conclusion that city counci-lors generally, and Wu particularly, meets the definition. As the party with the burden of persuasion, this was simply insufficient. *E.g. S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Commissioners*, No. 4:10-CV-2163 CEJ, 2011 WL 1899211, at *3 (E.D. Mo. May 19, 2011) (FEMA failed to establish an employee as a high-ranking official and thus did not establish good cause for issu-ance of a protective order); see also *Sec. & Exch. Comm'n v. Lemelson*, 334 F.R.D. 359, 361 (D. Mass. 2020) ("The party seeking a

protective order has the burden of demonstrating good cause") (citing FRCP 26(c) and *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir. 1986)).

While it may be sufficient to rest on the fact that the City failed its burden of persuasion, the below details why the City's assumption bears no weight. A protective order does not lie because Wu is not a "high-ranking government official."

### 1.1: The rule applies to the executive branch, but Councilors are legislative in nature.

The rule statement at issue is that "*top executive department officials* should not, absent extraordinary circumstances, be called to testify or deposed regarding *their reasons for taking official action*." *Bogan v. City of Bos.*, 489 F.3d 417, 423 (1st Cir. 2007) (emphasis added). This rule statement implicates two problems with the City's proffer that city councilors are, *per se*, "high-ranking government officials."

First, a city councilor is not a "top *executive* department official" because the position is not executive at all. See Acts of 1951, c. 376, s. 1.11 ("There shall be in the city a mayor who shall be the chief

executive officer of the city, [and] a city council of nine members which shall be the *legislative* body of the city") (emphasis added)[1]. Councilors are legislative, not executive, so the rule is inapplicable.

The City will contest, "but Wu is the mayor now." This implicates the second problem. Wu is not being called to testify about her "reasons for taking official action" as mayor, she is being called to testify about her not taking official action as legislator.

Not even the sitting President of the United States is, by virtue of his position, immune from compelled testimony for actions taken prior to becoming President. *Jones v. Clinton*, 72 F.3d 1354, 1358 (8th Cir. 1996), aff'd, 520 U.S. 681, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997). Even the United States President is "subject to the same laws that apply to all other members of our society." *Id.* So is Wu.

Neither prong of the applicable rule statement implicates a need for TST to show "extraordinary circumstances." The City's motion

---

[1] The number of city councilors was separately increased from 9 to 13, but the cited section has not apparently been amended. See "Boston City Charter" at § 11 (available at https://www.cityofboston.gov/images_documents/2007%20the%20char-ter%20draft20%20%28final%20draft1%20with%20jumps%29_tcm3-16428.pdf ) (citing Acts of 1982, c. 602, s. 1).

fails even cursory scrutiny. The Court should deny the motion.

### 1.2: Councilors are unlike those held as "high-ranking government officials."

Further, the position of city councilor is unlike those held as "high-ranking government officials." A compare/contrast analysis is necessary because there is no settled definition for a "high-ranking government official." See *State of New York v. Oneida Indian Nation of New York*, No. 1:95CV554 (LEK/RFT) (the parties agreed "there is no clear definition"), 2007 WL 2287878, at *12 (N.D.N.Y. Aug. 7, 2007); *S.L. ex rel. Lenderman*, 2011 WL 1899211 at *2 (finding no "hard and fast rule").

Absent a clear definition, one court has resolved whether the official is an "executive in charge of a jurisdiction or governmental unit." *New York*, 2007 WL 2287878 at *12. There, a former Associate Counsel to the Governor and a former special advisor to the Governor failed the test because they were "non-executive." *Id.* As identified in § 1.1, a city councilor is legislative and not executive. Acts of 1951, c. 376, s. 1.11; see also MGL ch. 43, § 18 (addressing

"the *legislative* powers of the city council") (emphasis added).

Wu is not in charge of any jurisdiction and she is not a top-level executive. Instead, she shares decisionmaking power with twelve other co-equal decisionmakers. This test suggests Wu is subject to a deposition on equal terms as all other members of our society.

An alternative approach has been to resolve whether the official position at issue is full-time as opposed to part-time. *S.L. ex rel. Lenderman*, No. 4:10-CV-2163 CEJ, 2011 WL 1899211, at *3. This approach relates back to the notion that high-ranking officials have greater time constraints than other witnesses and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation. *Bogan*, 489 F.3d at 423.

However, the City's motion provides precisely zero information about whether city councilors generally, or Wu particularly, have a "full-time" job function. The "Boston City Charter" document cited at fn. 1 offers no guidance. The Boston Municipal Code offers no guidance. And a search of Massachusetts General Laws, particularly ch. 43 (pertaining to city charters), provides no answer.

As best as TST can tell, the office of city councilor is not a full-time position. A review of Councilor Flaherty's LinkedIn profile suggests dual employment, both as a real estate litigator and as a Councilor. EXHIBIT 1 at pp. 1-2. If Councilor Flaherty can handle the burden of litigation, Wu can handle the burden of a deposition.

Looking at the issue from a different perspective, the office of the mayor is the lowest level of local government which has been held to be "high-ranking." See *Stormo v. City of Sioux Falls*, No. 4:12-CV-04057-KES, 2016 WL 697116, at *7 (D.S.D. Feb. 19, 2016). The City offers no authority to suggest that a city councilor is "high-ranking" and TST can find none.

