IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SATANIC TEMPLE, INC. <br> PLAINTIFF, <br><br> v. <br><br> CITY OF BOSTON, MA <br> DEFENDANT. | CASE NO. 1:21-CV-10102-AK |

**DEFENDANT CITY OF BOSTON'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH REGARDING THE DEPOSITION OF CITY COUNCILOR AT LARGE MICHELLE WU**

Defendant City of Boston ("Defendant" or the "City") hereby submits this reply in support of its Emergency Motion for a Protective Order and Motion to Quash ("Motion for a Protective Order") the subpoena issued to Mayor Michelle Wu[1] ("Mayor Wu").

### I.     ARGUMENT

It is well established that legislators may be considered high ranking government officials and that the practice of subjecting high ranking government officials to the discovery process should be discouraged because "[h]igh ranking government officials have greater duties and time constraints than other witnesses." See Bogan v. City of Bos., 489 F.3d 417, 423 (1st Cir. 2007) (citation omitted) ("The need for limited access to high government officials through the discovery process is well established."); United States v. Morgan, 313 U.S. 409, 422 (1941). Defendant's Motion for a Protective Order should be granted because (1) controlling case law confirms that Mayor Wu is a high ranking government official[2], and (2) Plaintiff The Satanic Temple, Inc. ("Plaintiff" or "TST") has not shown that there are compelling or extraordinary circumstances present that warrant a high ranking government official to submit to deposition,

---

[1] Between the filing of Plaintiff's opposition to Defendant's Motion for a Protective Order to the date of this Reply, Councilor Wu was elected to the seat of mayor of the city of Boston.
[2] Defendant's position remains that even in her former role as a city councilor at-large, Mayor Wu would be deemed a high ranking government official.

1

particularly where there are lower-ranking individuals who possess the same information who may be deposed.

Under controlling case law, at least three factors must be present before extraordinary circumstances can be found: (i) the information sought must not be obtainable elsewhere; (ii) the information sought must be essential to the claim; and (iii) provision of the testimony must not interfere with the official's government responsibilities. McNamee v. Massachusetts, No. CIV.A. 12-40050-TSH, 2013 WL 1285483, at *3 (D. Mass. Mar. 25, 2013) (citation omitted). If every member of Defendant's City Council were to be subjected to providing deposition testimony regarding every invitation extended to an invocation speaker, "such officials will spend an inordinate amount of time tending to pending litigation" rather than running the government. United States v. Morgan, 313 U.S. 409, 422 (1941).

Here, where Plaintiff has failed to proffer any legitimate reason why Plaintiff cannot obtain the testimony or information regarding the City's invocation speaker selection practice from lower ranking officials or other sources; where Plaintiff seeks information from Mayor Wu that is not essential or relevant to the claim being litigated; where Defendant has, in fact, produced to Plaintiff the names of several lower ranking individuals who may possess relevant knowledge or information amounting to the same information that can be obtained through the deposition of the city councilors or Mayor Wu; and where requiring Mayor Wu to submit to deposition in this discovery process will in fact interfere with her government responsibilities, Defendant's Motion for a Protective Order should be granted.

Moreover, Plaintiff's Equal Protection claim has been dismissed so this case is not about selective treatment, but rather it is about whether the City's invocation speaker policy is permissible under the Establishment clause. The inquiry into whether the City's invocation

speaker selection practice conforms to the Establishment clause boundaries does not depend on the subjective motives or preferences of each of the city councilors, but rather on the selection scheme. This information can be obtained from several different sources, e.g. lower ranking officials.

