In the United States District Court
District of Massachusetts

| | |
|---|---|
| The Satanic Temple, Inc. | Case no. 21-cv-10102 |
| Plaintiff, | |
| v. | Surreply to City's motion for protective order |
| City of Boston, MA | |
| Defendant. | |

## Introduction and summary

**Comes now** TST, by and through counsel, with a surreply in objection to the City's motion for protective order (doc. 33). The City's reply (doc. 43) is replete with new arguments, to which TST is entitled a response. Chief among which, Boston raises a new argument that it is irrelevant under the Establishment Clause if Boston's Councilors targeted TST for exclusion. As the Court has already held, the City is wrong. The Councilors' (Wu included) subjective motivations are not only relevant, they are dispositive to the Establishment Clause claim. The parties also agreed to additional depositions because the Councilors' motivations are at issue.

## Argument

### 1: Wu is not a "high-ranking government" official.

The City's reply re-raises the same conclusory argument that city councilors are *per se* "high ranking government officials." Doc. 43 at 1. The case relied upon by the City does not–as the City claims– hold that city councilors are high ranking government officials. *Bogan v. City of Boston*, 489 F.3d 417 (1st Cir. 2007) (it doesn't even address city councilors).

Wu's newfound status as mayor-elect does not change the equation because she is to testify about her pre-mayoral conduct and was called to testify before she was elected. *Jones v. Clinton*, 72 F.3d 1354, 1358 (8th Cir. 1996) (not even the sitting President is immune to compelled testimony about his pre-election conduct).

The City does not otherwise respond to the compare/contrast argument that Wu, a part-time city councilor, is entirely unlike those government officials who have been deemed "high ranking." Bare conclusions, unsupported by facts or law, do not make for the requisite good cause which supports a protective order.

## 2: Wu has unique knowledge about the facts.

Even if Councilor Wu is a "high ranking government official," she is subject to a deposition because she has unique personal knowledge about her subjective motivations. The City's reply raises a new argument that Wu's subjective motivations are irrelevant. Doc. 43 at 2-3.

As this Court has already held, the City is wrong. See Doc. 21 (order denying motion to dismiss) at 9-12. The Establishment Clause fact issue in this case is whether the City's prayer selection policy amounts to unconstitutional denominational preference. Doc. 21 at 9 (the complaint stated an Establishment Clause claim because, "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another" (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)); and id. at 11 (the Establishment Clause claim survives because TST alleged that its exclusion "stemmed from an impermissible motive" (quoting *Marsh v. Chambers*, 463 U.S. 783, 793-94 (1983)).

In this case, the Councilors' subjective motivations are not only

relevant, they are dispositive to the Establishment Clause claim. Boston's contrary assertion is unfounded by existing law and is contrary to this Court's order denying the motion to dismiss.

The reply fairly points out a misstatement in the response. Doc. 43 at 4 (citing Doc. 42 at 10). There, we misstated that Wu made the "only" known prelitigation statement of the selection policy, an email from 2016. We meant that this was the "earliest" known prelitigation statement, *i.e.*, from before it was reasonably clear that the constitutionality of the prayer selection policy would be litigated.

Boston replies that, two years after the 2016 Wu email we blockquoted in the response, Christine O'Donnell separately wrote about Boston's unwritten selection policy. Doc. 43 at 4 (citing doc. 16-2). This does not respond to the point, that Wu personally wrote an email to justify her refusal to extend TST an equal invite to the prayer ceremony. How she thinks TST is similar to or different from the organizations which she invited speaks to the sole Establishment Clause fact issue in this case.

The City has offered no suggestion that anybody else can testify

to Wu's subjective motivations. That is because nobody else can. Anyone other than Wu who purports to testify to Wu's subjective motivations would be proffering either rank hearsay ("Wu said TST is different because…") or bare speculation ("I think TST was different to Wu because…").

Only Wu can testify about why she refused to invite TST despite that TST addressed three demands for inclusion to her. The parties contemplated the Councilors' deposition testimony, and increased the default number of depositions for that very reason. Doc. 25 (joint 26(f) report) at 1-2 (increasing the number of depositions because, "There are 13 Councilors, *each of which has discoverable knowledge* for their reasons not to invite a representative from Plaintiff") (emphasis added).

So, even under the hypothetical that a part-time city councilor is a *per se* "high ranking government official" (the City has never produced facts or law to support this dubious claim), Wu is still subject to a deposition. Nobody is above the law by virtue of their position, not even the sitting President of the United States.

SURREPLY TO CITY'S MOTION FOR PROTECTIVE ORDER

### 3: Attorney's fees.

The City argues in reply, for the first time, that it should be granted attorney's fees because TST's subpoena to Wu was in bad faith. Doc. 43 at 6, fn. 5. The predicate for the City's argument is the ordered-statement for why we selected November 2 to depose Wu. Doc. 38. That letter says nothing about why Wu was selected because this Court's order explicitly prohibited addressing any other issue, *e.g.*, why we sought to depose Wu in the first place. Doc. 36 ("The filing should be limited to this issue [i.e. why the deposition of Councilor Michelle Wu was scheduled for November 2, 2021]").

The City was going to file this motion for protective order if we noticed a deposition for November 2, or December 2, or October 2, 2022. Doc. 34 at 7, fn. 2 ("Please note that Defendant does not intend to produce Ms. Wu, absent a court order.") If the City really took issue with the timing, as distinct from the deposition, it wouldn't have reneged on its offer to provide a new date pending the resolution of this motion.

It is irrelevant that we made a point through the judicial process.

This is more than simply "not bad faith," it is a fundamental constitutional right. See U.S. Const. Amend. I (Free Speech Clause; Freedom to Petition Clause). To sanction TST specifically for exercising its First Amendment rights would be a gross abuse of discretion.

We live in a government of laws. Wu is not immune to judicial process and she is not immune to public scrutiny. She could have avoided the need of this lawsuit by extending an invitation on equal terms as every other "acceptable" religion–as the Establishment Clause commands. Instead, she refused to extend that invite. So, she is now subject to testify why she refused to extend the invite.

**WHEREFORE** TST prays this Court deny the City's motion for protective order and grant TST attorney's fees for having to respond to this delay tactic; or at least deny attorney's fees to the City.

> Respectfully submitted on November 26, 2021,
> on behalf of The Satanic Temple, Inc.
> By:  /s/ Matthew A. Kezhaya, ABA # 2014161
> KEZHAYA LAW PLC
> 1202 NE McClain Rd
> Bentonville, AR 72712
> phone:  (479) 431-6112
> email:  matt@kezhaya.law

SURREPLY TO CITY'S MOTION FOR PROTECTIVE ORDER

## CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on November 26, 2021 which sends service to registered users, including all other counsel of record in this cause. s/ Matthew A. Kezhaya