**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

THE SATANIC TEMPLE, INC.,
Plaintiff,
v.
CITY OF BOSTON, MA,
Defendant.

Case No. 21-CV-10102-AK

**MEMORANDUM AND ORDER ON DEFENDANT CITY OF BOSTON'S EMERGENCY MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH REGARDING THE DEPOSITION OF CITY COUNCILOR AT LARGE MICHELLE WU**

**A. KELLEY, D.J.**

Currently pending before the Court is Defendant City of Boston's ("Defendant" or "the City") Emergency Motion for Protective Order and Motion to Quash Regarding the Deposition of City Councilor At Large Michelle Wu. [Dkt. 33 ("Def.'s Mot.")]. For the reasons set forth below, Defendant's motion is GRANTED. Additionally, Defendant's request for costs and attorneys' fees is GRANTED, with the amount to be determined pending further motion by Defendant and subsequent litigation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The City's motion [Def.'s Mot.] arises out of a subpoena that Plaintiff The Satanic Temple ("Plaintiff" or "TST") served on then-City Councilor At Large Michelle Wu, in connection with litigation wherein Plaintiff has challenged the constitutionality of the Boston City Council's invocation selection policy. TST filed this action on January 20, 2021 [Dkt. 1],

challenging the constitutionality of Defendant's legislative prayer selection process under both the First and Fourteenth Amendments to the United States Constitution, as well as the Free Exercise Clause of the Massachusetts Constitution. [Dkt. 2 ("Compl.") at ¶¶ 74–109; Dkt. 16 ("Am. Compl.") at ¶¶ 74–117].

The Boston City Council has a "longstanding tradition" of beginning its legislative sessions with invocations or prayers [Dkt. 34 ("Def.'s Mem. Supp. Mot.") at 1], with each City Councilor selecting a guest invocation speaker on a rotating basis for each session [id.; Am. Compl. at ¶¶ 2, 8]. Per the Amended Complaint, TST is a religious organization headquartered in Salem, MA and with a Boston area membership of 2,449 [id. at ¶¶ 20–21]. TST initiated this litigation to challenge the City Council's tradition and its repeated denials of TST's requests to deliver the invocation in 2016–2018 [id. at ¶¶ 12, 23; Dkt. 16-1]. TST has alleged that these denials and the City's legislative prayer practice violate the Establishment Clause of the First Amendment (Count 1), the Free Speech Clause and Free Exercise Clause of the First Amendment (Count 2), the Equal Protection Clause of the Fourteenth Amendment (Count 3), and the Free Exercise Clause of the Massachusetts Constitution (Count 4), essentially by failing to provide equal or proportional opportunities for participation by all religious groups. [Am. Compl. at ¶¶ 105–11]. Following the City's filing of a Motion to Dismiss the Amended Complaint [Dkt. 17], the Court dismissed Counts 2 and 3 on July 21, 2021 [Dkt. 21], leaving Counts 1 and 4 active claims in this litigation.[1]

On August 26, 2021, the parties submitted a joint proposed pretrial schedule containing, in relevant part, a September 9, 2021 deadline for initial disclosures and a November 19, 2021 deadline for any amendments to pleadings, with a deadline the following year for the completion

[1] Specifically, the Court dismissed TST's Free Speech and Free Exercise claim (Count 2) for lack of standing [Dkt. 21 at 8], and dismissed TST's Equal Protection Clause claim (Count 3) for failure to state a claim [id. at 15].

of all discovery by October 26, 2022. [Dkt. 25]. On August 30, 2021, the Court entered an order adopting these discovery deadlines. [Dkt. 26].

Withing two months of the Court's scheduling order, on October 27, 2021 the City filed its Emergency Motion for Protective Order and Motion to Quash Regarding the Deposition of City Councilor At Large Michelle Wu. [Def.'s Mot.]. On October 22, 2021, Plaintiff had served a deposition subpoena on Councilor Wu (hereinafter "Mayor Wu" in light of her current position and title)[2] for her appearance on November 2, 2021 at 9:00 am, at The Satanic Temple's headquarters in Salem, MA. [Dkt. 34-1 ("Def.'s Mem. Supp. Mot. Ex. 1")]. November 2, 2021 was the date of Boston's local elections, in which Mayor Wu was a mayoral candidate on the ballot. [Def.'s Mem. Supp. Mot. at 3]. The City states that upon receiving the deposition notice, it informed Plaintiff that Mayor Wu would be unavailable that day, and asserts that Plaintiff's counsel stated he was unwilling to reschedule the noticed deposition date. [Id.]

