IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SATANIC TEMPLE, INC.<br><br>PLAINTIFF,<br><br>V.<br><br>CITY OF BOSTON, MA<br><br>DEFENDANT. | CASE NO. 21-CV-10102<br><br>TST'S MOTION TO RECONSIDER THE ORDER OF PARTIAL DISMISSAL |

COMES NOW TST on motion to reconsider the order of dismissal for lack of standing as to the Free Speech / Free Exercise hybrid claim. See FRCP 60(b)(5) (the order is no longer equitable) and FRCP 60(b)(6) (any other reason that justifies relief).

One year ago, the Court entered an order which dismissed TST's Free Speech / Free Exercise claim. [ECF 21]. Since then, the Supreme Court has developed the state of law arising out of the Free Speech and Free Exercise Clauses. *Shurtleff v. City of Bos., Massachusetts*, 142 S. Ct. 1583 (2022); *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022). The order of dismissal clashes with the current state of law and must be vacated. FRCP 60(b)(5), (6).

In *Shurtleff*, the Supreme Court held that Boston abused the Government Speech doctrine to further viewpoint discrimination. As clarified, speech is not "government speech" unless the government exerts "active control" over the subject of the message sought to be accommodated. *Shurtleff*, 142 S. Ct. at 1592. Short of "active control" by the government, the speech remains "private," and therefore free from government suppression.

As this Court already found, the complaint adequately pleads that Boston violates the Establishment Clause because it discriminates against TST. [ECF 21, at 12]; *see also Town of Greece v. Galloway*, 572 U.S. 565 (2014). As this Court already noted: "a legislative body may not show hostility to any religion in selecting its invocation or coerce the public into participating in the prayer." [ECF 21, at 12]. That Establishment Clause bar against governmental "hostility" or "coercion" of religion entails a question of legislative "active control" over a religious expression. Stated differently: the government may not "actively control" the prayer opportunity to advance or disparage any particular religion. Governments are barred

from advancing or disparaging particular religions because the right of conscience is uniquely susceptible to governmental interference and must be jealously protected if it is to be preserved at all. *Lemon v. Kurtzman*, 403 U.S. 602, 622, 91 S. Ct. 2105, 2116, 29 L. Ed. 2d 745 (1971) (abrogated by *Kennedy*, below) (citing Freund, Comment, Public Aid to Parochial Schools, 82 Harv.L.Rev. 1680, 1692 (1969)); *see also* Prof. Ellis West, *The Free Exercise of Religion in America* (Palgrave Macmillan, 2019), at 25("a clear majority of early Americans came to believe that the free exercise of religion is violated not only be laws restricting religion but by laws supporting religion").

While it is anathema for a government to exercise "active control" over the prayer opportunity to the detriment of a particular religious minority, that is not to say the prayer opportunity may not be subject to reasonable limitations. For example, it does not promote the overall ends of the prayer opportunity if it is used as an opportunity to make a stump speech. The scope and extent of "reasonableness" is addressed by the limited public forum doctrine. A

limited public forum is public property which a government has opened for use by the public as a place to engage in expressive activity for an intended purpose. *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45–46 (1983), *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829–30, *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07)).

In a limited public forum, the government may enforce a specific topic of discussion. *Rosenberger*, above. Thus, the City may rightfully limit the prayer opportunity to a *bona fide* "prayer" (*i.e.*, an entreaty to some higher ideal, one not necessarily supernatural) because that entreaty is a proper subject.

But even in a limited public forum, no government may engage in viewpoint discrimination. *Rosenberger*, above. Thus, the City may not limit the prayer opportunity to, *e.g.*, Abrahamic religions and a few token minorities. The City engaged in unlawful viewpoint discrimination (barred by the Free Speech Clause) and unlawful religious coercion (barred by the Free Exercise Clause) when it refused

TST's demand for an equal right to officiate this prayer ceremony. As vindicated by the unanimous *Shurtleff* Court, the order of partial dismissal reversibly erred by coming to a different conclusion. The Court should vacate the order of dismissal and entertain evidence and argument to the effect that Boston's legislative prayer custom violates TST's Free Speech and Free Exercise Clause rights.

As pleaded, Boston does not exercise "active control" over the prayer opportunity, the City instead simply selects only officiants who espouse a message that Boston already agrees with. Because Boston does not exercise "active control" over the prayer opportunity (nor can it, without violating the Establishment Clause), the Court should find that Boston unlawfully refused to accommodate TST's speech on equal terms as other religions, which "constitutes impermissible viewpoint discrimination."

Further, the Court should find that the Free Speech and Free Exercise Clauses protect TST's right to officiate the prayer ceremony on equal terms as any other religion. Prayer is a "personal religious

expression," which is "doubly protected" by the Free Speech and Free Exercise Clauses. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2433 (2022).

As pleaded, the City's legislative prayer scheme involves prayer, one which the citizenry is constitutionally presumed to know originates from the prayer-giver and not the government. Boston could not lawfully bar TST from officiating the prayer ceremony for the same reason it could not bar any other form of personal religious expression.

**WHEREFORE** the Court should vacate the order of dismissal as to the Free Speech / Free Exercise claim.

> Respectfully submitted on July 21, 2022,
> By: Matthew A. Kezhaya, appearing *pro se*
> **KEZHAYA LAW PLC**
> 333 N. Washington Ave. # 300
> Minneapolis, MN 55401
> phone: (479) 431-6112
> email: matt@kezhaya.law

## CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, efiled this document by uploading it to the Court's CM/ECF system on July 21, 2022

which sends service to registered users, including all other counsel of record in this cause. s/ Matthew A. Kezhaya

### LR 7.1 CERTIFICATE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, notified opposing counsel of this then-forthcoming motion to reconsider, and the reasons for it, by email on June 1, 2022. Opposing counsel stipulated that my Rule 7.1 obligation was satisfied, and notified me that the City will oppose this motion. s/ Matthew A. Kezhaya