

# Status report

September 6, 2022 (Tuesday)

Hon. Angel Kelley
*By ECF only*

Re: *Satanic Temple v. Boston* (1:21-cv-10102)

Dear Judge Kelley:

This letter apprises the Court of the status of discovery, my plan to finalize the fact record by the **October 26** discovery deadline, forthcoming discovery motions practice, and a forthcoming related case.

This case entails three fundamental civil rights, all enshrined in the First Amendment:

(1)   Free Speech: The expression of an idea may not be punished or deterred. 16B C.J.S. Constitutional Law § 921

(2)   Free Exercise: Religions may not be obstructed by governments. 16A C.J.S. Constitutional Law § 865.

(3) No Establishment: All religions must be treated the same. *Larson v. Valente*, 456 U.S. 228, 244 (1982). No cherry-picking of who gets to officiate the blessing of a government meeting. *E.g. Marsh*, *Town of Greece*, and *American Legion*.

The issues involved here are so important that Congress allows me to disabuse Boston of any misconception that it has any governmental immunity under color of State law to engage in an assertedly-unconstitutional prayer scheme. 42 USC § 1983; U.S. Const. Amend. I and XIV; U.S. Const. Art. 4, ¶ 2 (the Supremacy Clause); *Cantwell* and *Kennedy*. To that end, Boston and its counsel of record are obligated to follow the rules of procedure, irrespective of the facts that Boston is a government entity and Nicole O'Connor is a government attorney. See generally FRCP; Mass. R. Prof. C. (no pertinent "government" exceptions).

# 1: Status of motions practice.

On August 22, TST deposed Christine O'Donnell, who served as Boston's Rule 30(b)(6) designee. During the deposition, Nicole O'Connor repeatedly directed the witness to not answer questions. The parties agreed on the record that she had no claim to privilege; O'Connor did not pause the deposition to move this Court for an order to terminate or limit the deposition; and O'Connor did not purport to enforce a prior limitation by this Court. See FRCP 30(c)(2). We are preparing a motion for sanctions. See FRCP 30(d)(2). The motion will address all necessary points and will provide an appropriate fact record to support the above summary.

I am also aware of Boston's motion for sanctions in response to our efforts to depose Mayor Wu. I informed Boston in writing that the

Court unequivocally did *not* prohibit TST from taking the deposition of Mayor Wu. See (ECF 51 at 2); Exhibit 1 at 2. I thought the Court was adequately clear that this proposition was "simply incompetent" but I did not feel it appropriate to directly join the opinion. I errantly figured the Court's words were weighty enough.

But regardless whether O'Connor suffers from "simple incompetence" or a "pernicious desire" to misstate things, she mischaracterizes my sarcasm-laden communications as an accusation of public corruption between Boston and the Court. I expected O'Connor to take note of the absence of an affidavit of bias. See 28 USC § 144.

There will be an investigation into public corruption, but that pertains to the forthcoming Free Speech retaliation claims and the Free Speech / Free Exercise claims pertaining to Boston's decision to hoist Christianity's flag while refusing to treat TST the same. (§ 4).

## 2: Discovery status.

Here are the material facts we can prove so far, and what we need:

(1)    Boston officiates a prayer ceremony to bless its meetings.

(2)    The prayer is given by a designee of a Boston employee.

(3)    The prayer is preceded by a governmental endorsement.

- o  The inviting Councilor gives a glowing introduction.

- o  A different Boston employee directs the public to rise.

(4) Boston's prayer custom predates archived records.

(5) The sole customary basis for selecting a speaker is "whim."

(6) Clergypersons and laity alike are invited, based on whim.

(7) Speakers are admittedly selected based on political influence.

(8) Nobody has ever challenged the legality of this policy before.

(9) Boston unequivocally defends its prayer selection policy.

(10) Councilors are elected by the public.

(11) Councilors are the public's interface for Boston government.

(12) Councilors consider the public's will when making decisions.

(13) Some of the public objected to TST's demand for an invite.

- A complete list is forthcoming.

(14) Until shortly after TST's demand, speakers used to be paid.

- We cannot yet prove how much money was spent.
- We cannot yet prove who, all, received those funds.
- We have unmet discovery demands for these records.

(15) Upon TST's demand, Boston reviewed its prayer scheme.

- Wu, personally, prompted the review.
- Wu, personally, was involved in the review.

- o   We cannot yet prove that the review was made "because" of TST's demand.

- o   We cannot yet prove what was entailed in the review.

(16)   Following the review, Wu personally ended "pray-for-pay."

(17)   Following the review, Wu sent an email to TST essentially asserting an unfettered right to whim-based invitations.

