# 1:21-cv-10102

## In the United States Court
## For the District of Massachusetts

**The Satanic Temple**, Inc.
*Plaintiff*

*v.*

City of **Boston**
*Defendant.*

## TST's Motion for Discovery Sanctions



**Matt Kezhaya**
Ark. # 2014161
Minn. # 0403196

**matt@crown.law**
direct: (479) 431-6112
general: (612) 349-2216

100 S. Fifth St., Suite 1900, Minneapolis, MN 55402

## <u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR DISCOVERY SANCTIONS AGAINST DEFEND-ANT CITY OF BOSTON</u>

Comes now Plaintiff, The Satanic Temple ("TST"), by and for its motion for sanctions against the Defendant City of Boston "(the City"). In support of its motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure, TST relies on the factual assertions and authorities outlined herein.

## <u>Material Facts</u>

On July 6, 2022, TST served the City, through its counsel Nicole O'Connor and Robert Arcangeli, with a notice of deposition pursuant to Rule 30(b)(6). Appx. Exhibit A, Notice of Deposition dated July 6, 2022. The notice compelled the testimony of a person of sufficient knowledge to speak on the record and provide adequate answers to TST's questions. *Id* at p. 1. After receiving the notice, counsel for TST (hereafter "Kezhaya") and the City (hereafter "O'Connor") met and conferred in accordance with their obligations under Rule 30(b)(6). Appx. Ex. B, Depo. Christine O'Donnell, taken August 25, 2022, at 218:6-13. See Also Appx. Ex. C.

TST minister Ada King began the deposition with an invocation. *Id.* at 5:5 – 6:5. After the invocation, counsel for TST engaged in some preliminary matters and expectations before examining Ms. O'Donnell as the City's designated representative. *Id* at 6:10 – 15:21. During those preliminary matters, O'Connor stated

> 18         MS. O'CONNOR:  That's acceptable to me.
> 19  I'm also going to abide by the usual stipulation in
> 20  that I'm going to reserve all of my objections as to --
> 21  except as to form, until the time of trial.

*Id* at 9:18-21

Kezhaya then instructed Ms. O'Donnell that unless O'Connor made a privilege-based objection, he expected O'Donnell to answer his questions. *Id* at 10:14-17. O'Connor had no objection to that instruction. *Id* at 10:21-22. After swearing in Ms. O'Donnell, Kezhaya began his examination by questioning O'Donnell on her understanding of what a 30(b)(6) deposition entails. *Id* at 15:8 – 18:3.

*1.1: Sanctionable conduct occurred early and often.*

Kezhaya's <u>tenth and eleventh</u> questions of the witness after swearing her in were:

```
 4    Q   And you heard the invocation earlier; is that
 5  correct?
 6    A   I did.
 7    Q   Okay.  How did the invocation make you feel?
 8        MS. O'CONNOR:  Objection.  So she's here
 9  for a 30(b)(6) deposition.
10        MR. KEZHAYA:  Correct.
11        MS. O'CONNOR:  Her personal thoughts and
12  opinions are not relevant and not part of a 30(b)(6)
13  deposition.
14        MR. KEZHAYA:  Do you have a rule to
15  support your premise?
16        MS. O'CONNOR:  Rule 30(b)(6).
```

*Id* at 18, 4-13.

Kezhaya asked O'Connor for the specific basis in rule 30(b)(6) for

her objection. O'Connor did not specify. Instead, she restated her posi-

tion that O'Donnell would not testify on any topic not specifically out-

lined in the Notice. *Id* at 18:19-24. In response, Kezhaya referred O'Con-

nor to his reference material: Kosieradzki, Mark R, *30(b)(6) Deposing Cor-*

*porations, Organizations & the Government* (2. Ed., Trial Guides, LLC.

2020). *Id* at 19:1-9 O'Connor responded by repeating her assertion that

the witness would not answer questions outside the topic of the Notice.

*Id* at 19:15-17. After this exchange, the parties took a short break. *Id* at

21:6-10. On returning from the break, Kezhaya got as far as asking the

witness whether she was ready to proceed. *Id* at 21:11-12. Before he could pose another question to the witness, O'Connor initiated a speaking objection. *Id* at 21:22. Kezhaya did not direct another question to the witness for the next 21 pages of the record. *Id*, 21:22 – 42:18. Over those 21 pages of transcript, Kezhaya and O'Connor went back and forth about the scope of a 30(b)(6) deposition and O'Connor's disagreement with Kezhaya's interpretation of the word "Identity." *Id*. At the end of the exchange, Kezhaya confirmed that O'Connor had no privilege basis for her objections, nor for her instruction for the witness to not answer Kezhaya's question.

