IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SATANIC TEMPLE, INC.<br><br>PLAINTIFF,<br><br>V.<br><br>CITY OF BOSTON, MA<br><br>DEFENDANT. | CASE NO. 21-CV-10102<br><br><br>OBJECTION TO ATTORNEY'S FEES |

COMES NOW TST, by and through counsel of record, with a response in objection to Boston's request for attorney's fees.

## 1: Factual background

TST fell victim to a bait-and-switch, wherein the City promised to make its Councilors available for depositions. ECF 25, at 1-2 (stipulating to increase the number of depositions to 15 because "There are 13 Councilors, *each of which has discoverable knowledge* for their reasons not to invite a representative from Plaintiff.") Wu was a Councilor at the time. Id. (filed on August 26, 2021).

Correctly foreseeing that Wu's then-forthcoming mayoral status would be used as a hurdle to preclude TST on the ultimate question of fact in this case,[1]

---

[1] *See* ECF 63 (holding that Wu shall not be deposed *at all*); ECF 78 (holding, for the first time, that Wu is a "high-ranking government official"); *but see* ECF 47, at 12 ("The Court finds no need to delve into the issue of whether Wu is or was a 'high ranking government official'"); id., *passim* (repeating six times that the protective order issued because of the date noticed, not her asserted "high-ranking" status as a city mayor); and ECF 51, at 2-3 (schizophrenically stating that Wu's deposition both has not (at 2), and has (at 3), been prohibited).

– 1 –

we issued a subpoena for Wu's deposition. ECF 24-1, at 2 (notice); 3 (subpoena) (both set for October 22, 2021); compare *Town of Greece v. Galloway*, 572 U.S. 565, 585 (2014) (the sole fact question in this case is whether the City made "wholly inappropriate judgments about the number of religious it should sponsor and the relative frequency with which it should sponsor each") (cleaned up); *see also Am. Legion v. Am. Humanist Ass'n*, 204 L. Ed. 2d 452 (June 20, 2019) (to be constitutional, a legislative prayer policy must be "an example of respect and tolerance for differing views, an honest endeavor to achieve inclusivity and nondiscrimination, and a recognition of the important role that religion plays in the lives of many Americans.")

During a good faith conference (held on October 27, 2021), the City's attorneys offered to reschedule the deposition. ECF 35, at 3. Had the City not reneged on its counter-proposal, Wu would have been relieved of any alleged "annoyance, embarrassment, oppression, or undue burden or expense." FRCP 26(c)(1). Instead, the City reneged. ECF 35, at 5. In its email refusing to provide an alternative date, the City stated three times that the purpose of the motion for protective order was "to ensure that Ms. Wu will not be subject to deposition absent an order of the Court." ECF 35, at 5; see also id. ("I cannot provide additional dates unless ordered by the Court to do so") and id. ("The City maintains that it will not produce Ms. Wu to testify without a court order in this

matter.") This, despite that the City stipulated to increase the number of depositions because TST is entitled to depose the Councilors–Wu included. ECF 25, at 1-2.

Upon my request, District Judge Kelley directed that I "file a statement explaining why the deposition of Councilor Michelle Wu was scheduled for November 2, 2021." ECF 36. The deadline was the next day. Id. I objected on work-product grounds (ECF 37), which objection has gone ignored since.

I timely entered the explanation. ECF 387. The purpose of the timing of Wu's deposition was to prevent Wu and the City from "concocting a credible lie as to why my client will never receive an invite, but which is also somehow not unconstitutional religious discrimination." ECF 38, at 1-2. Thus, Wu was selected for an early deposition to speak about her grounds for first stating Boston's admitted practice of allowing only political insiders representation at a government-sponsored practice of religion. Id.

In granting the order of protection, District Judge Kelley directed that an award of costs and fees is "well warranted" because of TST's "admitted, impermissible motives" in issuing the deposition notice which assertedly occurred "much earlier in the discovery process than it would have otherwise, if it would have taken place at all." ECF 47, at 14.

## 2: Any award is an "unjust" First Amendment retaliation.

The first issue is that any award will be an "unjust" First Amendment retaliation. See FRCP 37(a)(5)(A)(iii) ("the court must not order this payment if … other circumstances make an award of expenses unjust.") The "other circumstances" which makes an award of expenses unjust is that TST has a First Amendment right to make a "publicity stunt" (ECF 47, at 9) out of this "meaningful legal challenge with potentially broad effect." (ECF 47, at 15).

The Supreme Court has addressed that Rule 37's usage of the word "just" "represents the general due process restrictions on the court's discretion." Cf. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (construing FRCP 37(b)(2), whereas at issue is FRCP 37(a)(5)). "Due process" necessarily invokes the broader constitutional protections of the Bill of Rights. See 16C *C.J.S. Constitutional Law* § 1826 ("Due process … must be read in conjunction with other provisions in the same constitution in order to determine their coverage."

