UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THE SATANIC TEMPLE, INC.,
    Plaintiff,

    v.                                                CIVIL ACTION NO. 21-10102-AK

CITY OF BOSTON, MA,
    Defendant.

MEMORANDUM AND ORDER ON DEFENDANT'S SUBMISSION REGARDING
<u>AWARD OF ATTORNEYS' FEES AND COSTS (#49)</u>.

KELLEY, U.S.M.J

I. <u>Introduction</u>.

This case concerns the Boston City Council's practice of having legislative sessions open with invocations. Every year, each Boston City Councilor is assigned dates for which they are responsible for inviting a guest to give an invocation. (#34 at 1.) The Satanic Temple ("TST") is a religious organization headquartered in Salem, Massachusetts. (#16 ¶ 20 (amended complaint).) In 2016, 2017, and 2018, TST contacted the Boston City Council and asked to give an invocation. *Id*. ¶¶ 12, 23; (#34 at 1). The City of Boston responded that City Councilors choose speakers from their communities for their assigned weeks, and TST could not lead the prayer without having been invited by a City Councilor. (#16 ¶¶ 13, 24.) TST was never invited, which led to the present lawsuit, where TST asserts that the practice of the City Council regarding selecting invocation speakers violates the Establishment Clause of the First Amendment to the United States

1

Constitution (Count I) and the Free Exercise Clause of the Massachusetts Constitution, Article 46, section 1 (Count IV). *Id*. ¶¶ 74-90, 112-117.[1]

On October 27, 2021, the City filed an Emergency Motion for Protective Order and Motion to Quash Regarding the Deposition of City Councilor Michelle Wu. (#33.) The motion was filed in response to TST's Notice of Deposition of Michelle Wu for November 2, 2021, in Salem, Massachusetts. (#34-1 at 2.) The City of Boston's local election day was November 2, 2021, and then-Councilor Wu was a mayoral candidate in that election. *Id*. at 3.

On April 6, 2022, District Court Judge Angel Kelley granted the City of Boston's Motion for Protective Order and Motion to Quash (#33). *See* #47, Memorandum and Order. She also granted the City's motion for reasonable attorneys' fees under Fed. R. Civ. P. 45(d)(1) for having to file the motion in response to plaintiff's noticing Mayor Wu's deposition. (#47 at 13-15.) Judge Kelley ordered that the "amount shall be evaluated and assessed at the conclusion of discovery." *Id.* at 15. Soon after the order was issued, the City filed a submission in response to Judge Kelley's Order, asking for $8,334.24 for attorneys' fees. (#49.)

On January 13, 2023, Judge Kelley referred to this court the assessment of reasonable attorneys' fees, as discovery ended on November 25, 2022. (#83.) This court ordered plaintiff to file a response to the City's submission (#85), which plaintiff did on February 6, 2023.[2] (#86.) For the reasons set out below, the court awards the City $8,228.25 in attorneys' fees.

---

[1] Plaintiff's claims alleging violation of its rights under the Free Speech Clause and Free Exercise Clause (Count II) and the Equal Protection Clause (Count III) of the United States Constitution were dismissed by District Court Judge Allison Burroughs on July 21, 2021. (#21.)

[2] Much of plaintiff's response consists of criticism Judge Kelley's ruling, although the plaintiff does not actually ask this court to reconsider Judge Kelley's ruling, *see* #86 at 1-7. This court has no authority to reconsider Judge Kelley's ruling.

II. <u>Law</u>.

Fed. R. Civ. P. 45(d)(1) provides that the court "must enforce [the] duty [to avoid imposing undue burden or expense on a person subject to subpoena] and impose an appropriate sanction—which may include lost earnings and reasonable attorneys' fees – on a party or attorney who fails to comply." The City also points out that since it prevailed on its motion to quash it is entitled to reasonable fees under Fed. R. Civ. P. 37(a)(5)(A). (#49 at 1-2.)

