UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SATANIC TEMPLE, INC.,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF BOSTON,<br><br>       Defendant. | Civil Action No. 1:21-cv-10102-AK |

**THE CITY OF BOSTON'S LOCAL RULE 56.1 CONCISE STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

The City of Boston (the "City") submits, pursuant to Local Rule 56.1, this Concise Statement of Material Facts as to Which There is no Genuine Issue to be Tried in support of its Motion for Summary Judgment on the remaining counts of the Amended Complaint of the Satanic Temple, Inc. ("TST"):

*The City Council Invocation Invitation Process*

1. Invocations at Boston City Council meetings date back to the 1800s. Prior to 1909, the City had an alderman form of local governance rather than a City Council, but invocations were still given. ***See*** **Transcript of Rule 30(b)(6) Deposition of Christine O'Donnell excerpts of which were filed with the Court as Exhibit 1 at p. 70, 72-74.**

2. Every week, unless otherwise ordered and except on holidays, the Boston City Council holds a meeting. **ECF Doc. No. 16 at ¶9 and ECF Doc. No. 23 at ¶9.**

3. Meetings generally occur on Wednesdays, but not every Wednesday. **Exhibit 1 at 65, 75.**

4. There are approximately thirty-five meetings per year. **ECF Doc. No. 16 at ¶10 and ECF Doc. No. 23 at ¶10.**

5. Time is set aside at the beginning of each Council meeting for an invited member of the public, often clergy, to say a few words before official Council business begins. ***See* email exchange Bates-stamped DEF0000228 to DEF0000230, a copy of which was filed with the Court as Exhibit 2.**

6. At the beginning of each calendar year, City Council staff assigns dates for each City Councilor to coordinate an invocation, including inviting a guest to deliver it. ***See* City of Boston's Answers to TST's First Set of Interrogatories, a copy of which was filed with the Court as Exhibit 3 at Answer No. 3.**

7. Council staff attempts to assign the same number of dates to all City Councilors, but due to scheduling and availability, that is not always possible. **Exhibit 3 at Answer No. 3.**

8. The Central Staff Director prepares a schedule of dates for City Council meetings along with the names of the City Councilors responsible for securing an invocation speaker. ***See* City of Boston's Answers to TST's Second Set of Interrogatories, a copy of which was filed with the Court as Exhibit 4 at Answer No. 10; Boston City Council Schedules Bates-stamped DEF0003397 to DEF0003406 and DEF0003439-DEF0003445, a copy of which were filed with the Court as Exhibit 5.**

9. At one point, invocation speakers received a stipend from the City, but the payment of invocation speakers ceased sometime around 2016 or 2017. **Ex. 1 at pp. 162-163, 166;** ***see also* Transcript of Deposition of Annissa Essaibi-George excerpts of which were filed with the Court as Exhibit 6 at p. 154.**

10. One of the speakers, Anne Marie Rousseau, testified that she received a $75 stipend the first time she gave an invocation in 2012, but could not remember receiving one after that. **See Transcript of Deposition of Anne Marie Rousseau excerpts of which were filed with the Court as Exhibit 7 at p. 15-16.**

11. The selection of an invocation speaker is left within the discretion of the individual City Councilors and their respective staffs. **Exhibit 4 at Answer No. 10.**

12. There are no guidelines or rules governing whom a City Councilor may choose to give an invocation and the practice has not been reduced to writing. **ECF Doc. No. 16 at ¶¶15, 16 and ECF Doc. No. 23 at ¶¶15, 16; Exhibit 1 at p. 54.**

13. Absent an invitation from a City Councilor, there is no opportunity to offer an invocation prior to the Council's meetings. **ECF Doc. No. 16 at ¶17 and ECF Doc. No. 23 at ¶17.**

14. The City Council does not take requests. **Exhibit 1 at pp. 52-55.**

15. Councilor Essaibi-George was certain that one group referenced during her deposition did not solicit an invite, and that, with the exception of TST, no one had ever asked her if they could "offer remarks, a prayer or a blessing before the City Council." **Exhibit 6 at p. 121.**

16. In the words of staff counsel, "It's by invitation. So, the limit would be if you don't get an invitation, you don't give the invocation." **Exhibit 1, pp. 152-53.**

17. The one presenter deposed by TST, Anne Marie Rousseau, testified that she gave an invocation annually from 2012 to 2020 at the invitation of then-Councilor Matt O'Malley. **Exhibit 7 at pp. 4-7, 19.**

18.     It is the policy and custom of the Council that invitations for the invocation are based upon personal relationships the Councilors have and the work that the individual invitee does in the district or for their constituents. **Exhibit 1, pp. 52-55, 154-160.**

19.     An example of an invitation is the May 13, 2019 letter from then-Councilor Kim Janey to the Rev. Mary Margaret Earl, acknowledging her congregation's work in the community and asking her to offer the invocation at a meeting scheduled on June 26, 2019. ***See* email correspondence and letter Bates-stamped DEF0001059 to DEF0001060, a copy of which was filed with the Court as Exhibit 8.**

