UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SATANIC TEMPLE, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF BOSTON, <br><br> Defendant. | Civil Action No. 1:21-cv-10102-AK |

**THE CITY OF BOSTON'S OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

The City of Boston (the "City") opposes plaintiff The Satanic Temple, Inc.'s ("TST") motion for summary judgment ("TST's Motion").

**Preliminary Statement**

The reason why TST's Motion fails is a simple one – the City is entitled to summary judgment. TST's attempt to obtain summary judgment on its affirmative claims is nothing more than a preemptive strike in its efforts to oppose the City's own motion for summary judgment (the "City's Motion"). TST's Motion largely contains arguments made in anticipation of, or in rebuttal to, arguments made by the City in its own supporting memorandum. As a result, the legal issues raised in the memorandum of law supporting TST's Motion were all addressed in the memorandum of law in support of the City's Motion. Rather than restate those arguments in full in this Opposition, the City incorporates them by reference herein in their entirety. *See* ECF Doc. No. 99. For the reasons stated herein and in the prior memorandum, it is the City that is entitled to summary judgment dismissing the claims upon which TST seeks summary judgment. TST's Motion should be denied and the City's Motion allowed.

**Argument**

I. **AS SET FORTH IN THE CITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS OWN MOTION FOR SUMMARY JUDGMENT, TST'S ESTABLISHMENT CLAUSE CLAIM FAILS AS A MATTER OF LAW**

Briefly stated, however, all of the arguments in TST's memorandum of law address the applicability of the Establishment Clause to the City Council's invocation invitation process and are addressed in **Section II** of the memorandum of law in support of the City's Motion. The City Council's invocation invitation process falls squarely within the constitutional parameters established by the Supreme Court in *Marsh v. Chambers*, 463 U.S. 783 (1983) and *Town of Greece v. Galloway*, 572 U.S. 565, 575 (2014). There is a presumption of constitutionality for longstanding practices such as the City's Council's invocations. *See*, *e.g.*, *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2082 (2019). Indeed, in reiterating that the Establishment Clause analysis must be guided by "historical practices and understandings," the *Town of Greece* Court specifically cited the City Council's history of invocations as support. 572 U.S. at 576. As the *Marsh* Court accepted, the First Amendment draftsmen "saw no real threat to the Establishment Clause arising from a practice of prayer similar to that now challenged." 463 U.S. at 791.

No reasonable observer viewing the Council's invocation process in light of the long history of legislative prayer both at the Council and nationally would conclude that the legislative prayer here has been exploited to proselytize or to advance or disparage any religion. *See Town of Greece*, 572 U.S. at 587. There is no evidence that City Councilors "directed the public to participate in the prayers, singled out dissidents for opprobrium, or indicated that their decisions might be influenced by a person's acquiescence in the prayer opportunity." *Id*. at 588. So long as the City "maintains a policy of nondiscrimination, the Constitution does not require it to search beyond its borders for non-Christian prayer givers in an effort to achieve religious balancing." *Id*. at 585-586. There is no evidence of any discriminatory intent on the part of any City Councilor.

TST's arguments have all been addressed in the memorandum of law in support of the City's Motion.  TST's arguments are simply efforts to create evidence of discrimination out of whole cloth.  TST complains that the policy is "invite only *quid pro quo*" (Section 2), "whim-based" (Section 3), "political" (Section 4), "pretext" (Section 5)[1], subject to changing rules (Section 6), and excludes outsider religions (Section 7).  These arguments are both belied by the factual record[2] and do not establish discriminatory intent on the part of the City Council.  All of these arguments are covered by **Section II** of the City's prior memorandum, but the City briefly addresses each below.

TST argues that Boston's "whim-based" invitation scheme has corrupted the legislative prayer tradition "into a cheap *quid pro quo*: sermons for stump speeches."  There is zero evidence that this is the case.  The undisputed evidence actually developed in this case is crystal clear: individuals (religious and otherwise) who were invited to give invocations were chosen because the City Councilor wanted to honor them for their impact in the community and upon their constituents.  That this might have a political impact, as TST insists, means nothing to the analysis.  That political beings may have political motivations for inviting religious individuals to give invocations does not necessitate a finding that those political beings endorse that particular religion.  Even the most cynical view of politicians would acknowledge that it was the votes, and not the religion, that was the driving force behind such decision-making.  It is self-evident that religious congregations of all types contain large groups of potential voters.

---

[1] TST makes the bald statement that "pretextual explanations indicate discrimination" in Section 5 without any citation whatsoever to explain how pretext is relevant to the Establishment Clause analysis.

[2] *See* the City's Responses to the Plaintiff's Statement of Material Facts in Support of Summary Judgment.

TST cites *Rubin v. City of Lancaster*, 710 F. 3d 1087, 1097 (9th Cir. 2013) in support of its position in this regard. However, *Rubin* supports the City's position. As the Ninth Circuit determined, the ultimate question is not simply whether the frequency of certain invocations would allow the inference of favoritism toward that religion, but "whether the City itself has taken steps to affiliate itself with Christianity." *Id*. TST correctly notes that the city in *Rubin* had "neutrality-enforcing" mechanisms – many of which exist here:

- No person is required to participate.

- Invocation-givers are no longer paid.[3]

- No one from the City reviews or is involved in the content.

*Id*. TST grasps at one quote from the deposition of the one City Councilor deposed in which she conceded, at the prompting of questioning counsel, that some of the invocations "probably could be described as sermons." But there is no evidence that City Councilors endorsed or participated in any way in the content of those sermons – indeed to get involved and co-author invocations to prevent sermons would run afoul of the "neutrality-enforcing" safeguards of *Rubin*. *Id*. at 1100. TST further points to repeat invocation givers, including one that gave the invocation "seven times," over an eight- or nine-year period. This ignores that one of *Rubin's* neutrality safeguards was to make sure no speaker offered prayer at ***consecutive*** meetings or at more than ***three meetings***

---

[3] The City further addressed the stipend issue on pages 13-14 of the memorandum of law in support of the City's Motion. TST cites *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) for the proposition that changes in the process are evidence of discrimination. However, *Arlington Heights* stands only for the proposition that "[d]epartures from the normal procedural sequence also might afford evidence that improper purposes are playing a role." *Id*. There is no evidence that the stipend elimination had anything to do with excluding a particular invocation speaker, let alone TST. Moreover, the *Arlington Heights* Court found no discriminatory intent in the failure to follow procedure.

*in a calendar year*.  *Id*. at 1098.  Even the worst offender TST could find meets *Rubin's* frequency safeguard by a longshot.[4]

TST's discussion (Section 8) of whether *Lund v. Rowan Cty.,* 863 F.3d 268 (4th Cir. 2017) (Constitutional violation) or *Bormuth v. Cty of Jackson*, 870 F. 3d 494 (6th Cir. 2017) (no Constitutional violation) was correctly decided is irrelevant.  As discussed on pages 16 and 17 of the City's memorandum in support of the City's Motion, its contention is that even if *Lund* was correctly decided it is inapposite, as it involved only Christian prayer, the legislators themselves led the prayers based on their personal faiths, and the prayers involved statements that Christianity was superior to other faiths and appeared "to implore attendees to accept Christianity."  863 F. 3d at 273, 289.

Ignoring these factors, TST simply swaps "sermon" for "proselytize" in an effort to imply that the City Council has indeed adopted the sermon as their own and is attempting to enforce it on the public.  Such sleight of hand does not create an Establishment Clause violation where none exists.  Sermons are moral or religious discourse; proselytizing requires attempts to induce someone to **convert** to one's faith.  There is no evidence in the record that the City Council's invocation invitation process put one religion over others or attempted the classic examples of proselytizing where cities use the legislative platform to promote one religion over others.

TST instead focuses on the equity principles of its failed equal protection and free speech arguments, superimposing those legal standards over the Establishment Clause jurisprudence.

---

[4] TST cites *Santa Fe Independent School Dist. v. Doe*, 530 U.S. 290, 309-310 (2000) in support of its position that disseminating speaking invitations based on "personal connection" relegates everyone else to outsider status in violation of the Establishment Clause.  However, that case involved prayer before football games, where students were compelled to attend or felt pressured to attend, not the adults in the City Council or in *Marsh* that are "presumably not readily susceptible to 'religious indoctrination' or peer pressure."  463 U.S. at 792.  *Santa Fe* also involved student-read prayer that was "overtly Christian," promoting attendance at Baptist events, encouraging membership in religious clubs, distributing Bibles and chastising students that held minority beliefs.  530 U.S. at 295.  In other words, the classic proselytizing behavior that violates the Establishment Clause and which is not present in the City Council's invocations.

TST does not complain that the City is establishing a religion, just that it is not highlighting its religion. TST is not concerned that one religion is getting the spotlight at City Council meetings; rather it is only concerned that its religion is not getting the spotlight at all. For example, TST complains that "Boston's prayer selection is unequal." But the Establishment Clause does not guarantee religious entities a right to dictate the contents of government speech. There is no requirement under the Establishment Clause that the City give an opportunity for all religions to be heard. *See Town of Greece*, 572 U.S. at 585-586.

Here, a reasonable observer familiar with the history of the Establishment Clause would determine that there is no real threat that the City's policy for choosing its invocation speakers will lead to the establishment of a particular religion. There is nothing more that the mere shadow of TST disdain for the Council's invocation process, regardless of its form. *Marsh*, 463 U.S. at 795. That alone is not enough to establish a violation of the Establishment Clause.

II. **TST DID NOT MOVE FOR SUMMARY JUDGMENT ON THE STATE FREE EXERCISE CLAIM, BUT THE CITY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THAT CLAIM**

TST did not seek affirmative judgment on its state law free exercise claim. The City is entitled to summary judgment on that claim for the reasons set forth in **Section III** of the memorandum in support of the City's Motion. Like the analogous federal free exercise claim that was dismissed for lack of standing, the state free exercise claim fails as a matter of law. There are no cases indicating that Massachusetts courts would depart from federal free exercise jurisprudence and allow for a free exercise claim based on government speech in a nonpublic forum. *See, e.g.*, *Curtis v. Sch. Comm. of Falmouth*, 420 Mass. 749, 761, n. 11 (1995). The invocation process simply did not interfere with TST's right to freely exercise its beliefs. This is especially true where TST recently held the three-day SatanCon convention in the Back Bay.

## Conclusion

For the reasons set forth in this opposition to TST's Motion and in the memorandum of law in support of the City's Motion, the City respectfully requests that this Honorable Court: (1) deny TST's Motion; (2) grant the City's Motion; (3) enter judgment in favor of the City on all remaining counts of TST's Amended Complaint; and (4) grant such other and further relief as it deems just and proper.

Dated:  May 22, 2023

Respectfully submitted,
**CITY OF BOSTON**,

By its attorney:

ADAM CEDERBAUM
Corporation Counsel

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
Elizabeth L. Bostwick (BBO #644498)
Senior Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4045 (EFW)
(617) 635-4031 (ELB)
edward.whitesell@boston.gov
elizabeth.bostwick@boston.gov

## Certificate of Service

I, Edward F. Whitesell, Jr., hereby certify that on May 22, 2023, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr.