IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SATANIC TEMPLE, INC.<br><br>PLAINTIFF,<br><br>V.<br><br>CITY OF BOSTON, MA<br><br>DEFENDANT. | CASE NO. 21-CV-10102<br><br>RESPONSE TO BOSTON'S MOTION FOR SUMMARY JUDGMENT |

COMES NOW TST, by and through counsel of record, with a response in opposition to Boston's motion for summary judgment. ECF 98 (motion) 99 (brief).

## Summary of the argument

Boston is not entitled to judgment because its prayer selection scheme reinforces religious orthodoxy, not pluralism. Boston defends this palpably unconstitutional custom by referencing only its age. But age alone does not justify an unconstitutional custom, the practice must be an honest endeavor to achieve inclusivity and nondiscrimination. The fact record in this case shows that there is

no honest endeavor to achieve inclusivity. Two religions have been categorically excluded (Hindus and Satanists), another two religions have been given token inclusion (4 rabbis and one imam), and the remainder have been some variety of Christian.

Nor is there any honest effort at nondiscrimination. Councilor Essaibi-George, a Catholic, found it "absurd" for Satanists to demand equal inclusion. She didn't know anything about TST, and didn't want to know anything about TST. Even if she did know about TST's community involvement, she would never give TST an invite because that would deprive from those religions with which she gained familiarity through politicking or by introduction in her youth. Small, new, and unpopular religions are at a disadvantage when the "honor" of this governmental "endorsement" is withheld. This is exactly what the Establishment Clause prohibits.

## Legal standard

Boston's motion also fails to satisfy the evidentiary standard. The burden is on the movant to demonstrate that there are no material

facts in genuine dispute. *Gattineri v. Wynn MA, LLC*, 63 F.4th 71, 84–85 (1st Cir. 2023). The evidence is to be viewed in the light most favorable to the non-movant. *Id.* Even in this cross-motions context, each motion is to be viewed separately through this prism. *Est. of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010).

Yet Boston's self-congratulatory motion offers no facts to show that its prayer practice is non-discriminatory. Instead, it relies upon an appeal to ignorance. E.g., ECF 99, at 17 ("The facts of present case – or lack thereof – are in stark contrast to those in *Williamson*). By repetitively gloating about its successful efforts at blocking TST's efforts to procure "***the testimony of the inviting lawmakers themselves***," like Wu, Boston only presents a genuine issue of material fact.

## Argument

### 1: No effort to achieve inclusivity and nondiscrimination.

To survive Establishment Clause scrutiny, a government-sponsored practice of religion must be an "honest endeavor to achieve inclusivity and nondiscrimination." *American Legion v.*

*American Humanist Association*, 139 S.Ct. 2067, 2089 (2019). Boston's own description of the practice is exactly to the contrary: "it's just whatever the councilor wants to do;" and, if a councilor doesn't want to invite a particular religion, "you don't have to." ECF 100-1, at 13 (Depo. Boston) 55:2-16. Boston's own brief describes the practice as: "There are no guidelines or rules governing whom a City Councilor may choose to give an invocation." Under this prayer selection scheme, the sole determinant of inclusion is governmental whim; there is not even a polite suggestion to include "small, new, or unpopular religions." *See Larson v. Valente*, 456 U.S. 228, 245 (1982).

Far from being an honest endeavor at inclusivity, this prayer practice is just a *quid pro quo*. Councilor Essaibi-George said as much: she would not invite TST, even if she were apprised of TST's community involvement, because she did not have a personal relationship with TST. Supp. Appx. 29 (Depo. Essaibi-George, at 163:20-164:2). Even after she became aware of TST's desire for inclusion, and even with a last-minute cancellation, she still opted

to have the City Clerk perform the invocation. Supp. Appx. 30 (id., at 168:12-169:8). Politics "very much" played a role in her decisions of who to invite. Supp. Appx. 31 (id., at 170:6-15). Hence, the public emails objecting to TST's equal inclusion, because of disagreement with TST's religious viewpoint, shows that TST's exclusion is predicated upon a disagreement with TST's religious viewpoint. ECF 104-1 at 39-45; *but see Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 566 (2014) ("the First Amendment is *not* a majority rule and government may *not* seek to define permissible categories of religious speech") (emphasis added).

Boston's practice is not an honest effort at inclusion, it is reflective of the natural result behind elected officials' unfettered control over who gets the "honor" of giving the ceremonial prayer. ECF 100-8, at 3. Small, new, and unpopular religions are excluded so that the majoritarian viewpoint may remain unoffended. *See Walz v. Tax Comm'n of New York City*, 397 U.S. 664, 696 (1970) (Harlan, J., concurring) (the Court's role is to "eliminate" religious gerrymanders, not ignore them).

Nor is there any effort at nondiscrimination. Contrary to Boston's implication that the September 28, 2016 (not 2017) invocation was atheistic, ECF 99 at 6, the publicly available video shows an entreaty for the councilors to subsume their free will to the God of Abraham.[1] Not one instance of record shows a nontheistic prayer, which distinguishes this case from *Town of Greece*. 572 U.S. at 571 ("The town at no point excluded or denied an opportunity to a would-be prayer giver … an atheist[] could give the invocation").

The requirement of nondiscrimination can be found in the "litany of neutrality-enforcing safeguards" at issue in *Rubin v. City of Lancaster*, 710 F.3d 1087, 1097 (9th Cir. 2013). There, "No person attending a city-council meeting, including a city employee or official, is required to participate in any prayer." *Id.* Here, the public is directed to stand for the prayer. Essaibi-George Depo. at 115:15-20. There, "No volunteer is paid to pray." Here, the invocators *were* paid–right up until TST sought equal inclusion. ECF 100-1, at pp.

---

[1] https://www.youtube.com/watch?v=T1rDy1ioPnE at 7:00-7:30 (seeking God to "order their steps" and to direct them "how to pray")

162-63, 166. There, "Neither the council nor the clerk may 'engage in any prior inquiry, review of, or involvement in, the content of any prayer to be offered.'" *Id.* Here, the councilor's "involvement" with the prayer-giver is a prerequisite for an invitation. There, "the clerk has never removed a congregation's name from the list of invitees or refused to include one." *Id.* Here, the government has refused to include at least two congregations from the list of invitees: TST (Satanists) and Rajan Zed (a Hindu leader). ECF 16-2; ECF 104-1, at 46.

Similarly, in *Rubin*, the government took "proactive measures to deliver on its promise of inclusivity." *Id.*, 710 F.3d at 1098. The clerk there was to "make every reasonable effort to ensure that a variety of eligible invocational speakers are scheduled," and "invite every local religious group that he can find," without any influence by any city official. *Id.* Contrast here, in which the invite is predicated only upon a "personal relationship" with city officials, without regard to a diversity of viewpoint.

Last, in *Rubin*, the government stressed the policy's nonsectarian aims. *Id.* Here, the practice is an overt assertion of religious orthodoxy: the Boston councilors are "servants" of God,[2] God is "involved" in "every agenda item,"[3] and the Councilors are directed *not* to "lean on their own understanding," but "in all their ways, in all their doing, in all their discussions," they are directed to acknowledge God and have God direct their path.[4] Religions who want the "honor"[5] of this "endorsement"[6] either pray in a manner that pleases the councilors, or they are not invited. This is not nonsectarian, this is transparent governmental proselytization which is an Establishment Clause violation. *Marsh v. Chambers*, 463 U.S. 783, 794–95 (1983).

Rather than contend the controlling statements of law on this topic, the City distracts with an overly-simplistic understanding of First Amendment jurisprudence that "old" means "constitutional."

---

[2] https://www.youtube.com/watch?v=qb5iu6B1TxA (Dr. Hall's sermon), at 6:55
[3] Id., at 8:40-54
[4] Id., at 9:20
[5] ECF 104-1, at 55 (Depo. Rousseau, at 20:4-5)
[6] ECF 104-1

ECF 99, at 2 (citing *Town of Greece*, 572 U.S. at 576). Yet the very next paragraph in *Town of Greece* states otherwise: "*Marsh* must not be understood as permitting a practice that would amount to a constitutional violation if not for its historical foundation." *Town of Greece*, 572 U.S. at 576. As most recently articulated, the focus is on whether the practice is an "honest endeavor to achieve inclusivity and nondiscrimination." *American Legion*, 139 S.Ct. at 2089. It is not focused on the age of the practice.

**2: Status based discrimination is a substantial burden.**

Boston also moves for summary judgment on the claim arising under the Massachusetts Constitution. Massachusetts free exercise principles are more protective than the Federal Constitution. Att'y Gen. v. Desilets, 418 Mass. 316, 323, 636 N.E.2d 233, 237 (1994). The analysis requires a showing of a sincerely held religious belief "(1) a sincerely held religious belief, which (2) conflicts with, and thus is burdened by, the State requirement." *Krupien v. Ritcey*, 94 Mass. App. Ct. 131, 136 n. 9, 112 N.E.3d 302, 307 n. 9 (2018). At

that point, the law is presumptively unconstitutional and the burden passes to the government to show "both that (3) the requirement pursues an unusually important governmental goal, and that (4) an exemption would substantially hinder the fulfillment of the goal." *Id.* This is the strict scrutiny test. *See id.*, 94 Mass. App. Ct. at 136, 112 N.E.3d at 307.

TST has sincerely held beliefs which venerate Satan. Those beliefs are unpopular (ECF 104-1 at 39-45) and therefore conflict with Boston's prayer selection policy because it is rooted in a political calculus. Supp. Appx. 31 (Depo. Essaibi-George, at 170:6-14). This is a free exercise problem because it amounts to a forced choice. *See Magazu v. Department of Children and Families*, 42 N.E.3d 1107, 1119–20, 473 Mass. 430, 444–45 (2016). On the one hand, they can continue to venerate Satan and thereby forfeit their opportunity to access a prayer opportunity which is supposed to be equally available to all. *Town of Greece*, 572 U.S. 565, 585–86. Or, they can abandon the defining aspect of their creed in the hopes that this will make them sufficiently palatable to the political ruling class

as to allow equal inclusion. The Massachusetts Constitution prohibits this choice: all governmental policies are subject to attack when they present a "substantial burden" on a religious belief or practice. See Magazu, 42 N.E.3d at 1119–20. It is a "substantial burden" for government to withhold benefits based on religion. *See Espinoza v. Montana Department of Revenue*, 140 S.Ct. 2246, 2256 (2020) ("Status-based discrimination remains status based even if one of its goals *or effects* is preventing religious organizations from putting aid to religious uses") (emphasis added). At issue is Boston's ongoing refusal to provide TST the intangible reputational benefit of being publicly recognized with an "endorsement." Supp. Appx. 24 (Depo. Essaibi-George, at 115:5-7). By withholding that governmental benefit from a particular religion, just because that religion is unpopular, Boston was required to show "both that (3) the requirement pursues an unusually important governmental goal, and that (4) an exemption would substantially hinder the fulfillment of the goal." *Krupien v. Ritcey*, 94 Mass. App. Ct. 131, 136 n. 9, 112 N.E.3d 302, 307 n. 9 (2018). Boston neither shows nor discusses

either point, so the Court should deny its motion for summary judgment.

**Wherefore** the Court should deny Boston's motion for summary judgment.



| **Matt Kezhaya** | matt@crown.law |
|---|---|
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0402193 | general: (612) 276-2216 |

121 Washington Ave. N., 4th Floor, Minneapolis, MN 55402

## Certificate of service

**Notice is given** that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on May 22, 2023, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*