IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE SATANIC TEMPLE, INC.<br><br>PLAINTIFF,<br><br>V.<br><br>CITY OF BOSTON, MA<br><br>DEFENDANT. | CASE NO. 21-CV-10102<br><br><br>BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>ORAL ARGUMENT REQUESTED |

ARGUMENT

**1: There are no genuine issues of material fact.**

The parties agree that there are no genuine issues of material fact. See ECF 110. All "disputed" assertions of fact are immediately followed up by a statement that the dispute is not "genuine." We agree. Boston's failure to produce any admissible evidence of nondiscrimination precludes a finding of a "genuine dispute" of fact. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970).

Two points of fact bear clarification. *First*, Dr. Hall's sermon was indeed directed at the audience. See ECF 110, at ¶¶ 1-3. Boston disputes this fact with some cherrypicked quotes from the prayer that supports the proposition that the prayer was for the councilors. ECF 110, at ¶ 1. But Dr. Hall took special care to note that "We pray especially for the City of Boston"[1] and "Holy spirit,

---

[1] https://www.youtube.com/watch?v=qb5iu6B1TxA (at 8:40-45).

we invite You to give them the wisdom that they do not possess within themselves."[2] The councilors cannot be both the "we" and the "they" simultaneously. Her prayer speaks on behalf of the audience, as a minister traditionally does when they perform a sermon for their congregation.

*Second*, the City correctly points out that Dr. Hall's sermon was not prefaced with a directive to stand. ECF 110, at ¶ 4. That was inadvertent error: undersigned counsel conflated Michelle Wu's invitee (Dr. Hall) with Annissa Essaibi-George's invitee (Rabbi Kreiman). At that meeting, then-Council President directed the audience to stand for the prayer:

> At this time, I would like our guests to please *rise* as Councilor Essaibi-George comes up to introduce our clergy for the day. After the invocation is delivered, I would ask that everyone *remain standing* as Councilor Essaibi-George leads us in the pledge of allegiance.

https://www.youtube.com/watch?v=NTXFgOjpbTE (at 1:35-1:45). More generally, Councilor Essaibi-George testified that the audience is expected to stand for the prayers. ECF 113, at 24 (Depo. Essaibi-George), at 116:4-5 ("I think there's an expectation that people generally stand during the prayer.") And during Boston's recent token invitation to an imam, the first time of record

---

[2] Id., at 8:07-8:26

since 2015 at the latest,[3] the imam invited the audience to sit *after* he concluded his prayer. https://www.youtube.com/watch?v=Ti7QMgpUK8Q (at 7:00). *See also* id., at 7:13 (noting that the prayer was directed to "you," the audience, which further bolsters the first point of clarification: these prayers are directed at the audience).

**2: This prayer scheme violates the Establishment Clause.**

TST is entitled to judgment because Boston's prayer scheme does not fulfil the requirement of being an "example of respect and tolerance for differing views, an honest endeavor to achieve inclusivity and nondiscrimination, and a recognition of the important role that religion plays in the lives of many Americans." *American Legion v. American Humanist Association*, 139 S.Ct. 2067, 2089 (2019). Inclusivity is belied by a directive for audience participation. *Rubin v. City of Lancaster*, 710 F.3d 1087, 1097 (9th Cir. 2013). Inclusivity is also belied by categorical exclusions of particular groups. *Williamson v. Brevard Cnty.*, 928 F.3d 1296, 1314 (11th Cir. 2019). And, tolerance for differing views is belied by governmental review of the prayer beforehand. ECF 104-1, at 51.

Yet the record before the Court shows that Christian prayers dominate the invocation, with paltry inclusion for co-Abrahamic faiths Judaism and Islam,

---

[3] *See* ECF 100, at ¶ 26

but no recognition for any others. ECF 100-9, at 3-5 (of 35 prayers in 2016: 33 were Christian, and 2 were Jewish; of 8 prayers in 2017: 6 were Christian, and 2 were Jewish). The overwhelming proportion of Christian prayers stands in stark contrast to the 57% Christian population in Boston's metro area, a plurality of which "seldom/never" pray.[4] Boston's response explains the overwhelming preference for Christianity over all others: the councilors are "political beings" with "political motivations." ECF 109, at 3.

Boston's implication is that TST, Hinduism, etc., are just not popular enough religions to chin the bar emplaced by a tyranny of the majority. See ECF 104-1, at 39-45 (TST); 46 (Hinduism). But Boston fails to heed that fundamental rights were enshrined in the Constitution to *remove* political palatability from the equation. *West Virginia State Board of Education v. Barnette*, 63 S.Ct. 1178, 1185–86, 319 U.S. 624, 638 (1943). Satanism, Hinduism, Buddhism, and every other faith group is entitled to equal inclusion in this prayer ceremony as Christianity; even if they are a "small, new, or unpopular denomination." *Larson v. Valente*, 456 U.S. 228, 245 (1982); *see also Kennedy v.*

---

[4] According to a 2014 study by Pew Research. (available at https://www.pewresearch.org/religion/religious-landscape-study/metro-area/boston-metro-area/#:~:text=Religious%20composition%20of%20adults%20in%20the%20Boston,metro%20area%20Christian%2057%25%20Evangelical%20Protestant%209%25) (Seldom/never pray: 40%; At least daily pray: 37%) (last accessed June 5, 2023).

*Bremerton School District*, 142 S.Ct. 2407, 2427 (2022) ("the Establishment Clause does not include anything like a 'modified heckler's veto.'")

The undisputed proof shows that Boston's designated prayer-selectors make their invites available based on political machinations rather than tolerance for differing views. ECF 113, at 31 (Depo. Essaibi George), at 170:6-15. Essaibi-George found TST's equal right to inclusion "absurd." ECF 104-1, at 9. McCarthy considered TST's demand for equality to be a "publicity stunt." Id., at 10. Wu took active measures to minimize the likelihood of TST obtaining a judicial decree for inclusion by stopping the practice of compensating prayer-givers. Id., at 35-38. Couple the contemplated exclusion of TST and Hinduism with the candid testimony that the invitation itself carries an "assumed endorsement" of the in-group religions;[5] and one cannot help but find that this prayer selection scheme communicates to the out-group religions: "that they are outsiders, not full members of the political community, and an accompanying message to [in-group] adherents that they are insiders, favored members of the political community." *Santa Fe Independent School Dist. v. Doe*, 530 U.S. 290, 309–10 (2000). This is the opposite of what the law requires. *Larson*, 456 U.S. at 244 ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.")

---

[5] ECF 113, at 24) (Depo. Essaibi-George), at 115:5-7

**WHEREFORE** the Court should direct entry of judgment on the Establishment Clause count; or at least preserve the jury trial setting for a determination of any outstanding material questions of fact in genuine dispute.



**Matt Kezhaya**  matt@crown.law
Ark. # 2014161  **direct:** (479) 431-6112
Minn. # 0402193  **general:** (612) 276-2216

150 S. Fifth St.,, Suite 1850, Minneapolis, MN  55402

### CERTIFICATE OF SERVICE

**NOTICE IS GIVEN** that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on June 5, 2023, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*