Simply assuming one's conclusion is not sufficient to show good cause. The City needed to provide a case that says city councilors are, *per se*, "high-ranking government officials;" or at least needed to adduce some evidence to prove the point. The City has failed to *prove* that Wu is a "high-ranking government official." The Court should deny the City's motion.

## 2:  Wu has unique knowledge about the facts.

Even if Wu is a "high-ranking government official," she is still subject to a deposition because she has unique knowledge about the facts at issue. See *Bogan*, 489 F.3d at 423 (discovery is to be permitted "where it is shown that other persons cannot provide the necessary information.")

The Establishment Clause question in this case is whether the City's prayer selection policy discriminates among religions. *E.g. Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2089 (2019); *Lund v. Rowan Cty., N. Carolina*, 863 F.3d 268 (4th Cir. 2017) and *Williamson v. Brevard Cty.*, 928 F.3d 1296 (11th Cir. 2019).

Unless unfettered discretion is prima facie proof of discrimination in the Establishment Clause context, as it is in the Free Speech and Free Exercise contexts, legislative motive is the core question. See *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 758, 108 S. Ct. 2138, 2144, 100 L. Ed. 2d 771 (1988) (in the Free Speech context, unfettered discretion is prima facie proof of discriminatory intent) and *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct.

1868, 210 L. Ed. 2d 137 (2021) (same in the Free Exercise context); *Hassan v. City of New York*, 804 F.3d 277, 297–98 (3d Cir. 2015) ("discrimination" should not be confused with "animus").

So, why did Michelle Wu–one of the thirteen individuals with the power to issue an invitation–decline to extend an invitation to TST despite three requests directed to her since 2016? Only she can answer that from personal knowledge.

Additionally, Wu personally issued the only known pre-litigation statement of the selection policy in an email, asserting that:

> The invitations are often used to recognize faith leaders who are active in the community and organizations that are representative of their districts. There is no restriction or criteria based on any Councilors' religious preferences. Many of us have a long list of folks we'd like to invite but haven't been able to accommodate.

So, what are the discrete characteristics that distinguish TST from those invocators Wu invited, or at least wanted to invite? If TST can disprove the asserted distinguishments, then the City's defense falls apart.

Similarly, Wu is the only Councilor listed on the City's privilege log. EXHIBIT 2. From it, we see that she had multiple discussions with the City's legal staff about whether to invite TST. But TST did not direct the demand for inclusion only to Wu, so the absence of other Councilors suggests that Wu had the most involved role among the Councilors in determining that TST shall not be invited.

It is a significant part of TST's litigation strategy to cement Wu's story, before she has an opportunity to change it based on other witness testimony or documents produced through discovery. Once her testimony is cemented, the documents will either prove or disprove her defense. Even if Wu is a "high-ranking government official," a claim which is wholly unsupported both factually and legally, she is still subject to compelled testimony.

### 3:  Attorney's fees.

The City also seeks attorney's fees for bringing the motion. Doc. 33. The City is not entitled to attorney's fees. An award of attorney's fees as a discovery sanction is meant to compensate a party which

was unjustly harmed by a failure to adhere to the discovery rules.

But the City did not incur any attorney's fees in bringing the motion. The City's attorneys are public employees who are paid a salary. They are not charging an hourly rate to bring the motion, so the City has incurred no actual harm to be compensated.

There is another rule at play: this is a civil rights case and TST is acting as a private attorney general by vindicating a policy that Congress considers of the highest priority. *Fox v. Vice*, 563 U.S. 826, 832–33, 131 S. Ct. 2205, 2213, 180 L. Ed. 2d 45 (2011). For a defendant to receive an award of attorney's fees, the award must be justified by a finding that the plaintiff's action was "frivolous, unreasonable, or without foundation." *Id.*

The City needed to justify its request for attorney's fees, not by error alone, but on a showing that TST's notice of deposition was "frivolous, unreasonable, or without foundation." Instead, it falsely asserted that Wu has no unique personal knowledge about the case.

If TST is right on the law, attorney's fees should be granted to TST. See FRCP 26(c) (incorporating Rule 37(a)(5) as to expenses

on a motion for protective order); FRCP 37(a)(5)(B) (if the motion is denied the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion incurred in opposing the motion, including attorney's fees.").

If TST is wrong, no attorney's fees should be awarded to either side because the City failed its satisfy its higher burden to show that TST's action was "frivolous, unreasonable, or without foundation."

Respectfully submitted on November 12, 2021, on behalf of The Satanic Temple, Inc.

By:  /s/ Matthew A. Kezhaya, ABA # 2014161



KEZHAYA LAW PLC
1202 NE McClain Rd
Bentonville, AR 72712
phone:      (479) 431-6112
facsimile:  (479) 282-2892
email:      matt@kezhaya.law

## CERTIFICATE AND NOTICE OF SERVICE

NOTICE IS GIVEN that I, Matthew A. Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on November 12, 2021 which sends service to registered users, including all other counsel of record in this cause.   /s/ Matthew A. Kezhaya