### A. Plaintiff's Argument That Legislators/City Councilors Cannot Be High Ranking Government Officials is Erroneous.

The proposition that an official whose duties are "legislative in nature" cannot be deemed a top ranking government official is inconsistent with the meaning of "high ranking government official accepted under federal case law." See e.g., McNamee v. Massachusetts, 2012 WL 1665873 (D. Mass. May 10, 2012) (quashing subpoenas to U.S. representative); Toussie v. County of Suffolk, 2006 WL 1982687, at *1 (E.D.N.Y. July 13, 2006) (treating county sheriff as a high-ranking government official). This protection is not limited to members of the executive branch of government. Thus, the use of the word "executive" in cases granting protection to "high ranking executives" does not refer exclusively to members of the executive branch of government. Rather, the term "executive" refers to an individual's positionality to its organization. McNamee, 2012 WL 1665873, at *2 ("Although Augustus was not a member of Congress, as Chief of Staff to Rep. McGovern he held a position of substantial importance to the operation of that governmental body."). As a city councilor, Mayor Wu along with the twelve (12) other city councilors were charged with approving the city budget, monitoring, creating, and abolishing city agencies, making land use decisions, and creating, amending, or rejecting legislation – monitoring and effecting the City's operations and managing its public policies. Thus, her duties and positionality to the government make clear that, even as a city councilor, she held a position of substantial importance to the operation of the City's government.

### B. No Compelling or Extraordinary Circumstances Exist To Warrant the Deposition of a High Ranking Government Official.

#### i. Plaintiff Has Not Established That It Cannot Obtain The Information It Seeks From Other Sources.

Even recognizing that in limited circumstances top ranking government officials may be subjected to discovery, courts still require a showing that other persons cannot provide the necessary information. Bogan, 489 F.3d at 423. (citation omitted). Plaintiff cannot bypass this rule by simply expressing distrust of the individual it seeks to depose. Plaintiff's position that it cannot seek the information it believes Mayor Wu possesses from other sources because it wants to ensure that "she [does not have] an opportunity to change [her story] based on the testimony of other witnesses or documents produced" does not hold under these circumstances. Def's Opp'n 11, ECF No. 42.

#### ii. Plaintiff Has Not Shown That Mayor Wu Possesses First-Hand Knowledge of its Claims.

Plaintiff fails to demonstrate that Mayor Wu has personal knowledge of the claims at issue. In its efforts to justify why Mayor Wu has unique and personal knowledge of the claims, Plaintiff posits that determining the "legislative motive" is the core question in proving discrimination in the Establishment Clause context. ECF No. 42 at 10 ("So, what are the discrete characteristics that distinguish TST from those invocators Wu invited, or at least wanted to invite? If TST can disprove the asserted distinguishments, then the City's defense falls apart."). The question at the center of this case is whether the City's invocation speaker selection policy conforms to the long history and tradition of legislative prayer approved in Marsh v. Chambers and Town of Greece. See generally, Marsh v. Chambers, 463 U.S. 783 (1983); Town of Greece, N.Y. v. Galloway, 134 S. Ct. 1811 (2014). Mayor Wu's individual motives for not responding to

TST's requests for one of her invocation invitations is not relevant to the City's policy for selecting invocation speakers.

Further, the only support Plaintiff offers is purely speculative and is not essential or even relevant to the claim, e.g. (i) "Wu personally issued the only known pre-litigation statement of the selection policy in an email" (ECF No. 42 at 10)[3]; (ii) the inclusion of Mayor Wu's name on Defendant's Privilege Log indicates that Councilor Wu sought legal advice about whether to invite TST to deliver an invocation (Id. at 11); (iii) Mayor Wu being the only city councilor listed in the Privilege Log suggests that Mayor Wu "had the most involved role among the Councilors in determining that TST shall not be invited" (Id.); and (iv) Mayor Wu is the only person who can answer why she did not extend one of her invocation invitations to TST (Id.). First, Plaintiff, by citing to Defendant's Privilege Log[4], cannot abstract itself from the fact that Plaintiff did not make a single mention of Mayor Wu or allegation against her in neither its Original Complaint nor its lengthier Amended Complaint. Likewise, Plaintiff's reference to an email Mayor Wu issued at the time that she served as Council President to the City Council does nothing more than show that the individual serving as the administrative head of the City Council was aware of the City Council's selection policy.

### C. Plaintiff's Efforts to Depose Mayor Wu are Harassing and Improper.

Plaintiff confirms in its Opposition to Defendant's Motion for a Protective Order that there is no cognizable basis for seeking Mayor Wu's testimony other than to make a public statement about Mayor Wu. Plaintiff virtually admitted that its discovery efforts with respect to its demand to take Mayor Wu's deposition was not intended to advance the alleged merits of this

---

[3] Beyond the issue of relevancy, Plaintiff's representation that Mayor Wu issued the only pre-litigation statement about the City's selection process is clearly false. See October 9 Email from O'Donnell to Jarry annexed to the Amended Complaint, ECF No. 16, as Exhibit 2 (showing a pre-litigation statement issued to Plaintiff by another government official explaining the Boston City Council's invocation speaker selection policy).
[4] Defendant continues to review discovery and intends to produce a supplemental Privilege Log.

case but rather to gain an opportunity to highlight its issues with Mayor Wu.[5] Id. ("[] I expected that the matter would at least be something the public takes heed of. Perhaps, if not the above, the public may take note of the caliber of Wu's character[]"); Id. at 2 ("Or, I would accept as a consolation prize, that Michelle Wu would cut off her nose to spite her face by publicly announcing her self-appointed status as above the law"). As indicated, Plaintiff deliberately noticed the deposition of a high ranking government official, who at that time, was a candidate for the office of mayor, prior to receiving any discovery from Defendant, on the date of the City's election – a date on which Plaintiff was aware that Mayor Wu, then a mayoral candidate, would be unavailable due to her campaign obligations for that election. See ECF No. 38 at 1 ("I expected the notice of deposition would inspire (or force) Wu to think about all of the people from whom she was seeking a vote of confidence on November 2nd [sic]"). As a consequence, the City had to shift its resources to responding to Plaintiff's demand to depose Mayor Wu. Plaintiff's counsel could not have made himself any clearer as to his intent to make discovery burdensome for Defendant in his October 29th Letter to the Court (ECF No. 38) wherein he provided his reasons for noticing Mayor Wu's deposition on the date of the election for which Plaintiff knew she would be busy.

## II.   CONCLUSION

For the reasons herein and in the Motion, Defendant respectfully requests an Order: (i)

---

[5] It is abundantly clear from Plaintiff's letter to the Court dated October 29, 2021 (ECF No. 38) that Plaintiff's attempt to depose Mayor Wu, instead of the many other lower ranking officials, is motivated by Plaintiff's personal discontent and/or distrust of Mayor Wu and not by its claims against the City's actual invocation speaker selection policy or practice. See e.g., ECF No. 28 at 1-2 ("At bottom, my litigation strategy on this matter involved putting Wu's and the City's litigation goals…against Wu's personal goals."); id. ("My bet as that her self-interest would win out against the litigation."); see also, ECF No. 42 at 11 ("It is a significant part of TST's litigation strategy to cement Wu's story before she has an opportunity to change it based on other witness testimony or documents produced through discovery…once her testimony is cemented, the documents will either prove or disprove her defense."). This case is not about Mayor Wu's personal ambitions.

quashing the subpoena to Mayor Wu; and (ii) awarding Defendant its fees and any equitable relief the Court deems appropriate, based upon Plaintiff's bad faith discovery practices.

                Respectfully submitted,

                DEFENDANT,

                CITY OF BOSTON,

                By its attorney,
                Adam N. Cederbaum,
                Corporation Counsel

                /s/ Nailah A. Freeman_____
                Nicole M. O'Connor (BBO #675535)
                Nailah A. Freeman (BBO #695910)
                City of Boston Law Department
                One City Hall Square, Room 615
                Boston, MA 02201
                Telephone: (617) 635-4064
                Facsimile: (617) 635-2012
                Nicole.oconnor@boston.gov
                Nailah.freeman@boston.gov

Dated: November 26, 2021

**CERTIFICATE OF SERVICE**

  I hereby certify that, on November 26, 2021, this document was served on Plaintiff by electronic mail as follows:

  Matthew A. Kezhaya
  Kezhaya Law PLC
  333 S. 7th St., Suite 2450
  Minneapolis, MN 55402
  matt@kezhaya.law

            /s/ Nailah A. Freeman
            Nailah A. Freeman