On October 27, 2021, the parties conferred pursuant to Local Rule 7.1, though their accounts of this conference differ. [Def.'s Mem. Supp. Mot. at 3; Dkt. 35]. In his October 28, 2021 filing requesting a briefing schedule on the City's emergency motion, Plaintiff's counsel stated the City "proposed to alleviate the emergency by rescheduling the deposition sufficiently into the future to allow briefing this issue in the ordinary course of time." [Dkt. 35]. He then claims the City "reneged" on that agreement when it refused to provide actual dates for Mayor Wu's deposition. [Id.] However, in the email exchange Plaintiff's counsel attached to his filing, counsel for the City stated the City "*maintains* that it will not produce Ms. Wu to testify without a court order in this matter" [Dkt. 35-2] (emphasis added), and in its memorandum supporting its emergency motion, the City states that at the October 27, 2021 conference, it "again informed

[2] Ms. Wu was elected and sworn in as Mayor of Boston between the time of Plaintiff's filing of opposition to the City's motion, and the City's filing of their reply. [Dkt. 43 at 1].

Plaintiff of Councilor Wu's unavailability and [the City's] position with respect to the deposition of Councilor Wu" [Def.'s Mem. Supp. Mot. at 3].

Following Plaintiff's request for a briefing schedule and in light of the imminence and significance of the noticed deposition date, on October 28, 2021, the Court ordered Plaintiff to file a statement limited to the issue of "why the deposition of Councilor Michelle Wu was scheduled for November 2, 2021," and set a standard briefing schedule for the remaining, non-emergency issues raised in the City's motion—specifically the motion for a protective order. [Dkt. 36]. On October 29, 2021, Plaintiff's counsel filed two letters with the Court: one objecting to the Court's order [Dkt. 37], and another submitted in compliance with the order and providing an explanation for noticing Mayor Wu's deposition for Election Day [Dkt. 38].

Based on Plaintiff's failure to provide any compelling justification for noticing Mayor Wu's deposition for Election Day (not to mention his admitted intent to invite maximum inconvenience, political attention, and media scrutiny of TST's litigation through the deposition notice) [Dkt. 38], along with the obvious hardship posed to Mayor Wu, on October 29, 2021 the Court issued an order granting in part the City's motion, "solely with regard to prohibiting Plaintiff's deposition of Councilor Michelle Wu on November 2, 2021 as noticed," and reserving judgment on the motion as a whole pending further briefing [Dkt. 40]. This Memorandum and Order addresses the Motion for a Protective Order.

In accordance with the Court's ordered briefing schedule, Plaintiff filed opposition to the City's motion on November 12, 2021 [Dkt. 42 ("Pl.'s Opp'n")], and the City filed its reply on November 26, 2021 [Dkt. 43 ("Def.'s Reply")]. Plaintiff then filed a sur-reply that same day [Dkt. 44], which the Court struck from the record [Dkt. 45], due to Plaintiff's failure to seek

leave to file additional papers beyond those set by the Court's briefing schedule and by the Local Rules.

## II.   LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). See also KinectUs LLC v. Bumble Trading LLC, No. 21-MC-91665-ADB, 2021 WL 6066539, at * 2 (D. Mass. Dec. 22, 2021). Moreover, "[a]s the Supreme Court has instructed, because 'discovery itself is designed to help define and clarify the issues,' the limits set forth in Rule 26 must be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. MDL 13-2419-FDS, 2013 WL 6058483, at *3 (D. Mass. Nov. 13, 2013) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)); see also Green v. Cosby, 152 F. Supp. 3d 31, 34 (D. Mass. 2015), modified on reconsideration, 160 F. Supp. 3d 431 (D. Mass. 2016); Cabi v. Boston Children's Hosp., No. 15-CV-12306-DJC, 2017 WL 8232179, at *1 (D. Mass. June 21, 2017).

Accordingly, litigants may serve subpoenas on third parties as per Fed. R. Civ. P. 45, but the subpoena "must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." Cates v. Zeltiq Asethetics, Inc., No. 20-MC-91234, 2020 WL 5517457, at *2 (D. Mass. Sept. 14, 2020) (quoting Green, 152 F. Supp. 3d at 34).

Notwithstanding the general latitude afforded parties seeking relevant information during discovery, the Court is required by Fed. R. Civ. P. 26(b)(2)(C) to "limit the frequency or extent of discovery otherwise allowed by the [Rules of Civil Procedure] or by local rule if it determines

that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Cabi, 2017 WL 8232179, at *2 (quoting Fed. R. Civ. P. 26(b)(2)(C)).

In order to minimize excessive expense, delay, and potential abuse of process, the Federal Rules of Civil Procedure therefore grant the courts the authority to, "for good cause, issue a [protective] order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure [or] discovery." Cabi, 2017 WL 8232179, at *2 (quoting Fed. R. Civ. P. 26(c)(1)(A)).

Relatedly, under Rule 45, the Court "'must quash or modify a subpoena that: ... subjects a person to undue burden' on timely motion from a party or non-party." KinectUs, 2021 WL 6066539, at *2 (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)). When ruling on such a motion, the Court must "weigh the need of the party seeking discovery against any undue hardships created by permitting it," and consider the potential discovery's "relevance, the requesting party's need, the breadth of the request, and the burden imposed." Id. (quoting Green, 152 F. Supp. 3d at 36). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." Peoples v. Time Warner Cable, Inc., No. 3:16-CV-11398-MGM, 2017 WL 2836991, at *2 (D. Mass. June 30, 2017) (quoting Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986)).

## III. DISCUSSION

As per the Court's October 29, 2021 order [Dkt. 40] allowing the City's motion to quash the deposition subpoena solely with regard to the November 2, 2021 deposition date, the Court has already found that under the standards set by Federal Rules of Civil Procedure 26(c) and 45(d), Plaintiff's deliberate scheduling of Mayor Wu's deposition for Election Day for the Mayoral race created an impermissible undue burden.

The City asserts there are readily available alternative sources of the "discoverable information" Mayor Wu might possess (namely, the 47 total individuals named in Defendant's initial disclosures) [Def.'s Mem. Supp. Mot. at 2–3, 5]. It also argues the lack of any mention of Mayor Wu in Plaintiff's complaint supports the City's claim that Plaintiff's intent has been to harass Mayor Wu rather than to pursue discoverable information relevant to this litigation challenging the City Council's legislative prayer scheme. [Id. at 2, 6]. In further support of its claim of harassment, the City cites Plaintiff's disinterest even in deposing those City Councilors it does name in its complaint [id. at 3], and the evident targeting of Mayor Wu for an Election Day deposition so early in discovery due to her then-status as one of Boston's only two candidates for mayor [id. at 6]. Moreover, the City asserts Mayor Wu is a high-ranking government official (and that she was as City Councilor as well), affording her extra protections from litigation discovery absent personal involvement or demonstrated need. [Id. at 4].

Following Plaintiff's filing of the aforementioned letter objection and explanatory letter, Plaintiff filed opposition focusing heavily on the question of whether and when Mayor Wu would qualify as a "high-ranking government official," and arguing Mayor Wu "has unique knowledge about the facts" [Pl.'s Opp'n at 9], due to her having declined to invite TST to give

the invocation, her recounting of the City Council's invocation policy in an email, and her presence on the City's privilege log [id. at 10–11].

For the reasons discussed below, the Court finds the weighing of potential burdens and alternatives under Fed. R. Civ. P. 26(b)(2)(C), as well as the imposition of undue burden and annoyance under Fed. R. Civ. P. 26(c)(1) and 45(d)(1), necessitates limiting discovery by issuing a protective order to preclude Plaintiff's deposition of Mayor Wu.

### A. Mayor Wu's Relevance to this Litigation – Analysis under Fed. R. Civ. P. 26(b)(2)(C)

While the City does not dispute that Mayor Wu may possess relevant knowledge or information regarding the City Council's invocation practice [Dkt. 43, Def.'s Reply at 2], it makes numerous arguments directing to less burdensome sources of the same information, and Mayor Wu's overall lack of relevance to the instant litigation. See generally [Dkt. 34, Def.'s Mem. Supp. Mot.; Def.'s Reply].

Under Fed. R. Civ. P. 26(b)(2)(C), the Court is obligated to limit otherwise allowable discovery if, in relevant part, it determines the information "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). In a case upholding the validity of subpoenas of non-parties even where the information sought was alleged to be publicly available, one District of Massachusetts court explained the standard as follows: "If the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty often will create an undue burden. The mere availability of the documents from another source, however, does not preclude a subpoena directed to a nonparty if the party serving the subpoena

can show that it is more expeditious to obtain the documents from a witness." In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. MDL 13-2419-FDS, 2013 WL 6058483, at *7 (D. Mass. Nov. 13, 2013) (quoting Gray v. Town of Easton, No. 3:12cv166, 2013 WL 2358599, at *3 (D. Conn. May 29, 2013)). Accordingly, where the information sought in this case is not only readily available from up to 47 other people, but also where the particular nonparty subpoena at issue burdens the City's highest-ranking official and was largely issued as a publicity stunt, it is not difficult to find undue burden in favor of a protective order.

When the City provided Plaintiff a list of 47 individuals who might possess relevant information, it provided readily available alternatives that would be "more convenient, less burdensome, [and] less expensive." Fed. R. Civ. P. 26(b)(2)(C). Moreover, the City correctly points out that Plaintiff's primary surviving claim under the Establishment Clause of the First Amendment ultimately hinges on an analysis of the constitutionality of the invocation practice itself. [Def.'s Reply at 2–3]. This is as distinct from Plaintiff's claims under the Equal Protection Clause, which, had they survived the City's motion to dismiss, would have required an inquiry into potential impermissible selective treatment by the City Councilors. [Dkt. 21 at 14; Def.'s Reply at 2–3]. Because the Court dismissed the Equal Protection claim in July 2021, the only relevant and discoverable information to be obtained from current or former City Councilors would be of a relatively general nature regarding the Council's prayer scheme, which further diminishes the importance of Mayor Wu's testimony and indicates this information could easily be provided by lower-ranking government officials. Notably, TST has failed to allege anything to the contrary in support of its surviving claims.

In an attempt to claim Mayor Wu does possess unique knowledge regarding this litigation, TST asserts that her inclusion as the only then-City Councilor on the City's privilege

log, despite not being the only Councilor from whom TST sought an invocation invitation,

"suggests that Wu had the most involved role among the Councilors in determining that TST

shall not be invited." [Pl.'s Opp'n at 11]. The Court is entirely unpersuaded by this conclusory

assumption. For example, it is just as likely (and just as privileged and therefore undiscoverable)

that Mayor Wu was actually the most concerned with ensuring the City Council's legislative

prayer scheme provided opportunity for participation by minority religious groups. Moreover,

despite noting it directed its requests for an invitation to multiple City Councilors besides Mayor

Wu, TST is notably silent in its opposition filing as to who those Councilors are, and why none

of them have been noticed for depositions despite the purported imperative of deposing Mayor

Wu as based on her time on the Council. [Id.]

      Finally, while the discovery process is still newly underway, TST still *has* "ample

opportunity to obtain the information by discovery in the action" under Fed. R. Civ. P.

26(b)(2)(C). As such, its conduct in noticing Mayor Wu's deposition for Election Day so

quickly, and intentionally doing so in order to attract publicity and tarnish the reputation of a

rising political leader [Dkt. 38], demonstrates further violation of Rule 26(b)(2)(C).

### B. Undue Burden Imposed by Plaintiff's Deposition of Mayor Wu – Analysis under Fed. R. Civ. P. 26(c)(1) and 45(d)(1)

      In addition to the burdens imposed by Plaintiff's noticing of Mayor Wu's deposition

already discussed above, it is worth highlighting the City's claim that requiring Mayor Wu to

participate in a deposition "in this discovery process will in fact interfere with her government

responsibilities" [Def.'s Reply at 2], as well as its recognition that, were every Boston City

Councilor to be deposed "regarding every invitation extended to an invocation speaker, 'such

officials [would] spend an inordinate amount of time tending to pending litigation' rather than running the government'" [id. (quoting United States v. Morgan, 313 U.S. 409, 422 (1941))].

In order for undue burden to justify the issuance of a protective order, there must be a finding of "good cause[,] [which] must be based on a particular factual demonstration of potential harm, not on conclusory statements." Peoples v. Time Warner Cable, Inc., 2017 WL 2836991, at *2. Yet in addition to the interference with local government—a harm which cannot be overlooked amidst a catastrophic, years-long global pandemic—the City also enumerates how Plaintiff's counsel's admissions regarding his motives for noticing Mayor Wu's deposition when and how he did constituted harassment of Mayor Wu, improperly shifted attention towards the irrelevant subject of Mayor Wu's "personal ambitions," and redirected City resources away from the elections and other City business and towards responding to Plaintiff's bad-faith deposition notice. [Dkt. 43 at 6].

Moreover, unlike in many cases where motions for protective orders under Rules 26 and 45 were at least partially denied, Defendant's objections to Plaintiff's subpoena have nothing to do with many of the most readily given—and difficult to verify—reasons for seeking such a protective order, such as confidentiality or party desires to prevent access to certain documents or communications. See, e.g., In re New England Compounding Pharmacy, Inc., 2013 WL 6058483, at *11 (seeking to avoid, *inter alia*, disclosure of proprietary business information); Green v. Cosby, 152 F. Supp. 3d 31, 36 (D. Mass. 2015), modified on reconsideration, 160 F. Supp. 3d 431 (D. Mass. 2016) (seeking to avoid disclosure of marital communications and embarrassment associated with questions regarding infidelity); Peoples, 2017 WL 2836991, at *4 (seeking to avoid opposing party access to documents they could then use "to try and elicit admissions" pertaining to the case). Not only are these bases often able to be easily remedied

with a confidentiality agreement or protective order prescribing specific practices for handling information, but they are also much more readily employed in bad faith—that is, to actually avoid disclosure of relevant information—than the City's arguments in its motion here. The City appears to be in full cooperation with Plaintiff in the discovery process insofar as it involves the actual business of discovery—the compiling of relevant, not overly burdensome information for the purposes of litigation.

The Court finds no need to delve into the issue of whether Wu is or was a "high ranking government official," whether as Mayor or City Councilor, due to Mayor Wu's absence from Plaintiff's allegations in its Complaint, the lack of any compelling reasons to believe Mayor Wu possesses relevant information personally, as well as Plaintiff's admitted intent to depose Mayor Wu solely for political and publicity-related reasons. The Court's ordinary obligations to limit discovery as per Rules 26 and 45 apply fully and sufficiently here, and weigh in favor of the issuance of a protective order without reaching that definitional question—though Plaintiff's stated desire to target Mayor Wu due to her status as a mayoral candidate certainly supports this Court's finding of undue burden, annoyance, and oppression in violation of Rule 26(c)(1).

Independent of a potential deponent's profession or media exposure, it is in exceptionally bad faith to intentionally notice a deposition for a date and time when a party knows the deponent will be unavailable or greatly inconvenienced. In his explanatory letter to the Court, Plaintiff's counsel states that he, as an attorney, has "a sworn duty to do anything short of breaking the law to see to it that my client's goals are recognized." [Dkt. 38 at 2]. Yet this is not the case. Rules such as the Massachusetts Rules of Professional Conduct (and other states' equivalents), various ethics rules and guidelines, and the Rules of Civil Procedure govern attorney and litigant conduct in all sorts of ways that reach beyond conduct that is simply

illegal—and they do so precisely to prevent the type of abuse of process Plaintiff's counsel has employed here.

**C. Awarding of Costs and Fees Related to this Motion**

Defendant asserts Plaintiff's conduct with regard to noticing Mayor Wu's deposition is in violation of Fed. R. Civ. P. 45(d)(1) [Dkt. 34, Def.'s Mem. Supp. Mot. at 6], and requests reasonable attorneys' fees and costs in the present motion [Dkt. 33, Def.'s Mot. at 1].

Under Fed. R. Civ. P. 45(d)(1), the Court "*must* enforce [the] duty [to avoid imposing undue burden or expense on a person subject to subpoena] and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1) (emphasis added). For all the reasons discussed above, Plaintiff's failure to comply with Rule 45 here is evident to this Court. Moreover, it appears as though Plaintiff was trying to force the City to commit to producing Mayor Wu as part and parcel of the parties' attempted negotiations to amend the noticed deposition date and therefore avoid filing of the present motion on an emergency basis, though it was not clearly portrayed that way in Plaintiff's submission requesting a briefing schedule [Dkt. 35]. The Court asked for a statement on why Plaintiff's counsel noticed Mayor Wu's deposition for Election Day precisely to get at the 'emergency' basis issue—an issue Plaintiff's counsel himself asked the Court to address [Dkt. 35]. Despite Plaintiff's counsel's claim that the City "reneged" on a deal to produce Mayor Wu for a deposition on a different date [Dkt. 35], what the record [Dkt. 35-2] actually appears to show is that the City sought to avoid filing their motion on an emergency basis, and reached out to Plaintiff's counsel to request Mayor Wu's deposition be noticed for a date further in the future so as to accomplish this.

The City was entitled to take issue with both the timing of the noticed deposition *and* the fact Mayor Wu was noticed at all—and Plaintiff's attempts to conflate these issues and to portray the City as having "reneged" are disingenuous and distracting. The awarding of costs and fees to Defendant is well warranted here. In addition to Plaintiff's admitted, impermissible motives behind its deposition notice to Mayor Wu, TST's conduct here forced briefing of this motion, some of which was on an emergency basis, to occur much earlier in the discovery process than it would have otherwise, if it would have taken place at all. Motion practice on a compressed timeline or where ultimately unnecessary to the litigation at hand inherently puts more burden on parties and attorneys, and the Federal Rules of Civil Procedure make explicit their purpose to thwart abusive discovery and other litigation practices.

In addition, Plaintiff's assertion that the City cannot be entitled to attorneys' fees due to the fact Defendant's attorneys "are public employees who are paid a salary… [and] not charging an hourly rate to bring the motion" is nothing short of absurd. [Dkt. 42, Pl.'s Opp'n at 12]. That a party's attorneys are paid from public coffers does not mean their time, efforts, and resources are therefore to be subject to unfettered abuse of process. The argument put forth by Plaintiff's counsel here would incentivize private attorneys and those charging the highest rates to engage in abusive discovery practices and file frivolous motions for the sole purpose of billing their clients and draining opponents' resources. Moreover, the Court is persuaded by Defendant's assertion that allowing depositions under circumstances where counsel has acknowledged impermissible motives would create perverse incentives for potential litigants, encouraging legal action merely to harass or gain access to government officials or candidates. [Def.'s Mem. Supp. Mot. at 6]. This, along with Plaintiff's counsel's abovementioned failure to acknowledge any of the myriad rules intended to guide and govern his conduct as an attorney, supports the awarding

of costs and fees to Defendant on this motion. Pending submissions by Defendant and adjudication of the amount to be awarded, the parties are expected to continue diligently engaging in discovery, with the hope that Plaintiff will dispense with impermissible antics and abusive tactics.

## IV.    CONCLUSION

The surviving claims in this matter represent an issue of first impression in the First Circuit. As the Court noted in its decision on Defendant's Motion to Dismiss [Dkt. 21 at 12], it is not at all clear whether the invocation practice of the City Council violates the First Amendment, meaning Plaintiff has brought a meaningful legal challenge with potentially broad effect. Distracting from the significance of that challenge with tactics Plaintiff's counsel facially admitted to employing in order to get the attention of the public and the City's now highest-ranking government official does a disservice to the gravity of the constitutional claims at issue.

For the foregoing reasons, Defendant City of Boston's Motion for Protective Order and Motion to Quash Regarding the Deposition of City Councilor At Large Michelle Wu [Dkt. 33] is **GRANTED**.  Defendant City of Boston's request for reasonable attorneys' fees and costs is likewise **GRANTED** and the amount shall be evaluated and assessed at the conclusion of discovery.  At this stage, the parties shall continue in discovery to meet the October 26, 2022 deadline.

**SO ORDERED.**

April 6, 2022                                                         /s/ Angel Kelley
                                                                    ANGEL KELLEY
                                                                    U.S. DISTRICT JUDGE