(18)   Wu has since ignored all emails from or about TST.

(19)   Then-Councilor Ensaibi-George had a statement prepared.

- o   Ensaibi-George was Wu's recent mayoral opponent.

- o   The statement is attached under separate cover.

- o   No further details about this statement are yet known.

(20)   Boston does *not* formally study or otherwise note the relative proportionate share of its citizens' religious preferences.

(21)   Boston has about a 55% Christian population.

- o   The parties jointly rely on published Pew studies.

(22)   A disproportionate number of blessings are Christian.

(23)   Other speakers have received repeated invitations.

- o   A complete list of repeat-invitees is forthcoming.

(24)   Wu invited at least one of the repeat-invitees.

- o We cannot yet prove why she invited these speakers.
- o We cannot yet prove why she did not invite TST.

(25) The speakers openly use the opportunity to proselytize.

- o Relevant audio/video clips are forthcoming.
- o Being mindful of FRE 403, a select list is forthcoming.

(26) Council meetings generally occur on a Wednesday.

(27) Several Tuesday emails suggest an unmet speaker need.

- o Boston says the unmet need was "informational;" i.e., the Councilor had selected the speaker beforehand, but neglected to identify that person to the people in charge of publishing the agenda.
- o The Clerk will disprove that unequivocal testimony.

(28) Sometimes, the City Clerk gives the prayer.

- o We cannot yet prove "why;" nor "why not" TST.
- o A complete list is forthcoming.

(29) TST's repeat demands for an invite have gone unheeded.

(30) During this litigation, a Hindu leader demanded an invite:

(31) Boston ignored the Hindu leader's demand.

# 3: Next steps on discovery.

We intend to depose Mayor Wu, and others, by **October 26**.

## 3.1: Why Mayor Wu is *not* protected from deposition.

I attempted to depose Wu a year ago. I was admonished by the Court for choosing Election Day for her deposition. My error was made once. It has not been repeated. I have successfully defused or caused the tabling of all discovery disputes since then.

Mis-believing that the Court had issued a protective order that prohibited *any* depositions of Mayor Wu (irrespective of timing), I attempted to appeal. (ECF 50). The Court unequivocally corrected *my* understanding: "the Court has not barred any categories of discovery, nor has it prohibited TST from taking depositions of Mayor Wu or any other current or former Councilor." (Id.; cleaned up).

Despite my best efforts, however, I cannot seem to cause either Boston or O'Connor to gain my same clarity of insight. I, too, am stuck between charging O'Connor with "simple incompetence" or a "pernicious desire to misstate the record." I detest these circumstances. All I ever wanted was the order described in the "prayer for relief" section of the complaint.

## 3.2: Why Wu, as former-Councilor, must testify.

It is my professional opinion that TST's legal interests are best effectuated by a sworn confession from a current or former Councilor

that, on each instance they invited someone *other* than TST, they intentionally chose to *not* invite TST.

My opinion partly predicated upon a painful experience. *See Satanic Temple v. City of Scottsdale*, No. CV18-00621-PHX-DGC, 2020 WL 587882 (D. Ariz. Feb. 6, 2020), aff'd, 856 F. App'x 724 (9th Cir. 2021) (bigoted op-eds and shifting explanations notwithstanding, the decisionmaker convincingly testified that his decision to uninvite TST was for a reason *other* than religious discrimination).

Partly, my professional opinion is predicated on a study of past and similar cases. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) (proof of specific intent is required in a constitutional discrimination tort; there, race) and *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (same, for religion); *but see Hassan v. City of New York*, 804 F.3d 277, 297 (3d Cir. 2015) (there's a difference between "intent" and "motive.")

However, if I am unable to secure this possibly-necessary sworn confession, I reserve the argument that a whim-based invitation-only public blessing ceremony is definitionally "discriminatory." In a Free Speech / Free Exercise context, that scheme is plainly illegal. See:

- *Cantwell v. State of Connecticut*, 310 U.S. 296 (1940) (religions do not need government officials' approval to engage in religious conduct);

- *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868 (2021) (definitionally, a government does not act "neutrally" when it purports to have discretion to interfere with religious views or conduct);

- *Shurtleff v. City of Bos., Massachusetts*, 142 S. Ct. 1583 (2022) (same);

- *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) (same).

The only novelty in this case is that a government is hosting the public display of religion. Government displays of religion are constitutionally kosher, but the opportunity must not be discriminatory. *Marsh*; *Town of Greece*; *American Legion*. Once a government actor anoints a particular officiant as preferred, and refuses to give the same benefit to a different officiant on equal terms, the scheme becomes constitutionally *haraam*. *See ibid.*

That is why the appropriate relief in this case is to forever enjoin all Boston Councilors from repeating this illegal governmental custom, but only to the extent that it is illegal. ECF 16, at 20 ¶¶ 2-4. The tradition is widespread for good reasons: civil society likes having a *kum ba yah* moment before potentially contentious government meetings. *See Marsh v. Chambers*, 463 U.S. 783 (1983); *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2088-89 (2019). We are all constitutionally presumed to have the strength of will to see that this ceremony is a tolerable government *acknowledgement* of religion. *Marsh*, 463 U.S. at 792. This is so, even when the speakers are primarily Christian. *Town of Greece*, 572 U.S. at 582-583. But once Boston resolved to invite prayer into the public sphere, it gave up the right to control which kinds of religious benedictions are permissible. *Id.*; *see also Shurtleff v. City of Bos., Massachusetts*, 142 S. Ct. 1583 (2022) (same, just swap "flags" for "prayer.")

Even if the Court does not revive the federal Free Speech / Free Exercise Claim (as moved, see ECF 55), the issue is preserved in Count 4: Massachusetts's constitutional analog of the Free Exercise

Clause. Mass Const. art. 46 § 1. Massachusetts constitutional law does not consider "neutrality" or "general applicability" to be valid defenses when a government interferes with a religious practice. *E.g. Krupien v. Ritcey*, 94 Mass. App. Ct. 131, 136 n. 9, 112 N.E.3d 302, 307 n. 9 (2018). Prayer, definitionally, is a "religious" practice. *E.g. Kennedy*. Even when a government engages in the conduct. *American Legion*, 13 S.Ct. at 2087.

### 3.3: Why Mayor Wu, specifically, must testify.

The above fact pattern ([§ 2](#)) is largely a summary of testimony I elicited during the City's Rule 30(b)(6) deposition. The deposition was duly noticed. That notice duly apprised the City that the "matters for examination" were to include each Councilor's subjective bases to not invite TST, for each invite not issued to TST. Despite our clear notice, the City did not produce a witness who was able to speak on that topic; not for any Councilors, and especially not for then-Councilor Wu.

However, the designee repeatedly testified that Michelle Wu was personally involved in the facts leading up to this case. See § 2 (15-18, 24). Nicole O'Connor, for the City, repeatedly instructed the witness to stop talking about Mayor Wu or Mayor Wu's subjective intent. By an agreement which I elicited on the record, we tabled all issues of contention pending the completion of the deposition.

In my professional opinion, Mayor Wu has a provable personal involvement in this case, going back to at least 2016. Further, Mayor Wu is the most likely root cause for the systematic exclusion of TST. Mayor Wu is my best witness to unveil the assertedly-discriminatory intent. That is why Boston doesn't want me to depose her.

## 3.4: Why Mayor Wu must be personally served.

Boston has stated an abject refusal to "produce" Wu for a deposition. ECF 34, at 7 n. 2; *contra.* FRCP 30, 34, and 45 (documents are "produced;" non-party witnesses are "subpoenaed"). Given the repetitive obstruction to date, I foresee a future need to seek Court assistance in procuring Mayor Wu's truthful testimony. That motion is not ripe until Mayor Wu fails to attend her deposition.

To perfect my potentially necessary motions, I need to serve subpoenas for testimony and for the production of records upon Mayor Wu. Those subpoenas are "process" which generally must be personally served on the witness or their designated agent. FRCP 4.

I am mindful of O'Connor's representations that she accepted service of the notice for Michelle Wu. However, O'Connor's notice of appearance is limited to Boston. ECF 39. Michelle Wu is legally distinct from Boston. Because Mayor Wu is a *non*-party witness, and is *not* represented by O'Connor, O'Connor cannot effectively waive Mayor Wu's right to Rule 4 service of process. See Restatement (Third) Of Agency § 2.03 (2006) (O'Connor's manifestations cannot prove the scope of agency; I must hear it from Wu, the principal).

My constitutional oath to ensure due process requires me to ensure proper service. My fiduciary duties to TST further require me to ensure proper service. Mayoral status notwithstanding, it is my professional opinion that Wu must be personally served for the same reason that Ensaibi-George must be. If I hear from Mayor Wu herself that no personal service is necessary, that will end my efforts.

## 3.5: Timing of Mayor Wu's deposition.

I previously noticed up Mayor Wu's deposition for September 12. That was pursuant to a prior agreement, made in early July, that if the Rule 30(b)(6) designee is unable to testify to the Councilors' subjective intent, we would book September 12-14 for the subjective intent inquiries. For strategic reasons, I need to depose Mayor Wu at the Temple. She needs to see the people who she is excluding from the public sphere. She needs to hear the congregants' blessing ceremony. She must then answer why she refused to invite them, for favor of inviting someone else.

The Temple is not open to Mayor Wu on September 12, so I am no longer able to effectively depose her on that date. I will take up O'Connor on her assertion that the back-up deponents can adequately articulate Mayor Wu's subjective intent.

Foreseeing that I will elicit even more admissions that only Mayor Wu can speak to her subjective intent, I will re-issue the notice at a different time (sufficiently in advance of October 26 to allow for follow-up discovery). Given, further, that I am unable to directly speak to Mayor Wu's scheduling personnel (see Mass. R. Prof. C. 4.4(a)),

Given the awkwardness created by Nicole O'Connor's motion for sanctions, I have resolved to vacate Mayor Wu's deposition and reset it to Tuesday, **September 20, 2022**. I will also be taking up Nicole O'Connor on her next slate of 30(b)(6) deponents, as well as the City Clerk. They will all be deposed **September 12-14**, **2022**.

### 3.6: Other, non-Wu, forthcoming depositions.

Further, I will be taking the deposition of then-Councilor Ensaibi-George, pertaining to her stated opinion that it is "absurd" for every congregant of TST to feel constitutionally entitled to an invitation on equal grounds as any congregant of Christianity. **Exhibit 2**. This will tend to show an official disparagement of Satanism and, by extent, an official advancement of everyone she invited.

Further, I find it necessary to develop a fact record of choice repeat-invitees, how they came to give the invocation, and what benefits they received in return for their speaking opportunity. The City Clerk being one of them. This will tend to show that Boston engages in the official advancement of these invitees' religious viewpoints.

Finally, I will develop a fact record of the perceptions and preferences of some choice members of the public, both "for" and "against" TST's equal inclusion. This will tend to show that the public sees TST's systematic exclusion as arising out of TST's inadequate political clout with Boston's public servants. *See W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections").

# 4: Forthcoming *Boston II*.

TST recorded the deposition for use in making public statements about its public controversy with a public entity, which is being publicly litigated in the courts pursuant to TST's First Amendment right to petition its government for redress of grievances. TST has a First

Amendment privilege to speak its mind on this topic as it sees fit. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Even and especially where the statements arise in the context of the public's business. *Cohen v. California*, 403 U.S. 15 (1971).

Notwithstanding TST's well-established First Amendment rights, and under color of State law, the City and Nicole O'Connor are taking steps to retaliate against TST for making these public statements. See ECF 33, 57 (seeking sanctions for TST's efforts to attract the public's attention to this controversy). In advance of the applicable statute of limitations, TST will bring First Amendment retaliations claim against all "persons" involved. 42 USC § 1983; U.S. Const. Amend. I; *Nieves v. Bartlett*, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). They will all be receiving summonses in due time.

Further, and still notwithstanding TST's well-established First Amendment rights, Boston is refusing to hoist TST's flag on equal terms as it does all others. The Christians got to have their flag displayed on public property, *Shurtleff*, so both I and TST have entered demands upon Boston for equal treatment under the law. To date, nobody has acquiesced to the demand. We will be in touch through the appropriate channels.

As to Boston, all of its current and former counsel of record, and all who have acted in concert with them to exclude TST from the public sphere: YOU ARE NOTIFIED to preserve all evidence, both as to the Free Speech retaliation claim and as to Boston's public flag pole.

Given Boston's systematic exclusion of TST from the public sphere to date, I further feel the need to apprise the Court that TST's annual

convention (SatanCon 2023) will be taking place at a privately-held location in Boston, in **April 2023**.

If I hear so much as a hint that Boston seeks to interfere with my client's religiously expressive activity, there will also be a *Boston III*. *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, 566 F. Supp. 3d 327 (D. Md. 2021), aff'd, 2021 WL 6502219 (4th Cir. Nov. 3, 2021), and aff'd, 2021 WL 6502220 (4th Cir. Nov. 13, 2021).

Respectfully submitted,



| **Matt Kezhaya** | matt@crown.law |
|---|---|
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0403196 | general: (612) 349-2216 |

100 S. Fifth St., 19th Floor, Minneapolis, MN 55402

# Certificate of service

**NOTICE IS GIVEN** that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on September 6, 2022, which sends service to registered users, including all other counsel of record in this cause. *Matt Kezhaya*

# Exhibit list

1. 2016 Statement by then-Councilor Michelle Wu

2. 2017 Statement for then-Councilor Anissa Ensaibi-George.

3. TST's letter to Boston re: there is no protective order for Wu.