Page 42

```
 1  And she shall not answer pursuant to your, Nicole
 2  O'Connor's, orders.
 3          MS. O'CONNOR:  That's just my
 4  instruction to my client.
 5          MR. KEZHAYA:  Yes.  Yeah, instruction,
 6  order, directive, I don't care what you call it.
 7          MS. O'CONNOR:  Sure.
 8          MR. KEZHAYA:  Okay.  And there's not a
 9  privilege ground.
10          MS. O'CONNOR:  There's no privilege
11  ground.  I mean if there was --
12          MR. KEZHAYA:  Okay.  No.  No.  No.
13  That's sufficient for my purposes.  Thank you.
14          Well, that being the case, I'm going to
15  scrap my old plan and just start a new one as we speak.
16  So let's start over.
17  BY MR. KEZHAYA:
18      Q   Remind me who you are.
```

*2.1:  No answer, no privilege*.

Kezhaya went on to ask the witness several more questions, which she answered. A short while later, the questioning again ground to a halt. Kezhaya was delving into the processes by which the councilors interacted with their constituents when he asked whether the councilors tend to vote on a given issue "based on the way that they think their constituents would feel about that matter." *Id* at 95:17-23. O'Connor objected, stating that O'Donnell can't answer that question. *Id* at 95:23-24. This led to another lengthy speaking objection amounting to approximately 12 pages of disagreement between the two attorneys where the witness did not utter a single word. *Id* at 95:24 – 107:10.

Following the second speaking objection spanning multiple pages of the transcript, Kezhaya questioned the witness about a video of someone giving the invocation to a city council meeting. *Id* at 107 – 134. During one series of questions, Kezhaya asked the witness to draw on her training as an attorney to provide answers.

16         MS. O'CONNOR:  Matt, she's not going to

17 answer these questions.  They have nothing to do with

18 the reason for --

19         MR. KEZHAYA:  She's a lawyer.  She knows

20 how to say that the --

21         THE WITNESS:  I'm not a litigator.  I, I

22 told you that.

23     Q    Okay.  Let's start with the basics.  Are you

24 familiar with the text of the First Amendment?

*Id* at 134-5, 135:16-24.

O'Connor again objected:

                                                        Page 136

1          MS. O'CONNOR:  Objection.  Matt --

2      Q   Yes or no.

3          MS. O'CONNOR:  She's not -- no, she's

4  not answering questions about -- I've given I think

5  significant leeway about general background questions.

6  But Christine's not here to talk about her

7  understanding of the law.  It has no relation to the

8  topics for which she's been designated.

9          MR. KEZHAYA:  Why is that not literally

10 the subject matter of this dispute?

11         MS. O'CONNOR:  She's not here to testify

12 about the subject matter of this dispute.

13         MR. KEZHAYA:  Ah.

14         MS. O'CONNOR:  She's here to testify

15 about the topics for which she has been designated.

6        MS. O'CONNOR:  I am following the rules.
7  I'm following the rules of what a 30(b)(6) deposition
8  is, and so I'm limiting her testimony to the topics for
9  which she has been designated.  And I appreciate that
10  you have a different understanding, but that's my
11  position on the record.
12        MR. KEZHAYA:  I understand that's your
13  on-record position.  I just want to make sure one more
14  point is abundantly clear.  You are not asserting a
15  privilege.  You're just telling her not to answer.
16  Correct?
17        MS. O'CONNOR:  Correct.
18        MR. KEZHAYA:  You, Nicole O'Connor,
19  specifically are directing this witness specifically
20  not to answer this question even though you don't have
21  a privilege argument, correct?
22        MS.O'CONNOR:  I'm object -- I'm
23  instructing her not to answer questions outside the
24  scope of her designated topics, and I think I've given

*Id* at 136:1-15, 137:6-24.

Following this exchange, O'Connor continued her speaking objection for another six pages before Kezhaya could ask another question of the witness. *Id* at 143:19. When Kezhaya subsequently asked whether the invocation given at the city council meeting was a blessing, O'Connor threatened to end the deposition. *Id* at 143:20-22. Kezhaya challenged O'Connor's position and repeated his question at O'Connor's request. *Id*

*at 144:1-7.* Upon rehearing the question, O'Connor acknowledged it was

"a fair question." *Id.* Kezhaya continued watching the video invocation

with the witness. Based on the substance of the video, Kezhaya asked

O'Donnell whether the City of Boston "need[ed] God to do their job."

```
15 They need God to do their job.  Is that correct?
16        From the City of Boston's perspective is it
17 correct that the government needs God to do its job?
18        MS. O'CONNOR:  Objection.
19   Q   Yes or no.
20        MS. O'CONNOR:  She's not answering that
21 question.
22   Q   You are not answering that question?
23   A   I am not on the advice of counsel.
24   Q   Okay.  And once again, on advice of counsel
```

*Id* at 145:18-21.

O'Connor again acknowledged that her instruction to the witness to

not answer the question was not based on any privilege:

```
                                      Page 146
1 you're not answering it even though there is no
2 privilege, correct?
3   A   Yes, correct.
4   Q   Thank you.
5        MS. O'CONNOR:  It's not within the scope
6 of the 30(b)(6) topics, correct.
7        MR. KEZHAYA:  Okay.  Continuing forward.
```

*Id* at 146:1-7.

In part clearly due to O'Connell's argumentative and lengthy

objections, Kezhaya was forced to rush his questioning as the day went on. *Id* at 245:12-13. Later in the deposition, Kezhaya asked O'Donnell whether the City kept records on the religious demographics of the City's constituents. *Id* at 247:22-24. Kezhaya followed up by asking whether the witness knew what percentage of the population were Christian.

```
                                                          Page 248
 1  population that identify as Christian at least as of
 2  the date of this record.
 3          MS. O'CONNOR:  Objection.  So I maintain
 4  the position that this is outside the scope of the
 5  30(b)(6) topics for which she is designated to testify.
 6          MR. KEZHAYA:  So noted.
 7      Q   Witness, please answer the question.  Would
 8  that be right or wrong?
 9          MS. O'CONNOR:  No, so I'm instructing my
10  client not to answer the question.
11          MR. KEZHAYA:  Oh, I'm sorry.  I
12  misunderstood.
13          MS. O'CONNOR:  It's outside of the scope
14  of the 30(b)(6) topics for which she is identified.
15          MR. KEZHAYA:  And once again, because we
16  have to keep going through this, you, Nicole O'Connor,
17  is speci -- are specifically directing the witness not
18  to answer a why-not question as to follow up on the
19  response to item number 24?  I want to make sure I'm
20  abundantly clear about that.
21          MS. O'CONNOR:  Correct.  I don't think
22  that falls within the scope of topic of 24.
23          MR. KEZHAYA: Okay.  And you do not
24  assert a privilege objection, correct?
                                                          Page 249
 1          MS. O'CONNOR:  There's no privilege.
 2          MR. KEZHAYA:  I agree.
```

In response, O'Connor instructed her client to not answer, acknowledging there was no privilege for such an instruction. *Id at 248, 249: 1-2.* In total,

O'Connor instructed her client to refuse to answer Kezhaya's questions at least eight times while acknowledging there were no grounds of privilege for the refusal. *Id* at Ex. B.

O'Connor also refused to allow O'Donnell to testify on questions involving the City's specific intentions about the invocation starting the council meetings. Early in the deposition, Kezhaya broached this subject matter, which O'Connor immediately shut down:

> Page 22
>
> 1        MR. KEZHAYA:  But I didn't say --
> 2        MS. O'CONNOR:  Her inner workings of her
> 3  mind are not relevant to a 30(b)(6) deposition.  And I
> 4  want to be clear that that is the position that we will
> 5  take throughout this deposition.
> 6        MR. KEZHAYA:  Okay.  It's my
> 7  understanding that the City of -- my burden of proof is
> 8  that I must prove that the City of Boston intentionally
> 9  did not invite TST; is that correct?
> 10       MS. O'CONNOR:  Correct.
> 11       MR. KEZHAYA:  And she's here to speak
> 12  for the City of Boston, also correct?
> 13       MS. O'CONNOR:  Correct.
> 14       MR. KEZHAYA:  And she's speaking as the
> 15  City of Boston.  Is that also correct?
> 16       MS. O'CONNOR:  Correct.
> 17       MR. KEZHAYA:  So I don't understand why
> 18  her inner workings of her mind is not the question --
> 19  the ultimate question of the case.
> 20       MS. O'CONNOR:  Because she's not
> 21  designated on the subjective intent questions, but
> 22  also, they're not topics that she's been identified to
> 23  talk about.

*Id* at 22, 1-24.

Later in the deposition, Kezhaya again inquired into the mindset and intentions of the city council. *Id* at 98

**Argument** *2.1: O'Connor fundamentally misunderstands the scope of Rule 30(b)(6).*

Throughout the deposition, O'Connor instructed her client to refuse to answer questions posed by TST. O'Connor's purported legal basis for those instructions was her belief that the questions posed were outside the scope of the 30(b)(6) subpoena. O'Connor gave this instruction at least eight times over the course of the deposition. She freely acknowledged that there was no basis in privilege for her instructions. This conduct is not permitted.

Rule 30(c) of the Federal Rules of Civil Procedure states as follows:

> (2) *Objections.* An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, *but the examination still proceeds; the testimony is taken subject to any objection.*

F.R.C.P. § 30(c)(2).

By the plain language of Rule 30, O'Connor had no basis in law to instruct O'Donnell to not answer any question Kezhaya asked. Rule 30 only

provides three exceptions to the general rule that all questions must be answered regardless of an objection:

> A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

*Id.*

During his examination, Kezhaya was careful to ensure that O'Connor confirmed on the record that she had no basis in privilege for any of her instructions to O'Donnell to not answer Kezhaya's questions. See generally, Ex. B. Prior to the deposition, O'Connor did not move the court for a protective order with respect to O'Donnell or any other 30(b)(6) witness. And while O'Connor threatened several times to end the deposition early pursuant to Rule 30(d)(3), she never followed through on those threats.

This means that none of the conditions for an instruction of non-answer which are established by Rule 30 were met here. O'Connor is an experienced attorney who either knew, or should have known, the scope of Rule 30 depositions. Even more egregiously, Kezhaya informed her early in the deposition that he was allowed to ask the witness about

anything during the deposition. When Kezhaya asked O'Connor whether she had any authority which refuted his authority, she admitted she did not. Despite this, she persisted in her belief that the rules did not apply to her or her client, and that she would end the deposition if Kezhaya insisted that she follow the rules.

*2.2: This is settled law.*

The District of Massachusetts has already addressed the exact problem presented by TST here. See *Gulbankian v. MW Manufacturers, Inc.* 2013 WL 2146868 (D.Mass. May 15, 2013). In *Gulbankian*, Plaintiff took a 30(b)(6) deposition of Defendant's corporate designee. *Gulbankian* at 1. Several times during the deposition, the corporate designee was instructed to not answer Gulbankian's questions. *Id*. Defendant's counsel based their instruction for non-answer on their argument that the questions posed were not relevant. *Id*. Gulbankian then moved to compel the witness to testify. *Id*. Gulbankian's motion argued that they were "not limited to the specific topics identified in the deposition notice and instead are entitled to discovery on "any non-privileged matter that is relevant to [their] claim or defense" per Fed.R.Civ.P. 26(b)(1)." *Id*. The Court disagreed.

The Court rightly noted that "The scope of discovery is very broad, and "information is discoverable if there is any possibility it might be relevant to the subject matter of the action," *EEOC v. Electro–Term, Inc.,* 167 F.R.D. 344, 346 (D.Mass.1996), even if it "is not directly related to the subject of the underlying litigation," *Cabana v. Forcier,* 200 F.R.D. 9, 17 (D.Mass.2001)." *Gulbankian* at 1.

The Court also pointed out that if the Defendant believed that the information sought by Gulbankian was not subject to discovery, then they were obligated to *immediately* seek a protective order. (emphasis in original) *Gulbankian* at 1, citing *Paparelli v. Prudential Ins. Co. of America*, 108 F.R.D. 727, 731 (D.Mass.1985). Here, Boston has not filed for a protective order following O'Donnell's deposition to limit the scope of her testimony or any other 30(b)(6) witness. Boston presented no argument or evidence that Kezhaya conducted the deposition in bad faith or inappropriate manner. *Gulbankian* at 2. O'Connor's instructions to O'Donnell were improper.

*2.2: Sanctions are appropriate*

This District has addressed in the affirmative the question of whether

sanctions are appropriate when a deponent's attorney instructs them to not answer questions without a valid basis for the instruction. See *Crispo v. Harbor Cruises, LLC d/b/a Boston Harbor Cruises*, (2008 WL 11511511 D.Mass. August 13, 2008). *Crispo* is a similar case to *Gulbankian*, where the 30(b)(6) designee was instructed to not answer certain questions on the basis that "the questioning exceeded the scope of the notice of deposition." *Crispo* at 1. Harbor Cruises, LLC ("BHC") cited *Paparelli, supra* to support its argument. *Id*.

The Court was unpersuaded by BHC's argument. *Id.* In its opinion, the Court noted that "Even if the questions posed by the Crispo's attorney improperly exceeded the scope of the notice of deposition, that error would not justify instructions to not answer them. Indeed, <u>Paparelli</u> recognizes this. <u>Id.</u>"

*Crispo* then addresses the question of sanctions. *Id.* The Court noted that the *Paparelli* Court declined to award sanctions because it found that both parties shared fault. *Id.* Ultimately, the *Crispo* Court disagreed with the *Paparelli* Court, finding that "even if the Crispos' attorney strayed beyond the subjects set forth in the notice of deposition, the repeated Rule

violations by BHC's counsel, were far more serious." *Id*. The *Crispo* Court ordered sanctions imposed against BHC for both the costs of a second deposition and for Crispo's costs in filing the motion for sanctions.

*2.4: Crispo controls.*

Here, the City of Boston presented Christine O'Donnell to serve as its 30(b)(6) designee. Several times throughout the deposition, Boston's attorney Nicole O'Connor instructed O'Donnell to refuse to answer Kezhaya's questions. The only basis for O'Connor's instructions, in her own words, was her belief that Kezhaya's questions were beyond the scope of the 30(b)(6) notice. As *Crispo*, *Gulbankian*, and even *Paparelli* clearly hold, this is not a justifiable reason to instruct a witness to refuse to answer. Unlike *Paparelli*, Kezhaya's questions were confined "to matters stated with reasonable particularity" in the 30(b)(6) notice. O'Connor's first instruction to not answer came almost immediately after Kezhaya began examining O'Donnell. Ultimately, that objection centered around conflicting definitions of what constitutes a person or an entity's identity. See Ex. B, Depo of Christine O'Donnell at 18:8 – 29:9.

In that portion of the deposition, Kezhaya inquires of O'Donnell,

as the representative for the City of Boston, the nature of its refusal to invite TST to give the invocation. O'Connor objects because "the inner workings of [O'Donnell's] mind" were not included in the 30(b)(6) notice. *Id* at 22:2-5. Kezhaya challenges her objection by first confirming that O'Donnell is speaking as the City of Boston, which O'Connor confirms. *Id* at 22:14-15. Kezhaya then states that, if O'Donnell is a stand in for the City of Boston, he doesn't "understand why her inner-workings of her mind is not the question – the ultimate question of the case." *Id* at 22:17-19. In response, O'Connor states "Because she's not designated on the subjective intent questions, but also, they're not topics that she's been identified to talk about." *Id* at 22:20-23.

As in *Crispo*, even if Kezhaya's inquiry into O'Donnell's (as the stand in for the City of Boston) identity or workings of her mind were not specifically expressed in the notice of deposition, that inquiry was not "far beyond" the scope of the notice as was the case in *Paparelli*. At another point in the deposition, Kezhaya asks the witness about her familiarity with "the text of the First Amendment." *Id* at 135:23-24. O'Connor objects, on the grounds that his question is beyond the scope of the 30(b)(6)

notice. *Id* at 136:3-8. In response, Kezhaya asks "Why is that not literally the subject matter of this dispute." *Id* at 136:9-10. O'Connor's response should tell any reasonable, neutral observer everything they need to know about how O'Connor approached the entire deposition. In response to Kezhaya's question, O'Connor states "She's not here to testify about the subject matter of this dispute." *Id* at 136:11-12.

A plain reading of the deposition transcript makes it abundantly clear that O'Connor had no intention of allowing her witness to answer any question that could even potentially damage her client, the City of Boston. O'Connor ignored long-established rules holding that an attorney may object to a question but must allow for an answer unless a privilege exists. Those rules are well stated by *Crispo*, where the Court bluntly states that "Apart from the three exceptions set forth in Rule ¶30(c)(2), if there is an objection to a question, the objecting party should make a concise, nonargumentative, and nonsuggestive objection, and then let the witness answer." *Crispo* at 1.

The *Crispo* Court goes on to state that "Unless one of the three exceptions to the Rule are implicated, instructing a witness not to answer a

question posed in a deposition is "indefensible and utterly at variance with the discovery provisions of the Federal Rules of Civil Procedure." *Crispo* at 1, citing *Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977); see also *Redwood v. Dobson*, 476 F.3d 462, 470 (7th Cir. 2007) (censuring an attorney for violation of the rule).

O'Connor's conduct during this deposition was inexcusable. In her own words, she had no intention of allowing her client to testify about the nature of the dispute. O'Connor took every opportunity to flaunt the rules of Civil Procedure. Her conduct, like the conduct of the attorneys in other cases cited herein, was reprehensible. More importantly, her conduct was sanctionable. See *Paparelli, Crispo supra*. O'Connor's conduct could even subject her to Censure. See *Redwood v. Dobson*, *supra*.

*2.5: Other sanctionable conduct – speaking objections.*

O'Connor's violations of the rules of civil procedure were not limited to Rule 30(c)(2). Throughout the deposition, O'Connor engaged in speaking objections. When the defending attorney makes an objection, their role is to "make a concise, nonargumentative, and nonsuggestive objection, and then let the witness answer." *Crispo* at 1. The 1993

Amendments to the Federal Rules of Civil Procedure explain that the rule was changed to "curtail lengthy objections and colloquy which often suggested how deponents should answer." *McDonough v. Keniston*, 188 F.R.D. 22, 24 (D.N.H. 1998). The *McDonough* court cited then Rule 30(d), which is now Rule 30(c)(2). The 1993 language stated that "Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative and non-suggestive manner." *McDonough* at 24. The current iteration of the rule uses identical language. Fed. R. Civ. P. § 30(c)(2).

"Speaking objections and coaching objections are simply not permitted in depositions in federal cases." *McDonough* at 24. Here, O'Donnell's 30(b)(6) deposition transcript is rife with O'Connor's utter disregard for Rule 30(c)(2). O'Connor's first speaking objection came just ten questions into the deposition. Ex. B, Depo Christine O'Donnell at 18:8. This was O'Connor's second objection of the deposition. Notably, this was also O'Connell's first instruction to her client to not answer Kezhaya's question. This objection led to a back-and-forth between O'Connor and Kezhaya that effectively spanned twenty-four pages of the deposition transcript. *Id* at 18:8 – 42:18. In total, O'Connor objected 62 times. Of her 62

objections, twenty-three of them, or one-third, were speaking objections.

"Under Rule 30(d)(1) [now 30(c)(2)] "(c)ounsel's statements when making objections should be succinct and verbally economical, stating the basis of the objection and nothing more." *McDonough* at 24, citing *Damaj v. Farmers Ins. Co.*, 164 F.R.D. 559, 561 (N.D.Okla.1995). The 30(b)(6) deposition transcript is comprised of 248 full pages and two partial pages of dialogue. Each full page contains twenty-four lines of dialogue. The first page contains fourteen lines of dialogue, and the last page includes two lines of dialogue. This means that the total deposition transcript contains 5,969 lines of dialogue. Of those 5,969 lines of dialogue, O'Connor's speaking objections and the discussion they created consumed 842 lines of dialogue. In other words, O'Connor's speaking objections account for fourteen percent of the total deposition. As discussed in *Crispo, supra,* O'Connor is subject to sanctions for her repeated speaking objections.

*2.6: Other sanctionable conduct – failure to produce witnesses.*

One of O'Connor's objections centered around her assertion that O'Donnell was not prepared to testify as to the motivations or intentions of the Boston City Council. Ex. B Depo Christine O'Donnell at 99:2-21.

Kezhaya follows up by asking O'Connor who will give him the information he is after. *Id* at 101:4-6. O'Connor informs him that she previously identified others in an email. *Id* at 101:10-11. Kezhaya then asks where those people are since they were not present at the deposition. *Id* at 101:12. O'Connor informs Kezhaya that those witnesses are not present, and she proposed separate dates for deposing them in an email. *Id* at 101:13-21. Kezhaya responded by reminding O'Connor that he'd never accepted her proposal, and that his original notice of deposition controlled. *Id* at 101:22-24, 102:1-10. In previous communications with O'Connor discussing the 30(b)(6) notice, Kezhaya informed O'Connor that, while the 30(b)(6) designee could not testify to former councilors' subjective motivations, the City's designee *could* testify as "to the City's interpretations of the former councilors' decisions to not invite TST." See Ex. C at p. 5, email from Matthew Kezhaya to Nicole O'Connor (July 6, 2022, 2:12 pm CDT). Kezhaya pointed O'Connor to *Canal Barge Co. v. Commonwealth Edison Co.*, No 98 C 0509, 2001 WL 817853 (N.D. Ill. July 19, 2001) to support his position. *Canal Barge* states that "The deponent must testify to both the facts within the knowledge of the business entity

and the entity's opinions and subjective beliefs, including the entity's interpretation of events and documents" *Canal Barge* at 1.

Without a meeting of the minds to schedule additional depositions for the other city designees O'Connor seems to believe were better suited for the testimony Kezhaya sought, O'Connor had a duty to produce those witnesses on the date and time designated by the deposition notice. ("Upon notification of a deposition, the corporation has an obligation to investigate and identify and if necessary, prepare a designee for each listed subject area and produce that designee as noticed." See *Calzaturficio v. S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 36 (D.Mass. 2001) citing *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D.Neb., 1995).

O'Connor's objection that O'Donnell did not have personal knowledge is irrelevant. ("If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *Calzaturfico*, *supra* citing *Buycks–Roberson v. Citibank Fed. Savings Bank*, 162

F.R.D. 338, 343 (N.D.Ill., 1995). The deposition notice was clear. Boston had an obligation to designate and produce witnesses who were able to competently testify to all matters identified by the notice. See Fed. R. Civ. P. § 30(b)(6).

Boston had an obligation to produce those witnesses on the date and time designated by the notice. *Calzaturficio* at 201 F.R.D. 36. During the deposition, O'Connor made it clear to Kezhaya that the witness she'd produced could not comply with the notice of deposition. See Ex. B, Depo Christine O'Donnell at 103:22-24 ("O'Connor: Because she's not knowledgeable about those topics and we designated other individuals."). When Kezhaya asked where those other individuals were, O'Connor told him that they were not available. *Id* at 104:1-24, 105:1-19. Kezhaya asked if they could be made available for that day's deposition; O'Connor said they could not. *Id.* Kezhaya asked if they could be available the next day; O'Connor said they could not. *Id.* The result of O'Connor's conduct here is that she failed to produce a competent Rule 30(b)(6) witness who could speak about all subject matters contained in the notice.

Following the deposition, Kezhaya tried to arrange for depositions of additional 30(b)(6) witnesses to testify where O'Donnell could not. See Appx Ex. D. O'Connell first provided the names of four chiefs of staff who could testify as to the subject matter of the Council's intentions with respect to determining who to invite, or not invite. Appx Ex. D at 4-5, Email from Nicole O'Connor to Bill Rohla *RE: Deposition Schedule* (Wed. Sept. 7 6:39 pm EDT). O'Connor proposed to make four witnesses available on September 12 and 13. *Id.* In a subsequent email sent a mere 16 hours later, O'Connor limited TST's access to these witnesses by declaring one witness unavailable and asserting the remaining three would all testify on September 13. Appx. Ex. D.

Rule 30(d)(1) sets the duration of a single deposition as "one day of 7 hours." As a general rule, the party that notices the deposition "usually has the right to choose the location." *Aztec Energy Partners, Inc. V. Sensor Switch, Inc.*, 2008 WL 747660 (D. Conn. March 17, 2008) citing *Buzzeo v. Board of Ed.*, 178 F.R.D. 390, 392 (E.D.N.Y.1998).  While unable to find case directly on point, it stands to reason that if the party noticing the

deposition determines the location, then that party should also determine the duration of the deposition, within the seven-hour limit.

Here, O'Connor proposed to take that decision from TST by offering up three witnesses all to be deposed on the same day. Effectively, O'Connor sought to decree to TST exactly who could be deposed, exactly on what day, and exactly for how long. None of those determinations were O'Connor's to make. Kezhaya tried to resolve that dispute by email. Appx. Ex. D. at p. 2, Email from Matt Kezhaya to Nicole O'Connor *RE: Deposition Schedule* (Thurs. Sept. 8, 2022, 11:50 am CDT). O'Connor refused to respond, leading Kezhaya to conclude that any agreement the parties may have had with respect to additional depositions was "broken." *Id* at p. 1, Email from Matt Kezhaya to Nicole O'Connor *RE: Deposition Schedule* (Thurs. Sept. 8 7:47 pm CTD). By unreasonably limiting the number of witnesses and the duration of their testimony, O'Connor effectively failed or refused to produce those witnesses.

Under Fed. R. Civ. P. § 37(d)(1)(A)(i), failure to produce a competent witness is grounds for sanctions. ("[S]anctions for non-appearance are only available when a deponent "'literally fails to show up for a deposition

session.' " " *CCS Resources, Inc. v. Noble Systems Corporation*, (2014 WL 12914395 (D.Mass. January 27, 2014) citing Baker v. St. Paul Travelers Ins. Co., 670 F.3d 119, 124 (1st Cir. 2012). Here, O'Connor knew the subject matter of the notice. She knew and had identified witnesses who could speak to the subject matter of the notice. She had proposed, but had not received an acceptance of, alternate dates for their deposition.

This means that under the rules, O'Connor had an obligation to produce those witnesses on the date and at the time of the deposition as noticed. See *Calzaturficio, supra.* O'Connor failed to produce those witnesses as the notice specified. The witness O'Connor produced was unprepared, by O'Connor's own admission. Ex. B, Depo Christine O'Donnell at 103:22-24. "Producing an unprepared witness is tantamount to a failure to appear at a deposition." *Calzaturficio* at 39, citing *Starlight Int'l v. Herlihy*, 186 F.R.D. 626, 639 (D.Kan., 1999). By failing to produce those witnesses, O'Connor is subject to sanctions as allowed by Rule 37(b)(2)(A)(i)-(vi).

TST does not seek to have O'Connor censured. However, TST is entitled to an award of sanctions due to O'Connor's abuse of the discovery

process. Further, pursuant to Fed. R. Civ. P. § 37(b)(2)(A)(i)-(vi), TST is entitled to an order from this court compelling sanctions and other relief as the Court deems appropriate.

WHEREFORE, Plaintiff The Satanic Temple respectfully seeks an order for sanctions against Defendant City of Boston for O'Connor's repeated violations of the Rules of Civil Procedure. Such order should include all remedies available to TST pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) and § 37(d)(3), including:

1. An order that all designated facts by Kezhaya be taken as established, pursuant to FRCP 37(b)(2)(A)(i);

2. An order prohibiting the City of Boston from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence pursuant to FRCP 37(b)(2)(A)(ii);

3. An order compelling deposition testimony from Michelle Wu, as a witness competent to answer TST's questions pursuant to FRCP 30(b)(6);

4. An order rendering default judgment against the City of Boston pursuant to FRCP 37(b)(2)(A)(iv);

5. Its costs for taking the deposition, which was made longer and more arduous due to O'Connor's prolific speaking objections and wrongful instructions pursuant to FRCP 30(d)(2), 37(2)(C), and 37(d)(3);

6. Its costs and attorneys' fees incurred in bringing this motion pursuant to FRCP 30(d)(2), 37(2)(C), and 37(d)(3); and

7. For any and all such other relief as this Court deems fair, just, and equitable.



**Matt Kezhaya**                    matt@crown.law
Ark. # 2014161              direct: (479) 431-6112
Minn. # 0402193            general: (612) 276-2216

100 S. Fifth St., Ste. 1900, Minneapolis, MN 55402

## CERTIFICATE OF SERVICE

NOTICE IS GIVEN that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on December 28, 2022, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*

# LR 7.1 Certificate

**Notice is given** that I, Matt Kezhaya, notified opposing counsel of this then-forthcoming motion for discovery sanctions. The City did not agree to any part of the motion and did not provide the discovery to which TST is entitled. *s/ Matt Kezhaya*