At issue are the Free Speech and Free Petition clauses, which create "cognate rights." *Thomas v. Collins*, 323 U.S. 516, 530 (1945). Both speech and petition are integral to the continued survival of our government, albeit in different ways: "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak

fosters the public exchange of ideas that is integral to deliberative democracy." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011).

Pursuant to the Petition Clause, TST is entitled to access the courts free from governmental retaliation. See U.S. Const. Amend. I (the Petition Clause); *Lozman v. City of Riviera Beach, Fla.*, 138 S.Ct. 1945, 1955 (2018) ("this Court has recognized the right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights") (internal quotes omitted). Pursuant to its right to access the courts, TST is entitled to a *meaningful* access to the courts. *See Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) (citing *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983)). Definitionally, this "most precious" (*Lozman*, above) fundamental right must include access to the procedural right of a stipulated deposition without fear of retaliation by the sitting judge.

Yet TST has been deprived of its right to be free from government retaliation for making its surprisingly contentious point that Michelle Wu is not above the law. District Judge Kelley explicitly targeted TST's purpose for making a point as grounds for financially burdening TST for seeking the deposition to which the City had already stipulated. ECF 47, at 9 (equating "publicity stunt" with "undue burden"); id., at 12 (equating the effort "to attract publicity and tarnish the reputation of a rising political leader" with "undue burden"); and id., at 15 (same).

It was the City's burden to show that TST's effort to depose Wu was "baseless." *See McDonald v. Smith*, 472 U.S. 479, 484 (1985) ("baseless litigation is not immunized by the First Amendment right to petition") It failed. *Compare* ECF 33 (motion for protective order, rooted solely on the ground that Wu is a "high-ranking government official") *with* ECF 47, at 12 ("The Court finds no need to delve into the issue of whether Wu is or was a 'high ranking government official.'") Because District Judge Kelley tied the order for fees and costs to the very underpinning of TST's Free Petition rights, the order for fees and costs is a *per se* First Amendment retaliation.

It is categorically "unjust" for the judiciary to financially burden a plaintiff for attempting to attract publicity to a meritorious matter of wide public importance, particularly when the stated intent behind the protective order is to prevent an elected government official from suffering embarrassment for undergoing testimony under oath for their personal involvement that led to the "meaningful legal challenge."

### 3: TST's position was substantially justified.

Regardless whether the Court finds that the First Amendment precludes fees-shifting, an award of fees-shifting is improper because TST's position that Wu is not a high-ranking government official is "substantially justified." FRCP

37(a)(5)(A)(ii); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (*i.e.*, there are grounds for a "genuine dispute," or "if reasonable people could differ [as to the appropriateness of the contested action].")

TST persuasively argued that Wu neither is nor was a "high-ranking government official." Compare ECF 42, at 3-8 (Wu isn't) with ECF 47, at 12 (explicitly declining to hold that Wu is). Because the sole ground to preclude Wu's deposition was rooted in a legal question on which reasonable people could differ, no award of attorney's fees is proper. The substantial time spent on the City's side researching and deliberating on this issue lends further support to the notion that TST's position had substantial justification. See ECF 49. There is no First Circuit case which resolves that a city councilor can be a "high-ranking government official." As an issue of first impression, TST should not be penalized for undertaking a case which may make new law. *Johnson*, 488 F.2d at 718.

As for the timing issue, TST immediately backed off of the date. ECF 35, at 3. Any "undue burden" entailed in Wu's scheduled deposition was thus remedied. This is the purpose of the good faith conference. 8B *Fed. Prac. & Proc. Civ.* § 2288 (3d ed.) ("Rule 37(a)(5) comes into play only when they persist in their positions and the court rejects them, finding that they are not substantially justified.")

## 4: The fees sought are unreasonable.

The Court should award no more than $XXX because the excess sought is unreasonable. FRCP 37(a)(5) (authorizing only the payment of "reasonable expenses incurred in making the motion.") A common way of determining a reasonable fee is through the lodestar method. *Pérez-Sosa v. Garland*, 22 F.4th 312, 321 (1st Cir. 2022).

The lodestar method entails a three step process. *Id. First*, the Court must "calculate the number of hours reasonable expended by the attorneys for the prevailing party, excluding those hours that are excessive, redundant, or otherwise unnecessary." *Id. Second*, the Court must identify "a reasonable hourly rate or rates … [which] is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." *Id. Third*, the Court "may then elect to adjust the lodestar amount, either upward or downward, if the specific circumstances of the case warrant such an adjustment." *Id.*

For ease of reference, a marked-up version of Defendant's "Exhibit A" is attached. Red highlighting is disputed as duplicative or otherwise excessive; green highlighting is stipulated as reasonable time.

*4.1: Duplicative and excessive entries abound.*

The first step of the analysis entails an exclusion of all hours that are excessive, redundant, or otherwise unnecessary. Charging for duplicative time is unethical when billing one's client. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). It is no less unethical when billing one's adversary. *Id.* Courts are cautioned that "Cases may be overstaffed" when reviewing hours logs. *Id.*

Here, we see bountiful duplication in the City's time logs:

- On October 22 and 25, 2021: Arcangeli and Freeman both billed for reviewing the notice of deposition and subpoena. ECF 49, at 7 (Arcangeli, .1), and 8 (Freeman, .1). 0.1 hours are unreasonably placative.

- On October 25, 2021: Arcangeli and Freeman both billed to "consider" a response to the Wu subpoena. ECF 49, at 7 (Arcangeli, .2), and 8 (Freeman, .2). 0.2 hours are unreasonably duplicative.

- On October 25, 2021: Arcangeli, Weise, and Freeman "Strategized" about the response to the Wu subpoena. ECF 49, at 7 (Arcangeli, .3 hours), 7 (Weise, .4 hours),[2] and 8 (Freeman, .3 hours). 0.7 hours are

---

[2] Weise logged more time for the meeting than did Arcangeli and Freeman.

unreasonably duplicative. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) ("The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted.")[3]

- On October 25, 2021: Arcangeli and Freeman both billed for coordinating the meet-and-confer. ECF 49, at 7 (Arcangeli, .3 hours) and 8 (Freeman, .2 hours). None of the time is reasonable because administrative assistants should have coordinated the time. *See Johnson*, 488 F.2d at 717 ("non-legal work may command a lesser rate.") There being no evidentiary support for whatever lesser rate is justifiable for support staff, the City failed to meet its burden of proof.

- On October 25-27, 2021: Arcangeli, Weise, and Freeman all spent triplicate time on "Researching" the FRCP. ECF 49, at 7 (Arcangeli, 1.8 hours); 7-8 (Weise, 1 hour); 8 (Freeman, 1.5 hours independent of drafting). Given that Arcangeli and Freeman spent a cumulative and reasonable seven hours drafting the six pages of briefing, see id. at 7-8, all 4.3 hours of this additional research time is excessive.

---

[3] "This circuit has embraced the *Johnson* factors for use in sculpting fee awards." *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F.3d 331, 337 n. 3 (1st Cir. 1997); *see also Pérez-Sosa*, 22 F.4th at 328 ("clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them.")

- On October 27, 2021, both Rob and Nailah billed for the full meet and confer. ECF 49, at 7 (Rob) and 8 (Nailah). 0.5 hours are unreasonably duplicative.

- On October 27, 2021, Weise reviewed and edited the motion for protective order for 1 hour. ECF 49, at 8. Weise's 1 hour is duplicative of Freeman's reasonable time incorporating the proposed edits. See ECF 49, at 8 (Freeman, 1.7 hours).

*4.2: Other excessive entries exist.*

There are some other excessive entries that are not duplicative, but which are unreasonable in connection with the motion for protective order. To-wit:

- All time spent around TST's surreply should be excluded because the Court struck it. ECF 45. This obviates O'Connor's entry for 0.2 (ECF 49, at 9) and Freeman's cumulative 0.6 (ECF 49, at 8).

- Any time spent coordinating administrative tasks should be excluded because these tasks do not command an attorney's rate. Freeman included administrative time in the 10/27 entry for 1.7. ECF 49, at 8. Because she did not delineate between how much time was attorney time and how much was administrative time, none of it should be considered. See Pérez-Sosa, 22 F.4th at 328 (

*4.3: The Court should employ a non-core rate.*

Last, the Court should employ a non-core rate for all "less demanding" tasks, like "letter writing and telephone conversations." *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015). That would reduce Arcangeli's non-duplicative time for reviewing and responding to Kezhaya's correspondence, as well as the City's perfunctory good faith conference. ECF 47, at 8 (summing 1.5 hours). The rate of $165 for non-core time was approved of in *Pérez-Sosa*, 22 F.4th at 327. The same should be used here.

**WHEREFORE** the Court should not order any fees-shifting as the same constitutes a retaliation against TST's right to petition for grievances and, even if not, whether Wu is or was a high-ranking government official was one on which reasonable minds could differ; or, the Court should order no more than $3,573.25 (consisting of 12.55 hours of reasonable "core" time for drafting a cumulative 12 pages of briefing; plus 1.5 hours of reasonable "non-core" time for engaging in a perfunctory good faith conference and haggling over whether the City would renege on its written agreement to produce Wu for deposition).

Respectfully submitted,



| **Matt Kezhaya** | matt@crown.law |
|---|---|
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0402193 | general: (612) 276-2216 |

100 S. Fifth St., Ste. 1900, Minneapolis, MN 55402

# Certificate of service

**NOTICE IS GIVEN** that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on February 6, 2023, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*