In calculating reasonable attorneys' fees, the court uses the lodestar method. A lodestar amount is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," excluding hours that are "excessive, redundant, or otherwise unnecessary." *Pérez-Sosa v. Garland*, 22 F.4th 312, 321 (1st Cir. 2022) (citations and punctuation omitted). The court first calculates the number of hours reasonably expended by the attorneys for the prevailing party, excluding hours that are redundant, excessive, or unnecessary. *Id*. The court then identifies a reasonable hourly rate, a determination that is ordinarily based on the prevailing rates in the community for attorneys with comparable qualifications, experience and competence. *Id*.[3]

It is the fee-seeker's burden to prove that the proposed hourly rates and the hours expended are reasonable. *Pérez-Sosa v. Garland*, 22 F.4th at 325 (hourly rates); *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008) (hours expended). *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Attorneys are obliged to maintain contemporaneous time records when seeking fees. *Pérez-Sosa*, 22 F.4th at 329 (citing *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984)). Records need not be too detailed, however, they typically will show the date that the work

---

[3] Once it is properly calculated, the court may elect to adjust the lodestar, upward or downward, if the specific circumstances of the case warrant. *Pérez-Sosa*, 22 F.4th at 321. *See Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 337 & n.3 (1st Cir. 1997) (upward or downward adjustment must be in accordance with twelve factors).

was performed, the kinds of work performed and the percentage of time spent on each task. *Id.* (citation omitted). Less detail than that inhibits the opponent in challenging the reasonableness of the hours expended and the district court in calculating the lodestar amount. *Id*. at 329-330 (citation omitted). While the lodestar method requires arithmetic, a district court's task in fashioning reasonable fees "is to do rough justice, not to achieve auditing perfection." *Id*. at 321-322 (citation and punctuation omitted). The court may estimate. *Id*.

Ultimately, the district court's discretion with respect to fee awards is "extremely broad"; its equitable determinations will be afforded considerable deference if supported by a plausible rationale. *Pérez-Sosa v. Garland*, 22 F.4th at 320-321, 330 (punctuation and citations omitted). *See Fox v. Vice*, 563 U.S. 826, 838 (2011).

III. <u>Discussion</u>.

A. <u>Requested rates</u>.

The City requests reimbursement for four attorneys who worked on the motion to quash: Robert Arcangli; Nailah A. Freeman; Nicole O'Connor; and Susan Weise. (#49 at 5.) The hourly rate sought for each attorney is $265, *id*., which this court finds is a strikingly low rate for legal work in the city of Boston. In addition, the fact that the City requests the same hourly rate for attorneys with widely-varying levels of experience indicates that the City may be underestimating its costs. The City states that this rate is consistent with the standard hourly rate that the City pays outside counsel; the rate "is the prevailing rate for attorneys performing similar services – i.e. attorneys providing litigation services to a public entity like the City of Boston." *Id*. at 4.

Each attorney submitted an affidavit attesting to the accuracy of their billing records and stating their experience: Robert Arcangeli is a Senior Assistant Corporation Counsel for the City and has eight years of litigation experience (two of them in the Suffolk County District Attorney's

Office) (#49-1); Nailah Freeman is a Senior Assistant Corporation Counsel for the City and has five years of litigation experience (#49-2); Nicole O'Connor is a Senior Assistant Corporation Counsel for the City and has thirteen years of litigation experience (#49-3); and Susan Weise is the First Assistant Corporation Counsel for the City, has thirty-six years of experience, and oversees all litigation for the City's Law Department. (#49-4.)

Plaintiff does not suggest that the proposed hourly rate is unreasonable, other than arguing the court should adopt a lower rate -- $165 -- for "less demanding tasks," such as "letter writing and telephone conversations." (#86 at 12.) The First Circuit has found that in fashioning a lodestar, a court may distinguish between "core and non-core" tasks and compensate attorneys at less than their typical rates for their performance of "clerical or secretarial tasks." *Matalon v. Hynnes*, 806 F.3d 627, 639 (1st Cir. 2015). But "these are not hard and fast rules," and the First Circuit has not "imposed a rigid requirement that a district court employ a core/non-core analysis when adjudicating a fee petition." *Id*. The court will not use the "core/non-core" analysis here, where the requested hourly rate for the attorneys is relatively low and the overall time requested for "non-core" tasks is minimal. For the same reasons, the court also rejects the notion that attorneys should not be compensated at their regular hourly rate for making telephone calls and writing letters or sending emails, as long as such actions do not take up an unreasonable amount of time.

B. Requested hours.

The City included with its request for fees a table setting out itemized fees for each attorney. (#49 at 7-9.) The City requests a total of 31.45 hours for making its emergency motion, *id*. at 9, which included the motion (#33, three pages); the memorandum in support (#34, nine pages); and reply (#43, 8 pages). TST filed a sur-reply (#44) which the City's attorneys reviewed. Plaintiff attached the City's table to its opposition, with green highlighting on the fees that it

5

stipulates are reasonable and red highlighting for the fees it disputes. (##86-1 at 1-3.) The court will go through each of plaintiff's objections to the specific times billed. The court notes that the billing appears to be detailed and contemporaneous as required, and plaintiff does not object to the billing on these grounds, with one exception which is discussed below at no. 9.

1. Plaintiff argues that Attorneys Arcangeli and Freeman both billed for reviewing the notice of deposition and subpoena, which plaintiff characterized as "unethical," and so requests that the court deduct .1 hours from the requested amount. (#86 at 9.) The court finds that it is reasonable for two attorneys to each have spent six minutes reviewing the notice of deposition and subpoena, as these documents are obviously central to the motion that the City subsequently filed. While six minutes might seem a long time to look at a notice of deposition and subpoena, it seems about right when one allows a few extra minutes for the attorneys to comprehend that plaintiff had noticed the deposition of Councilor Michelle Wu, who was the front-runner in the Boston Mayoral race, in Salem, Massachusetts, at the Satanic Temple, on election day, starting at 9:00 a.m. (#34-1 at 2-5.)

2. The court finds that it is reasonable for each of the above attorneys to have billed .2 hours to consider a response to the subpoena. *Id*.

3. The court finds that it is reasonable for each of the above attorneys to have billed .3 hours to "strategize" with Attorney Weise, whom the court presumes is their boss, and for Attorney Weise to have spent .4 hours with them at this meeting. *Id*. Since the record provides no explanation concerning Attorney Weise's billing for a meeting that lasted .4 hours rather than .3, the court will reduce Attorney Weise's time to .3 hours. Plaintiff's argument that "the time of two lawyers in a courtroom or conference when

one would do may be discounted," *id*. at 10, does not make sense here, where the purpose of the billing event is for attorneys to communicate with one another about legal strategy, a task which they could not have accomplished without being together.

4. Plaintiff complains that Attorneys Arcangeli and Freeman both billed for coordinating a meet and confer with plaintiff. *Id*. Plaintiff argues that "none of the time is reasonable because administrative assistants should have coordinated the time." *Id*. The court will deduct one attorney's time for this for .3 hours. The court frequently sees emails between attorneys attempting to set up meet and confers, and in fact the court notes that plaintiff's attorney himself sends emails regarding setting up meet and confers, *see, e.g.*, #80-1 at 345, and so rejects plaintiff's assertion that an administrative assistant necessarily should have set up the conference.

5. Plaintiff complains that Attorneys Arcangeli, Freeman, and Weise all spent time researching the Federal Rules of Civil Procedure (1.8 hours, 1 hour, and 1.5 hours). *Id*. The court finds that it is reasonable for them to have done so for the recorded amount of time.

6. The court finds that it is reasonable for two attorneys to have billed .5 hours for a meet and confer which they both attended. *Id*. at 11.

7. The court finds that it was reasonable for Attorney Weise to review and edit the motion for protective order for 1 hour, and that time is not duplicative of Attorney Freeman's 1.7 hours incorporating the proposed edits. *Id*.

8. Plaintiff states that any time the attorneys spent reviewing plaintiff's sur-reply should be deducted because Judge Kelley struck the sur-reply. *Id*. Judge Kelley struck the sur-reply because plaintiff did not ask leave to file. (#45.) She struck it six days after it was

filed. *Id*. The City's attorneys reviewed the sur-reply before it was struck. (#86-1 at 3.) The court rejects plaintiff's argument, which is frivolous.

9. On October 27, Attorney Freeman billed 1.7 hours for legal and administrative work, namely, editing and finalizing the motion for protective order and filing and serving it, without specifying how much time each task took. (#86 at 11.) Plaintiff argues that since filing and serving the motion is administrative time that should be billed at a lower rate, and one cannot tell how much time these administrative tasks took, the entire time should be deducted from the bill. *Id*. The court notes that on the docket of this case, as on the docket of many cases, attorneys for both sides file pleadings. The court does not believe that attorneys charge clients a lower hourly rate for the few minutes it takes to file a document, which is probably the same amount of time it would take to email the document to an administrative employee and instruct them to do it. At any rate, as mentioned above, in a situation such as this one, where the City's attorneys are billing relatively small amounts of time for what might be considered administrative tasks, the court declines to find that administrative tasks must be billed at a lower rate, and so rejects this argument.

IV. Conclusion.

The City's petition (#49) is allowed in part and denied in part. The court deducts .4 hours from the requested amount and awards the City $8228.25 in attorneys' fees.

February 14, 2023

/s/ M. Page Kelley
M. Page Kelley
Chief United States Magistrate Judge