20.     Rousseau, who testified every year for eight years, had volunteered on Councilor's O'Malley's campaign and was very involved in the community in his district. **Exhibit 7 at pp. 7-14, 19, 26-28.**

21.     The invocations may have a variety of different forms, such as "a blessing," "opening remarks," "a prayer," "a sermon" or "a poem or something like that." **Exhibit 6 at p. 107.**

22.     The content of the invocations is written or determined by the invited speaker. **Exhibit 7 at p. 29.**

23.     The City does not "bless" its own Council meetings. **Exhibit 1 at p. 144**

24.     While the majority of invocations are given by individuals from a variety of Christian denominations, there have "also been a number of representatives from other types of religions," and there have "been some laypeople throughout the years." **Exhibit 1 at p. 250.**

25.     Numerous Rabbis have been invited to give invocations. ***See* email correspondence and charts Bates-stamped DEF0002046 and DEF0002090 to DEF0002092, a copy of which was filed with the Court as Exhibit 9.**

26. At the last Council meeting prior to the filing of this motion, an Imam gave the invocation at the invitation of Councilor Fernandes Anderson, and indicated that he had been previously invited by Councilor Yancey, who left the Council in 2015. **YouTube channel: https://www.youtube.com/watch?v=Ti7QMgpUK8Q&list=PLQaoo0hI2DAjk5JId3kvv1N3WJt8GgBFr&index=23 at 4:00.**

27. Non-religious speakers have been invited to give invocations. **Exhibit 1 at p. 250.**

28. Indeed, "there have been instances where an individual from an organization that does work within the community may give the invocation." **Exhibit 1 at pp. 250-251.**

29. The Council has had "poems and reflections" read by many people for the invocation. **Exhibit 6 at p. 152.**

30. The City Clerk, Maureen Feeney, gave a number of invocations, usually reading from a "book of reflections." **Exhibit 6 at p. 152-153.**

31. In 2017, one invocation was given by a member of the Boston Debate League, a non-profit organization seeking to integrate argument and debate into public schools. **Exhibit 9.**

*TST Seeks to Obtain an Invocation Invitation*

32. On October 6, 2016, Travis LeSaffre, Chapter Head of the Boston Chapter of the Satanic Temple, sent an email to then-Councilor Mark Ciommo asking him to consider appointing him as an invitee to perform an invocation. *See* **email correspondence Bates-stamped DEF0000186 to DEF0000187, a copy of which was filed with the Court as Exhibit 10.**

33. LeSaffre then reached out to then-Councilors Tito Jackson and Michelle Wu seeking an invocation invitation. *See* **email correspondence Bates-stamped DEF0000244 to DEF0000245, a copy of which was filed with the Court as Exhibit 11.**

34.     Wu responded that each Councilor only had two or three chances to invite faith leaders for the invocation and that the invitations were often used to recognize faith leaders who are active in the community and organizations that are representative of the districts. **Exhibit 11.**

35.     Wu informed LeSaffre that "[t]here is no restriction or criteria based on any Councilor's religious preferences," and that many Councilors "had a long list of folks" they would like to invite but haven't been able to accommodate. **Exhibit 11.**

36.     On August 17, 2017, LeSaffre sent an email to then-Councilor Wu and the other Councilors asking for the Council to either allow all individuals an opportunity to perform invocations or to cease the invocations, threatening litigation in the absence of the "right choice." *See* **email correspondence and letter Bates-stamped DEF0000221 to DEF0000222, a copy of which was filed with the Court as Exhibit 12.**

37.     During these attempts by TST to obtain an invitation, Councilors received emails expressing the view that they did not want TST to give an invocation. **Exhibit 1, at p. 108.**

38.     Councilor Essaibi-George declined to issue an invitation to TST, finding it "absurd" that TST felt entitled to an invitation from her to offer an opening remark without any relationship or interaction, or playing an important role in her work. **Exhibit 6 at pp. 148-151, 153-154, 168-169;** *see also* **email correspondence Bates-stamped DEF0002890, a copy of which was filed with the Court as Exhibit 13.**

39.     On October 2, 2018, one of the co-founders of TST, Malcolm Jarry, sent an email to then-City Council President Andrea Campbell requesting an opportunity for someone from TST to give the invocation at an upcoming City Council meeting. **ECF Doc. No. 16-1.**

40.     The next day, Staff Counsel Christine O'Donnell responded that the Council did not accept requests from speakers to deliver an invocation, that the Council does not have a written

policy concerning invocations and that Councilors decide who will deliver the invocations at Council meetings.  *See* **Massachusetts Commission Against Discrimination Statement of the Particulars dated October 17, 2018 Bates-stamped DEF0000620 at ¶3 a copy of which was filed with the Court as <u>Exhibit 14</u>.**

41. On October 9, 2018, Attorney O'Donnell again emailed Jarry to explain the process for selecting individuals to give invocations prior to the start of City Council meetings.  **ECF Doc. No. 16-2.**

42. O'Donnell explained again that the Councilors themselves do not offer the invocations and that they invite individuals from the community, either clergy or laypeople, to give the invocations. **ECF Doc. No. 16-2.**

### Lack of Discovery

43. On July 6, 2022, TST served a Rule 30(b)(6) deposition notice articulating thirty (30) deposition topics upon which it sought to elicit testimony from the City.  **ECF Doc. No. 79-1, at pp. 3-11 of 395.**

44. Attorney O'Donnell was designated by the City to testify on topics 1-7, 9, 11, 13-16 and 23-30.  **ECF Doc. No. 79-1, at p. 343 of 395.**

45. The topics for which O'Donnell was not designated dealt with the individual Councilors' "subjective bases" (8, 10, 12), "subjective understanding" (17, 18, 20, 21), "subjective opinion" (29) or statements that each had made (30).  **ECF Doc. No. 79-1, at pp. 3-11 of 395.**

46. For Councilors still sitting on the Council in July 2022, the City designated their respective Chiefs of Staff for these topics, as well as the former Chief of Staff for now-Mayor Wu. **ECF Doc. No. 79-1, at p. 373 of 395.**

47. TST did not take the depositions of the proffered Chiefs of Staff or attempt to take the deposition of any current or former Councilor other than Annissa Essaibi George and Mayor Wu. **Exhibit 6; ECF Doc. No. 34-1, at pp. 2-5 of 27; ECF Doc. No. 57-1; ECF Doc. No. 62-1.**

48. TST opened the Rule 30(b)(6) deposition of Attorney O'Donnell with an invocation. **Exhibit 1 at pp. 5-6.**

49. In preparation for the deposition, O'Donnell spoke with the staffs of the current City Councilors about how the Councilors decide who to invite to give invocations. **Exhibit 1 at pp. 64-65, 69-70.**

50. It was evident from the start of the deposition of Attorney O'Donnell that its purpose was less about discovering information for TST's case and more about creating a video record for other uses – with counsel addressing the "congregants" and attempting to eliminate "legalese" so that they would understand. **Exhibit 1 at pp. 12-14, 16, 169.**

51. During the Rule 30(b)(6) deposition, counsel for TST attempted to pigeon-hole certain questions as a "Wu question" in an effort to convince the Court that a deposition of the Mayor was necessary to prove TST's case. **Exhibit 1 at pp. 244-245.**

52. Similar efforts were made during the Essaibi-George and Rousseau depositions. **Exhibit 6 at p. 105, 156-157; Exhibit 7 at p. 28.**

53. On October 22, 2021, TST served a notice of deposition and subpoena for candidate and soon-to-be Mayor Wu to take place on November 2, 2021 – *Election Day*. **ECF Doc. No. 34-1, at pp. 2-5 of 27.**

54. TST admitted, in this Court's words, its "intent to invite maximum inconvenience, political attention, and media scrutiny of TST's litigation through the deposition notice." **ECF Doc. No. 47 at p. 4, citing ECF Doc. No. 38.**

55. The Court refused to allow the deposition to go forward on that date and requested further briefing on whether it should be allowed at all. **ECF Doc. No. 40.**

56. The Court subsequently granted the motion to quash the deposition entirely, and awarded attorneys' fees and costs to the City to be determined at the close of discovery. **ECF Doc. No. 47.**

57. Notwithstanding this fact, on August 21, 2022, TST again noticed the deposition of Mayor Wu for September 12, 2022, subsequently serving a subpoena for a September 20, 2022 deposition date. **ECF Doc. No. 57-1; ECF Doc. No. 62-1.**

58. The Court again granted motions to quash the subpoena, and explained to TST the circumstances pursuant to which it would modify the existing protective order. **ECF Doc. No. 63.**

59. TST then immediately sought recusal, in part based on orders regarding the Wu deposition, and reconsideration of the protective order for the Wu deposition, each of which was denied. **ECF Doc. No. 65; ECF Doc. No. 66; ECF Doc. No. 75; ECF Doc. No. 78.**

60. TST's response was to file a motion for sanctions against the City based on the O'Donnell deposition, seeking as sanctions, *inter alia*, a deposition of Mayor Wu, which was denied. **ECF Doc. No. 80, at p. 29 of 31; ECF Doc. No. 88.**

61. In the subsequent Joint Status Report of the parties, TST *again* requested a deposition of Mayor Wu, despite discovery having been long completed and a total lack of compliance with the Court's orders regarding same. **ECF Doc. No. 90.**

62. That request was denied when the Court ruled that discovery was closed and set a briefing schedule for summary judgment. **ECF Doc. No. 96.**

Dated: May 1, 2023

Respectfully submitted,
**CITY OF BOSTON**,

By its attorney:

ADAM CEDERBAUM
Corporation Counsel


/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
Elizabeth L. Bostwick (BBO #644498)
Senior Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4045 (EFW)
(617) 635-4031 (ELB)
edward.whitesell@boston.gov
elizabeth.bostwick@boston.gov

## Certificate of Service

I, Edward F. Whitesell, Jr., hereby certify that on May 1, 2023, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr.